**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JAMIYAH ROBINSON,
as Personal Representative of the
ESTATE OF JAMES LOWERY,
Deceased,

   Plaintiff,

                  **<u>DEMAND FOR JURY TRIAL</u>**

  v.

JOSHUA NATHAN PAYNE, individually
and as an agent and employee of the
Titusville Police Department, and
CITY OF TITUSVILLE, FLORIDA,

   Defendants.

---

## COMPLAINT

---

   Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, Deceased, by and through counsel, Ben Crump Law, Hart McLaughlin & Eldridge, LLC, and Edwards Injury Law, complains as follows against Defendants Joshua Nathan Payne, individually and as an agent and employee of the Titusville Police Department, and the City of Titusville, Florida:

### NATURE OF THE ACTION

   1. On December 26, 2021, unarmed 40-year-old James Lowery was shot in the back of the head and killed, without justification, by Defendant Joshua Nathan Payne, a uniformed Titusville Police Department officer.

2. James Lowery was a man who committed no act that would remotely justify the use of lethal force. He was unarmed and running away from Officer Payne when he was shot in the back of the head. As such, his life was intentionally and unjustifiably taken by law enforcement.

3. Plaintiff Jamiyah Robinson is James Lowery's daughter. She brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of the rights of her father, as secured by the United States Constitution and the common law of the State of Florida.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the federal questions at issue pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as well as supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Middle District of Florida, Orlando Division. Moreover, all parties reside in the Middle District of Florida, Orlando Division.

## THE PARTIES

6. Plaintiff Jamiyah Robinson is the daughter of decedent James Lowery and has been appointed personal representative of James Lowery's estate. Ms. Robinson is a citizen of the United States and a resident of the State of South Carolina. Ms. Robinson sues on behalf of James Lowery's estate and his survivors.

7. Defendant Joshua Nathan Payne is a citizen of the State of Florida and was at all relevant times a police officer with the Titusville Police Department.

8. Defendant City of Titusville is a city within Brevard County, State of Florida, served by the Titusville Police Department ("TPD"). Plaintiff sues the City of Titusville pursuant to the U.S. Supreme Court decision of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and its progeny.

## FACTS APPLICABLE TO ALL COUNTS

9. On December 26, 2021, at approximately 7:00 p.m., TPD officers were dispatched to a 9-1-1 call of a domestic battery complaint near South Deleon Avenue and Gibson Street in Titusville, Florida.

10. Decedent James Lowery had absolutely no involvement with this domestic battery. TPD Chief John Lau has admitted that, prior to Officer Payne ever engaging Mr. Lowery, TPD had already ascertained and broadcast the identity of the domestic violence suspect—another man named Alton Johnson.

11. Responding to that call, Defendant Joshua Payne observed James Lowery on Craig Avenue, south of Queen Street, and purportedly determined that he "matched the description" of the suspect for the domestic battery incident. As Defendant Payne began walking toward Mr. Lowery, Mr. Lowery walked away and then began jogging away.

12. Officer Payne chased Mr. Lowery and pulled his department-issued taser in the process. Officer Payne discharged his taser at Mr. Lowery several times as he chased him but missed.

13. Still holding the taser in one of his hands, Officer Payne drew his department-issued firearm with his other hand as he continued to chase Mr. Lowery.

14. Defendant Payne observed that Mr. Lowery was unarmed as he continued to jog away from Defendant Payne.

15. Mr. Lowery then approached a fence or wall and climbed over it.

16. Defendant Payne scaled the wall after Mr. Lowery, with both his firearm and taser still drawn. As he did, Defendant Payne shot Mr. Lowery in the back of his head and killed him.

17. The Florida Department of Law Enforcement ("FDLE") conducted a criminal investigation into the shooting. The FDLE investigation revealed no evidence justifying the use of deadly force on James Lowery.

18. The TPD also conducted an internal investigation into Mr. Lowery's shooting. According to TPD Chief John Lau, Defendant Payne was found to have violated several of the Titusville Police Department's "general orders," including the unnecessary use of deadly force. Defendant Payne was also found to have violated the Department's firearm safety rules due to Officer Payne holding both a taser and firearm at the same time.

19. However, the TPD did not reach any conclusions with respect to the propriety of Officer Payne engaging in a foot pursuit while drawing and engaging his firearm. On information and belief, the Titusville Police Department has never had a policy governing foot pursuits of persons or suspects. Similarly, on

4

information and belief, the Titusville Police Department has never trained its officers, including Defendant Payne, on safe and effective foot pursuits.

20.     Foot pursuits have been a daily part of law enforcement officers' lives since the beginning of law enforcement. Foot pursuits are unpredictable and fast-moving. They also give pursuing officers rushes of adrenaline which can compromise decision-making, certainly without significant and meaningful real-life scenario-based training. This was known or should have been known to the TPD at all times.

21.     The law enforcement community has long known that foot pursuits are dangerous to both officers and the public. The law enforcement community has long known that foot pursuits require express rules and training to prepare officers to engage in foot pursuits in a safe and effective manner.

