UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMIYAH ROBINSON,
as Personal Representative of the
ESTATE OF JAMES LOWERY,
Deceased,

    Plaintiff,

v.

JOSHUA NATHAN PAYNE, individually
and as an agent and employee of the
Titusville Police Department, and
CITY OF TITUSVILLE, FLORIDA,

    Defendants.
_____/

CASE NO.: 6:23-cv-01313-PGB-LHP

**DISPOSITIVE MOTION**

### DEFENDANT, CITY OF TITUSVILLE'S, RENEWEND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW, Defendant, CITY OF TITUSVILLE (hereinafter referred to as "Defendant" or "City"), by and through its undersigned counsel and moves this Court for the entry of a final summary judgment against Plaintiff, and states as follows:

### I.    INTRODUCTION AND BACKGROUND

Plaintiff, JAMIYAH ROBINSON, as Personal Representative of the ESTATE OF JAMES LOWERY (hereinafter "Plaintiff" or "Ms. Robinson") filed the underlying four-count Complaint alleging a 42 USC §1983 *Monell/City of Canton* Liability for Deliberate Indifference in Training against City. *See* Doc. 1, Count IV.

This lawsuit stems from an incident that took place on December 26, 2021, when the Decedent, James Lowery (hereinafter "Lowery") was shot by Officer Joshua Payne ("Payne") of the City of Titusville's Police Department ("TPD"). At approximately 7:00 p.m., TPD was notified about an aggravated domestic battery issue where the suspect was described as black male with dreadlocks, in a jacket, wearing jeans. The victim had visible signs of injury; therefore, the suspect was considered dangerous. Various officers, including Payne, responded to the general vicinity of the dispute. *See* Doc. 90, Stipulation of Agreed Material Facts, ¶¶ 1 – 3.

A man fitting the description of the suspect was detained by other officers and was subsequently released after a brief investigatory stop. *See* Depo. Matthew Gonzalez, pgs. 28:18 – 29:2. Payne came and offered assistance. Lowery was traveling on foot nearby, and he also fit the suspect's description. Doc. 90, Stipulation of Agreed Material Facts, ¶ 2. Payne was told by other officers the general direction where Lowery went, and once he saw Lowery he attempted to initiate an investigatory stop, to see if he was the suspect in the domestic case. *See* Depo. Joshua Payne pgs. 123:23 – 124:5. Payne turned on his body camera and exited his vehicle. Lowery walked away from Payne and eventually began to run, in spite of Payne's commands to stop. A foot chase ensued and Payne discharged his two taser cartridges, but they had no effect on Lowery. Doc. 90, Stipulation of Agreed Material Facts, ¶¶ 5 – 6. The chase stopped at a property where there was a gate or fence. What was beyond the fence was not viewable by Payne. Throughout the chase, the video shows Lowery pulling things out

of his pockets, which was later determined to be drugs. The entire incident transpires in approximately 51 seconds from the first time Payne sees Lowery until Payne fired of his weapon. *See* Payne's bodycam video from 00:16 – 01:07[1], Doc. 90 ¶ 7.

As set forth below, Payne testified that Lowery actively resisted him, there was a scuffle and Lowery briefly grabbed the barrel of Payne's firearm. Id. ¶ 5. This all took place within mere seconds, during a rapidly evolving scenario, and it is clear that Lowery did not comply with Payne's requests as he ripped the taser wires off his body, grabbed Payne's firearm, struck Payne and jumped over the fence. Importantly, Payne testified during his deposition that he saw Lowery in a crouching position with his right hand inside his hoodie's front pocket, which Payne interpreted as a furtive movement or an attempt to grab a gun, at which time fearing for his life, he fired a single shot and hit Payne. Emergency medical services were summoned, but Lowery died of his injuries. As it turned out, Lowery fled because he was a convicted felon, who had violated probation, had a considerable amount of illegal substances which he was apparently selling on the street, and did not want to be caught. Lowery had over $3,500 in cash. *Id.* ¶ 14.