22.     Further, the law enforcement community recognizes that running with an unholstered firearm in hand creates a greater inherent risk of injury. It is safer to run with a firearm holstered. At a minimum, the reasonableness of running with a firearm in hand should depend on the nature of the incident (e.g., call of a suspect with a gun) and the level of threat, resistance, or risk to the public presented by the suspect (e.g., suspect's possession of a weapon or indicators of such possession). This was known or should have been known to the TPD at all times.

23.     The nature of the incident here—an unarmed person jogging away from police on foot—did not warrant Defendant Payne running with a gun in

hand. Such conduct was objectively unreasonable. Moreover, given that the name of the domestic violence suspect was known to law enforcement prior to any encounter with Mr. Lowery, approaches other than chasing a suspect carrying a firearm existed, including containment and surveillance for ultimate apprehension of the proper suspect.

24. In 2019, the International Association of Chiefs of Police ("IACP") published a document on foot pursuits setting forth considerations for law enforcement agencies in developing foot pursuit policies and training on them.

25. The IACP stated: "Foot pursuits are inherently dangerous. Agencies must establish a balance between protecting the safety of the public and officers during pursuits on foot and law enforcement's duty to enforce the law and apprehend suspects." The IACP stated further that: "Agencies should develop and train officers on procedures to be followed during the foot pursuit" and advised agencies to address, among other things, "tactics to be utilized by pursuing officers, to include those related to safety concerns involving . . . situations where a suspect crosses over a wall or fence[.]"

26. The IACP further advised that: "Specific guidelines should be developed regarding when and how a foot pursuit should be terminated," giving due consideration to among other things whether:

      a. The danger to pursuing officers or the public outweighs the necessity for immediate apprehension;

b. The officer is acting alone—in exigent circumstances, agencies may elect to allow lone officers to keep the suspect in sight from a safe distance and coordinate containment; and

c. A suspect's identity is established or other information exists, allowing for the suspect's probable apprehension without immediate threat to the public or officers.

27. The IACP also advised that law enforcement agencies "should provide initial and regular training regarding foot pursuits," which "should address foot pursuit tactics for officers, supervisory responsibilities, and communication personnel responsibilities."

28. The TPD failed to consider, implement, or train on any of the above with respect to foot pursuits despite knowing officers are regularly involved in that dangerous activity.

29. Following the conclusion of the FDLE and TPD investigations, Defendant Payne was charged by the State of Florida with manslaughter, a second-degree felony, in violation of Fla. Stat. § 782.07(1). Accordingly, Defendant Payne was charged with killing Mr. Lowery with a firearm, without lawful justification, in a manner which was not excusable.

30. On June 1, 2022, Defendant Payne surrendered to the custody of the authorities and resigned his position with the TPD. He is no longer a law enforcement officer. The criminal charges against him remain pending as of the filing of this Complaint.

<u>**COUNT 1**</u>
**42 U.S.C. § 1983 — Fourth Amendment and Fourteenth Amendments**
**(Jamiyah Robinson, as Personal Representative**
**of the Estate of James Lowery, deceased v. Joshua Nathan Payne)**

31.     Plaintiff incorporates the allegations in Paragraphs 1 through 30 as if fully restated here.

32.     Defendant Payne's conduct constituted excessive force in violation of the U.S. Constitution.

33.     At all material times, Defendant Payne was acting under the color of state law as an agent and employee of the Titusville Police Department and City of Titusville.

34.     At all material times, Defendant Payne had no reason to believe that he was in imminent danger or fear of imminent bodily harm from Decedent.

35.     Every reasonable officer would have known that shooting an unarmed, fleeing person, who was not a danger to anyone, in the back of the head constitutes excessive force in violation of the U.S. Constitution.

36.     Defendant Payne's conduct was objectively unreasonable.

37.     As a result of Defendant Payne's excessive and unjustified use of deadly force, James Lowery was shot in the back of the head, experienced severe pain and suffering and emotional distress, and died.

38.     As a direct and proximate result of these wrongful acts and omissions, Mr. Lowery's next of kin have suffered pecuniary loss, including medical and

funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

39. The acts and omissions of Defendant Payne were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of James Lowery.

WHEREFORE, Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, deceased, demands judgment against Defendant Joshua Nathan Payne for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

**COUNT 2**
**Common Law Battery**
**(Jamiyah Robinson, as Personal Representative**
**of the Estate of James Lowery, deceased v. Joshua Nathan Payne)**

40. Plaintiff incorporates the allegations in Paragraphs 1 through 39 as if fully restated here.

41. Defendant Payne's conduct resulted in a harmful or offensive contact with James Lowery's person.

42. Defendant Payne's harmful or offensive contact with James Lowery was intentional.

43. Defendant Payne's harmful or offensive contact with James Lowery was unjustified, unpermitted, and made without James Lowery's consent.