It is submitted that Plaintiff's claims are devoid of merit and are based on speculation, inadmissible hearsay, and self-serving assertions, i.e. Plaintiff testified that other than assumptions or speculation, her claim that the City failed to train Payne is

---

[1] References to bodycam videos will be regarding the minutes and seconds within the video, i.e., 00:16 represents 16 seconds within the video; 01:07 represents one minute and seven seconds within the video, and so forth.

3

"just a thought." *See* Depo. Jamiyah Robinson, pgs. 50:25 – 51:4. Plaintiff is not sure why she filed a lawsuit against the City. *Id*. pgs. 52:12 – 54:6. Accordingly, Defendant should be entitled to summary judgment as a matter of law.

## II.  STANDARD OF REVIEW

Summary Judgment is appropriate when no genuine issue of material fact exists, and entitles the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c). On such a motion, the court is only compelled to make reasonable inferences in favor of the non-moving party. *Tinker v. Beesley*, 429 F.3d 1324, 1326 (11th Cir. 2005). A mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. *Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004). A party, opposing summary judgment cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence that is inadmissible at trial. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (Conclusions and unsupported factual allegations are legally insufficient to defeat a motion for summary judgment.); *Harris v. Public Health Trust of Miami-Dade County*, 82 F.4th 1296, 1301 (11th Cir. 2023) (same). Accordingly, any factual issue must have a real basis in the record. *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002).

## III.  STATEMENT OF MATERIAL UNDISPUTED FACTS

The parties filed jointly their "Stipulation of Agreed Material Facts" (Doc. 90) which is hereby incorporated by reference. Defendant respectfully submits these additional facts for which there was no stipulation.

1. Although there was not a specific TPD policy on foot pursuits, Payne had previously engaged in foot pursuits, they were covered by other areas of training, including but not limited to TPD officers' review of videos of foot pursuits where TPD officers critiqued what other officers had done correctly or incorrectly, physiological and psychological response to stress or dynamic response to stress, de-escalation techniques, and real-life scenario-based training. *See* Depo. of Payne, pgs. 130:3 – 133:10, 137:6 – 138:18, 139:12 – 140:7; Depo. Commander Tyler Wright, pgs. 20:15 – 26:11.

2. Payne responded to the incident in what he understood was a felony domestic battery, which he considered a serious crime. *See* Depo. of Payne, pgs. 120:1 – 10; 122:4 - 21.

3. Domestic calls for service are some of the most dangerous calls officers respond to. *See* Depo. Commander Tyler Wright, pgs. 45:20 – 23.

### IV.   ARGUMENT

### The City is Not Liable Under §1983

Under Florida law only the Personal Representative of the Estate may file a lawsuit regarding the incident which is the subject of this lawsuit. Because wrongful death did not exist at common law, all claims for wrongful death are created and

limited by Florida's Wrongful Death Act. *Cinghina v. Racik*, 647 So.2d 289, 290 (Fla. 4th DCA 1994). The Act provides a right of action when the death of a person is caused by the wrongful act or negligence of any person and the event would have entitled the person to maintain an action and recover damages if death had not ensued. *Id.*; *see also Thompson v. State Farm Mutual Auto. Ins. Co.*, 670 So. 2d 1070, 1071 (Fla. 3rd DCA 1996) *rehearing denied April 17, 1996* (The Act limits recovery to statutory survivors who are defined as the decedent's spouse, children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters.); §768.18(1) Fla. Stat. Notably, there is no allegation against the City under Florida's Wrongful Death Act.