44. As a result of Defendant Payne's harmful or offensive contact with James Lowery, James Lowery was shot, experienced severe pain and suffering and emotional distress, and died.

45. As a direct and proximate result of these wrongful acts and omissions, Mr. Lowery's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

46. The acts and omissions of Defendant Payne were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of James Lowery.

WHEREFORE, Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, deceased, demands judgment against Defendant Joshua Payne for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

**<u>COUNT 3</u>**
**Common Law Negligence**
**(Jamiyah Robinson, as Personal Representative**
**of the Estate of James Lowery, Deceased v. Joshua Nathan Payne)**

47. This count is pled in the alternative to Counts 1 and 2 above.

48. Defendant Payne owed a duty of care to James Lowery.

49. When Defendant Joshua Payne drew and used his department-issued taser and firearm, he owed a duty to exercise reasonable care in the handling and operation of the same.

50. Defendant Joshua Payne breached that duty by simultaneously arming himself with both a taser and a firearm, without justification, and climbing over a wall with both weapons in hand.

51. Defendant Joshua Payne's conduct placed the Decedent directly and foreseeably in the line of fire.

52. The way Defendant Joshua Payne handled his taser and firearm displayed complete disregard for the life of Mr. Lowery.

53. Defendant Joshua Payne's conduct directly and proximately caused James Lowery's death when Defendant Payne shot him in the back of the head.

54. Defendant Joshua Payne's conduct was grossly and flagrantly negligent, wanton, indifferent to the rights, safety, and welfare of the Decedent.

WHEREFORE, Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, deceased, in the alternative to Counts 1 and 2 above, demands judgment against Defendant Joshua Payne for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

### COUNT 4
**42 U.S.C. § 1983 — *Monell/City of Canton* Liability
for Deliberate Indifference in Training
(Jamiyah Robinson, as Personal Representative
of the Estate of James Lowery, deceased v. City of Titusville)**

55. Plaintiff incorporates the allegations of paragraphs 1-39 above as if fully restated here.

56. The Titusville Police Department failed to adequately train Officer Payne on when it is proper to draw a firearm, on the use of lethal force, and on foot pursuits.

57. The TPD's failures to train resulted in Officer Payne being incapable of reasonably and constitutionally performing his job as a law enforcement officer on December 26, 2021. Such failures to train were demonstrated by Officer Payne's drawing a firearm when Mr. Lowery had done nothing to justify such action, drawing and holding both his firearm and taser simultaneously as he continued to chase Lowery as well as maintaining such a tactic as he scaled a fence/gate/wall, and then shooting the unarmed Mr. Lowery in the back of the head despite the fact that he posed no threat to Officer Payne or anyone else.

58. On information and belief, the TPD has no policy governing officers' foot pursuits of persons or suspects. Similarly, the TPD has never trained its officers, including former Officer Payne, on foot pursuits.

59. The TPD's training failures, and the absence of a foot pursuit policy, resulted in the death of James Lowery.

60. In light of the duties assigned Officer Payne, the TPD's training failures made the need for more or different training so obvious, and the inadequacy of training so likely to result in the violation of citizens' constitutional rights, that the City of Titusville (through the TPD) can be said to have been deliberately indifferent to the need for more training. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 390 (1989). Indeed, foot pursuits have been a daily reality of the

life of a law enforcement officer since the beginning of law enforcement. The dangers of those pursuits while armed have long been known. Law enforcement associations, including the IACP, have long recommended training on foot pursuits.

61. Such a failure to train fairly represents a policy of the City of Titusville such that it is responsible for Mr. Lowery's death and the failure to train constituted a deliberate indifference to the constitutional rights of citizens like James Lowery.

62. As a result of the failure to adequately train in these respects, James Lowery was shot, suffered severe pain and suffering and emotional distress, and died.

63. Further, as a direct and proximate result of the failure to train, Mr. Lowery's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

64. The City of Titusville, through the TPD, acted under the color of state law to deprive James Lowery of his rights under the U.S. Constitution. As such, it has violated 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, deceased, demands judgment against Defendant City of Titusville for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims herein.

Date: July 12, 2023                      Jamiyah Robinson, as Administrator of the Estate of James Lowery, Deceased.

                                           By:    /s/   *Ben Crump*
                                               One of the Attorneys for Plaintiff

Ben Crump
Natalie Jackson
BEN CRUMP LAW
122 S. Calhoun Street
Tallahassee, Florida 32301
(800) 713-1222
ben@bencrump.com
natalie@nataliejacksonlaw.com

Steven Hart*
Brian Eldridge*
John Marrese*
HART MCLAUGHLIN & ELDRIDGE, LLC
One South Dearborn, Suite 1400
Chicago, IL 60603
(312) 955-0545
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com

Kevin Edwards*
EDWARDS INJURY LAW
226 Baldwin Avenue
Charlotte, NC 28204
(980) 400-3244
kevin@edwardsinjury.com

*Attorneys for Plaintiffs*

* Pending Special Admission