Plaintiff's only claim against the City purports to be under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) alleging in a conclusory and self-serving manner deliberate indifference in training. *See* Doc. 1, ¶8 & Count IV. Plaintiff alleges that the City does not have a foot pursuit policy and failed to train its officers in that regard. However, the record is devoid of any admissible evidence that would preclude summary judgment for the City. To the contrary, the record evidence shows that Payne had previously engaged in foot pursuits, and they were covered by other areas of training, including but not limited to TPD officers' review of videos of foot pursuits where TPD officers critiqued what other officers had done correctly or incorrectly, as well as physiological and psychological response to stress or dynamic response to stress, de-escalation techniques, and real-life scenario-based training. *See*

6

Depo. of Payne, pgs. 130:3 – 133:10, 137:6 – 138:18, 139:12 – 140:7; Depo. Commander Tyler Wright, pgs. 20:15 – 26:11.

It is well-settled that a city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir.2001). Therefore, because Plaintiff is challenging the reasonableness of basic policy decisions made by the City, the discretionary function exception to the waiver of sovereign immunity applies and bars Plaintiff's claim. *Id*. at 1266–67. Likewise, in *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092 (11th Cir.2005), an inmate committed suicide. His personal representative brought suit alleging that the Sheriff was liable for negligent supervision, training, and management of its employees. The district court entered judgment as a matter of law in favor of the Sheriff, the Eleventh Circuit affirmed, and relying on *Lewis*, concluded that the challenged actions were the Sheriff's decisions regarding how to train its corrections officers and what subject matter to include in the training. *Id*. at 1118. Accordingly, the acts that the plaintiff challenged were discretionary governmental functions immune from liability. *Id*. at 1118–19. The same holds true in the present case.

Additionally, when a plaintiff fails to prove that his or her constitutional rights were violated then the analysis stops and plaintiff's §1983 claim against the municipality [or city] fails, hence, the court need not reach the issue of the

7

municipality's customs and policies. *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996); *Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir. 2009) (same). Assuming *arguendo* that this Court were to find that Payne violated a clearly established rule of law and was ultimately not entitled to qualified immunity, the Plaintiff's §1983 claim against the City should still fail as it cannot be held vicariously liable under §1983 for actions of its employees. A governmental entity cannot be held liable under §1983 for an injury inflicted solely by its employees without some personal wrongdoing by the employer as the doctrine of *respondeat* superior does not apply in a §1983 action. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Additionally, a City may only be liable under §1983 when the injury caused was a result of municipal policy or custom. *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009). Municipal policy or custom may include a failure to provide adequate training if the deficiency evidences a deliberate indifference to the rights of its inhabitants. *Id*. Deliberate indifference requires an official decision not to remedy a known violation; that the defendant deliberately disregarded the strong likelihood, rather than mere possibility, that harm will occur. *Gish v. Thomas*, 516 F.3d 952, 956 (11th Cir. 2008). The official policy requirement for holding a governmental entity liable is intended to make clear that governmental liability is limited to actions for which the governmental entity is actually responsible. *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). For the actions of a government official to be deemed representative of the municipality, the acting official must be imbued with final policymaking authority. *Denno v. School Board of Volusia County*, 218 F.3d 1267, 1276 (11th Cir. 2000); *Maughon v. Bibb County*, 160

F.3d 658, 659-660 (11th Cir. 1998). The record evidence in the present case shows that Officer Payne is a police officer, not the final policy making authority for the City. Additionally, the record evidence shows that the City had trained Officer Payne regarding its use of force policies. *See* Depo. Payne, pgs. 126:24 – 128:3, 131:24 – 133:10.

A policy is a decision that is officially adopted by a governmental entity or created by an official with policy making authority such that said official is acting on behalf of the governmental entity. *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991). A custom is a practice so subtle and permanent that it takes on the force of law. *Monell*, 436 U.S. at 690-91; *Denno*, 218 F.3d at 1277; *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). To rise to the level of an unconstitutional custom, Plaintiff is required to show a sufficient number of factually similar incidents with substantial merit, like the alleged misconduct which is the subject of this lawsuit. *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (though 10 citizen complaints were made against Officer Scheib, City did not have notice of past conduct because plaintiff never demonstrated past complaints of misconduct had merit). However, the number of complaints bears no relation to their validity. *Id*; *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). It is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality; a plaintiff must show that the municipal action was taken with the requisite degree of culpability, deliberate indifference to its known or obvious consequences. *Sauls v. Pierce County School District*,

9

399 F.3d 1279, 1287 (11th Cir. 2005). There is no such evidence in the present case. To the contrary, the record evidence shows that the City properly trains its officers and enforces its policies and procedures. Additionally, the City is not automatically liable even if it inadequately trained or supervised its employees, and even if those employees then proceeded to violate an individual's constitutional rights. *Gold*, 151 F.3d at 1350. The Supreme Court has explained that there are 'limited circumstances' in which an allegation of failure to train or supervise can be the basis for liability under §1983. *Id.*; *City of Canton v. Harris*, 489 U.S. 378 (1989). These limited circumstances occur "only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy and that city policy causes the employees to violate a citizen's constitutional rights." *City of Canton*, at 389. Similarly, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983 ... [M]unicipal liability under §1983 attaches where, and only where, a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *Gold*, at 1350.

In the present case Plaintiff is required to establish that the City did something wrong to cause the alleged constitutional violation and that the City's wrongful conduct evidenced deliberate indifference to the rights of Lowery. Plaintiff cannot meet this burden. The record evidence is devoid of any facts establishing that the City knew of a risk of harm and failed to stop it. In fact, Ms. Robinson concedes that other

10

than assuming or speculating that the City failed to train Payne, she has no evidence, but rather: "It's just a thought." See Depo. Of Robinson, pgs. 50:25 – 51:4. Therefore, any and all §1983 claims against the City should be dismissed.

### **Plaintiff cannot prove and is not entitled to damages**

As previously stated, under Florida law only the Personal Representative of the Estate may file a lawsuit regarding the incident which is the subject of this lawsuit. Because wrongful death did not exist at common law, all claims for wrongful death are created and limited by Florida's Wrongful Death Act ("FWDA"). *Cinghina v. Racik*, 647 So.2d 289, 290 (Fla. 4th DCA 1994). As stated in *Sullivan v. Nassau County*, 2023 WL 2391764 at *3 (M.D. Fla. 2023):

> "The Supreme Court has determined that because § 1983 does not address the survival of civil rights actions upon the death of an individual, it is "deficient." *See Robertson v. Wegmann*, 436 U.S. 584, 588 (1978). When § 1983 is deficient, 42 U.S.C. § 1988 directs courts to apply state survivorship law—if consistent with federal law—to the § 1983 claims. *See Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1045–46 (11th Cir. 2011). In the FWDA, Florida provides a comprehensive statutory scheme to address wrongful death claims and meaningfully compensate the estate of the survivors that is not inconsistent with federal law. *Sharbaugh v. Beaudry*, 267 F. Supp. 3d 1326, 1334–40 (N.D. Fla. 2017) (concluding that Florida's wrongful death statute is consistent with federal law, and thus "fills the survival gap in § 1983"). Accordingly, as Ms. Sullivan acknowledges, she must comply with the FWDA for both her federal and state-law claims."

The FWDA establishes that: "All potential beneficiaries of a recovery for wrongful death, including the decedent's estate, shall be identified in the complaint, and their relationships to the decedent shall be alleged." *See* Fla. Stat. 768.21. The

underlying Complaint is devoid of any allegations of who are Lowery's beneficiaries or survivors, other than Ms. Robinson, who is Lowery's only child. *See* Doc. 1 ¶ 3 & Doc. 90 ¶ 8. Notably, she has lived with her maternal grandmother for the last 8 years, since her mother's passing, and has never lived with Lowery. Doc. 90. ¶ 9. Lowery's name is not even on Ms. Robinson's birth certificate. *See* Depo. of Robinson, pg. 18:7 -11. She testified that although Lowery may have paid an undetermined amount of child support while her mother was alive, he also had arrears, and after her mother's passing, Lowery would only send to her maternal grandmother $130 per month for her braces, which he was no longer paying at the time of his passing. *Id*. pg. 18:12 – 20:10. Although Lowery would send money to her mother for Ms. Robinson's birthday, he stopped doing it after her mother died [in 2017]. *Id*. pg. 20:15 – 21. Ms. Robinson testified that she did not know or remember if she spoke with Lowery during the following years: 2019 – 2021. She did recall speaking to him in 2018 and it was pertaining to payment for her braces. *Id*. pgs. 20:22 – 22:3. The last time she took a photograph with Lowery was during her mother's funeral in 2017. *Id*. pg. 22:7 – 9.

Although Ms. Robinson was 21-years old at the time of her deposition in June 2025, and is the Personal Representative of Lowery's Estate, she does not know if Lowery supported any relatives, and she has no communication with her father's side of the family. *Id*. pgs. 22:10 – 24:3. She did not pay any funeral expenses, does not know if anyone paid for them, has not received any insurance proceeds, contributions or donations, and does not know if there was a distribution of assets by a court of law.

12

*Id*. pgs. 31:8 – 32:4. Moreover, she did not go to his funeral or wake, and was not invited to same. *Id*. pg. 36:1 – 4.

Lowery's passing is certainly unfortunate. However, he made a decision to flee from Payne, who was in a marked police car and in full uniform, Doc. 90 ¶ 4. At the time of the subject incident (12-26-21) Lowery had a prior felony charge for which he was sentenced to 36 months of probation on April 8, 2021, and had over $3,500 in cash on his person, various card, including a debit card which was not under his name, as well as illegal and controlled substances on his person. *Id*. ¶¶ 12 & 14. He had also been recently arrested, on November 12, 2021, for a violation of probation, and his toxicology report showed that he was positive for opiates, oxycodone and cannabinoids. *Id*. ¶¶ 13 & 15. Lowery resisted Payne because he did not want to get caught, and go back to jail after an initial charge, a violation of probation, and new charges that would have been brought against him.

Ms. Robinson did not seek any type of psychological or psychiatric treatment as a result of Lowery's death. Depo. Robinson, pg. 58:3 -6. Ms. Robinson had no contact with Lowery since 2018, and was estranged from him and his family. Although Lowery's passing is unfortunate, the record is devoid of any evidence regarding Ms. Robinson's damages as a result of Lowery's death, and she cannot recover any damages under § 1983.

**The City is not liable since Payne is entitled to qualified immunity**

As an additional reason for summary judgment, the City submits that Payne is entitled to qualified immunity and as such, the City cannot be liable to Plaintiff under the only claim pled against the City, Count 4. Payne acted in an objectively reasonable manner, did not violate Lowery's rights and also had probable cause to act as he did or at the very minimum had arguable probable cause. Therefore, he did not violate Plaintiff's constitutional rights. However, assuming *arguendo* that there was a constitutional violation- which is denied- it is submitted that Payne is entitled to qualified immunity.

The present case is similar to *Murphy v. Dennings*, 626 F. App'x 836, 840 (11th Cir. 2015) where the District Court and Eleventh Circuit found that an officer was entitled to use deadly force when a suspect, who had engaged in a high-speed chase with police and hit two police cars, fled on foot and made a sudden movement towards his waistband, and the officer discharged his firearm ten to twelve times – in the present case Payne fired a single shot- in direction of suspect, striking him twice since he perceived a genuine threat. The Eleventh Circuit held:

> "When Plaintiff made a sudden movement toward his waistband, an objective officer in Deputy Caron's situation could have believed reasonably that Plaintiff was reaching for a gun and that Plaintiff posed an imminent threat of serious physical injury to the officers and to others. Faced with a "tense, uncertain, and rapidly evolving" situation, Deputy Caron made a split-second decision to fire his gun in an attempt to disarm or incapacitate Plaintiff. Given the circumstances, we cannot say that Deputy Caron's decision was unreasonable in the Fourth Amendment sense. Although Plaintiff was running away from Deputy Caron when he was shot and had not threatened definitely the officers

with a gun, "the law does not require officers in tense and dangerous situations to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *See Long v. Slaton*, 508 F.3d 576, 581 (11th Cir.2007)." *Id*. at 840.

The use of force is governed by *Tennessee v. Garner,* 471 U.S. 1 (1985), *Graham v. Connor*, 490 U.S. 386 (1989) and their progeny. Under *Graham* and *Garner*, claims that law enforcement officers have used excessive force are to be judged under the Fourth Amendment's objective reasonableness standard. The resolution of an excessive force claim turns on whether the challenged actions were objectively reasonable in light of the facts and circumstances facing the officers at the scene, not with 20/20 vision of hindsight. *Graham*, 490 U.S. at 396-397. The Court is to consider the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing. *Id*. at 396. A mechanical application of these factors is not appropriate. *Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir. 2010).

There is no precise test or a "magical on-off switch" to determine when an officer is justified in using force. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). Significantly, the only perspective that counts is that of a reasonable officer on the scene as the incident unfolds. *Id*. The reasonableness inquiry in an excessive force case is an objective one: whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id*. at 1166-1167. Because an officer's perspective in the field differs from that of a judge sitting peacefully in chambers, courts must resist the temptation to judge an officer's actions with the 20/20 vision of hindsight. *Id*. at 1167;

15

*Penley*, 605 F.3d at 854 (We [Eleventh Circuit] are loath to second guess the decisions made by police officers in the field). Additionally, even a reasonable, but mistaken belief, that probable cause exists for using force is not actionable under §1983. *See Carr v. Tatangelo*, 338 F.3d 1259, 1268 (11th Cir. 2003); *see also* §776.05, Fla. Stat.

Police officers must make split-second decisions based on the totality of the circumstances in rapidly evolving situations which may pose danger to the officers and others. The record evidence shows that Payne was a TPD officer, in a marked police car, in full uniform and acting within the course and scope of his duties as a police officer when he encountered Lowery. Doc. 90 ¶¶ 2 – 3. On the other hand, Lowery had criminal charges pending against him, including a recent violation of probation, was in possession of a significant amount of illegal drugs and controlled substances, in addition to at least one debit card that was not his, at least $3,500 in cash, two cellphones, and as shown by the toxicology report, he had ingested illegal substances. *Id*. ¶¶ 12 – 15. Therefore, Lowery did not want to be caught and face additional criminal charges.

The Eleventh Circuit has held that the purpose of qualified immunity is to allow public officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation. *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009). If the official was acting within the scope of his discretionary authority, the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate. *Id*. The determination of whether an officer is entitled to qualified

immunity is one of law to be made by the court and not submitted to a jury. *Chaney v. City of Orlando*, 291 Fed.Appx. 238, 243 (11th Cir. 2008) *citing Stone v. Peacock*, 968 F.2d 1163, 1165 (11th Cir. 1992). Significantly, if reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity. *Storck v. City of Coral Springs*, 354 F.3d at 1314.

Qualified immunity decisions should be resolved at the earliest possible stage in the litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Dalrymple v. Reno*, 334 F.3d 991, 994-995 (11th Cir. 2003). The public's strong interest in avoiding government disruption requires that qualified immunity be an immunity from trial, not just from liability. *Post*, 7 F.3d at 1556. Additionally, the Eleventh Circuit has held that official conduct is generally accorded a presumption of legitimacy. *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).

Police officers are not required to wait and see, and "hope for the best." *Garczynski*, 573 F.3d at 1167, *citing Scott v. Harris*, 550 U.S. at 385. Importantly, TPD officers, including Payne, had been dispatched to a 911 call of a domestic battery complaint, where the victim had visible injuries. *See* Doc. 90 ¶1; Doc 1 ¶9; Depo. Payne, pgs. 33:11 – 34:1, 119:13 – 120:10; Depo. Officer Matthew Gonzalez, pgs. 19:16 - 20:24. The collective knowledge doctrine imputes an officer's knowledge to other officers. *See Terrell v. Smith*, 668 F.3d 1244, 1252 (11th Cir. 2012) ( Both the United States Supreme Court and the Florida Supreme Court have allowed the collective knowledge of the investigating officers to be imputed to each participating

officer.); *Dewberry v. State*, 905 So. 2d 963, 967 (Fla. 5th DCA 2005) (The fellow officer rule, sometimes referred to as the collective knowledge doctrine, allows the collective knowledge of police investigating a crime to be imputed to each member of the investigation.). Payne acted reasonably under the circumstances, in a tense, uncertain and rapidly evolving scenario, where an aggravated domestic assault suspect disregarded his commands, fled from him, the use of a taser had no effect on Lowery who physically fought and assaulted Payne, grabbed the barrel of his firearm, and made a furtive movement towards his sweater's front pocket- which was perceived as going for a firearm by Payne. As stated by the Eleventh Circuit in *Murphy v. Demings, supra*, at 841:

> "An objectively reasonable officer possessing the same knowledge as Deputy Caron could have believed that the use of deadly force against Plaintiff was justified, to prevent serious injury to the officers and to bystanders. And we are highly confident that Deputy Caron— given the circumstances—violated no clearly-established constitutional right of which a reasonable person would have known. As a matter of law, Deputy Caron is entitled to summary judgment."

Based on the totality of the circumstances it was not unreasonable for Payne to believe that Lowery represented a threat to him and although unfortunate, the use of force under the totality of the circumstances did not violate Lowery's civil rights, Payne's actions were objectively reasonable, and he should be entitled to qualified immunity.

As such, the City should not be liable to Plaintiff under §1983 since there was no constitutional violation. *See Penley v. Eslinger*, 605 F.3d 843, 854–55 (11th Cir.2010)

18

(holding that a sheriff sued in his official capacity could not be liable under §1983 where there was no deprivation of rights); *Rooney v. Watson*, 101 F.3d 1378 (11th Cir.1996) (unnecessary to review argument of failure to train by sheriff when deputy did not violate a constitutional right); *Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir.2009) (same).

## CONCLUSION

It is reiterated that conclusions and unsupported factual allegations are legally insufficient to defeat summary judgment. *Ellis*, 432 F.3d at 1326; *Harris,* 82 F.4th at 1301. Accordingly, for the reasons stated in this motion, it is respectfully submitted that summary judgment be granted for Defendant as a matter of law.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this this 4th day of December 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a true and correct copy of the foregoing trough a notice of electronic filing to: Ben Crump, Esq., ben@bencrump.com ; Natalie Jackson, Esq., natalie@nataliejacksonlaw.com ; Steven Hart, Esq., shart@hmelegal.com ; Brian Eldridge, Esq., beldridge@hmelegal.com ; John Marrese, Esq., jmarrese@hmelegal.com; Kevin Edwards, Esq., kevin@edwardsinjury.com ; Attorneys for Plaintiff; and Lyman H. Reynolds, Esq. & James R. Jimenez, Esq., lreynolds@rrbpa.com , jjimenez@rrbpa.com , Attorneys for co-defendant, Joshua Payne.

/s/ Ramon Vazquez
Ramon Vazquez, Esq.
Florida Bar No.: 196274
Primary e-mail:  rvazquez@roperpa.com
Secondary e-mail:
jmichaelsen@roperpa.com
Roper, Townsend & Sutphen, P.A.
255 S. Orange Ave., Suite 750
Orlando, FL  32801
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
Attorneys for City of Titusville