407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

MILESTONE I REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

**ORIGINAL**

1   UNITED STATES DISTRICT COURT

2   MIDDLE DISTRICT OF FLORIDA

3   ORLANDO DIVISION

4   CASE NO.: 6:23-CV-01313-PGB-LHP

5

6   JAMIYAH ROBINSON, AS

7   PERSONAL REPRESENTATIVE OF

8   THE ESTATE OF JAMES LOWERY,

9   DECEASED,

10  Plaintiff,

11

12  V.

13

14  JOSHUA NATHAN PAYNE,

15  INDIVIDUALLY AND AS AN AGENT

16  AND EMPLOYEE OF THE

17  TITUSVILLE POLICE DEPARTMENT,

18  AND CITY OF TITUSVILLE, FLORIDA,

19  Defendants.

20

21

22

23  DEPONENT:  JAMIYAH FRAKIYA ROBINSON

24  DATE:      JUNE 6, 2025

25  REPORTER:  KIMBERLY ROBERTS

401 EAST JACKSON STREET,
SUITE 2370
TAMPA, FL 33602

315 EAST ROBINSON STREET,
SUITE 510
ORLANDO, FLORIDA 32801
CORPORATE

```
 1                          APPEARANCES

 2   ON BEHALF OF THE PLAINTIFF, JAMIYAH ROBINSON, AS
     PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES LOWERY,
 3   DECEASED:
     John Marrese, Esquire
 4   Hart, McLaughlin & Eldridge, LLC
     1 South Dearborn
 5   Suite 1400
     Chicago, Illinois 60603
 6   Telephone No.: (312) 955-0545
     E-mail: jmarrese@hmelegal.com
 7
     ON BEHALF OF THE DEFENDANT, JOSHUA NATHAN PAYNE,
 8   INDIVIDUALLY AND AS AN AGENT AND EMPLOYEE OF THE
     TITUSVILLE POLICE DEPARTMENT:
 9   James Jimenez, Esquire
     Roberts, Reynolds, Bedard & Tuzzio, PLLC
10   470 Columbia Drive
     Suite C101
11   West Palm Beach, Florida 33409
     Telephone No.: (561) 688-6560
12   E-mail: jjimenez@rrbpa.com

13   ON BEHALF OF THE DEFENDANT, CITY OF TITUSVILLE, FLORIDA:
     Ramon Vazquez, Esquire
14   Roper, Townsend & Sutphen, P.A.
     255 South Orange Avenue
15   Suite 750
     Orlando, Florida 32801
16   Telephone No.: (407) 897-5150
     Facsimile No.: (407) 897-3332
17   E-mail: rvazquez@roperpa.com

18

19

20

21

22

23

24

25
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

```
 1                        INDEX
                                            Page
 2  PROCEEDINGS                              5
    DIRECT EXAMINATION BY MR. VAZQUEZ        6
 3  CROSS-EXAMINATION BY MR. JIMENEZ         54
    EXAMINATION BY MR. MARRESE               61
 4  REDIRECT EXAMINATION BY MR. VAZQUEZ      62

 5                      EXHIBITS
    Exhibit                                 Page
 6  Defendant's
    1 - Notice to Take Deposition            30
 7  2 - Plaintiff's Answers to Defendant City
        of Titusville's First Set of
 8      Interrogatories                       32
    3 - Plaintiff's Supplemental Answers to
 9      Defendant City of Titusville's First Set
        of Interrogatories                    36
10  4 - Arrest Affidavit                      39
    5 - Judgement/Order of Probation          40
11  6 - Arrest Affidavit                      41
    7 - Affidavit of Violation of Probation   42
12  8 - Florida Department of Corrections
        Violation Report Dated November 15, 2021  42
13  9 - Brevard County Sheriff's Office Case
        Supplement Report                     45
14  10 - Photographs of Money & Drugs         47
    11 - Steward Reference Laboratory Toxicology
15       Report                               51
    12 - Photographs of Drugs                 55
16
    Plaintiff's
17  13 - Complaint                            60

18

19

20

21

22

23

24

25
```

**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1                               STIPULATION

2

3    The VIDEO deposition of JAMIYAH FRAKIYA ROBINSON was

4    taken at MILESTONE REPORTING COMPANY, 315 EAST ROBINSON

5    STREET, SUITE 510, ORLANDO, FLORIDA 32801 on FRIDAY the

6    6th day of JUNE 2025 at approximately 10:08 a.m. (ET);

7    said deposition was taken pursuant to the FLORIDA Rules

8    of Civil Procedure.

9

10   It is agreed that KIMBERLY ROBERTS, being a Notary

11   Public and Court Reporter for the State of FLORIDA, may

12   swear the witness and that the reading and signing of

13   the completed transcript by the witness is not waived.

14

15

16

17

18

19

20

21

22

23

24

25



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          **www.MILESTONEREPORTING.com**          Toll Free 855-MYDEPOS

5b1ff11b6ea93f29 Robinson Jamiyah-06-06-2025

```
 1              PROCEEDINGS
 2          THE REPORTER:  Okay.  Good morning.  We are now
 3      on the video record.  And this is the videotaped
 4      deposition of Jamiyah Robinson in the case of
 5      Jamiyah Robinson, as personal representative of the
 6      estate of James Lowery, deceased, v. Joshua Nathan
 7      Payne, individually and as agent and employee of the
 8      Titusville Police Department, and City of
 9      Titusville, Florida. Case number 6:23-CV-01313-PGB-
10      LHP.
11          Today's date is June 6, 2025.  And the current
12      time is 10:09 a.m.  Will Counsel please introduce
13      themselves for the record starting with Plaintiff's
14      Counsel?
15          MR. MARRESE:  John Marrese for Plaintiff.  Good
16      morning.
17          MR. JIMENEZ:  James Jimenez for Defendant,
18      Joshua Nathan Payne.
19          MR. VAZQUEZ:  I'm Ramon Vazquez for the
20      Defendant, City of Titusville.
21          THE REPORTER:  Perfect.  Thank you.  All right,
22      Ms. Robinson, will you please raise your right hand?
23      Do you solemnly swear or affirm that the testimony
24      you're about to give will be the truth, the whole
25      truth, and nothing but the truth?
```



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

```
 1              THE WITNESS:  Yes, ma'am.

 2              THE REPORTER:  Thank you.

 3                    DIRECT EXAMINATION

 4          BY MR. VAZQUEZ:

 5       Q.   Good morning.

 6       A.   Good morning.

 7       Q.   Yes.  As I identified myself before the

 8  deposition, my name is Ramon Vazquez and I represent the

 9  City of Titusville in a lawsuit that you have brought

10  against my client, as well as co-Defendant, Joshua

11  Payne.  Today, I will be asking you questions, and as

12  well as Mr. Jimenez, and perhaps, your attorney.  We

13  want you to answer them to the best of your ability,

14  okay?

15          Have you ever been in a deposition before

16  today?

17       A.   No, sir.

18       Q.   I'm sure that your attorney has explained to

19  you some of the ground rules.  I'll just go over them.

20  You know, some basic ground rules.  Please answer the

21  question to the best of your ability.  If you don't

22  understand the question, please let us know.  Otherwise,

23  we will all assume that you understood; is that fair?

24       A.   Yes, sir.

25       Q.   Okay.  In normal conversation, we can say uh-
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1   huh, uh-uh, nod our hands, talk over each other and we

2   can understand ourselves, but since this is a formal

3   proceeding, it's going to be recorded and transcribed.

4   So for clarity purposes, I may prompt you, every now and

5   then, is that a yes, is that a no, just to be clear on

6   the record; do you understand?

7       A.  Yes, sir.

8       Q.  At any time, feel free to ask for a break.  We

9   can break at any time for any reason.  All I ask is that

10  you please answer the last question that was asked and

11  then we can go on break; is that understood?

12      A.  Yes, sir.

13      Q.  Okay.  And as I said to you, Ms. Robinson,

14  before the deposition, today we're going to be asking

15  some difficult questions.  Now, it is not our intent to

16  make you upset in any way, so please understand that. We

17  are attorneys doing our job to the best of our ability

18  on behalf of our clients, and we will keep it very

19  professional, okay?

20      A.  Yes, sir.  I understand.

21      Q.  This was a deposition Duces Tecum, and I know

22  that your attorney posed some objections to it.  I'm

23  going to show you a copy of the Notice of Deposition.

24  I'm going to show it to your attorney first, and then

25  he'll pass it on to you.  You may keep it for now.



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1        A.    Okay.

 2        Q.    Have you ever seen this document before today?

 3        A.    Yes, sir.

 4        Q.    Okay.  And then we're going to go over the

 5   items one by one and your attorney may object to it. And

 6   that's another ground rule for the deposition, by the

 7   way.  If your attorney objects, you are still required

 8   to answer the question unless he specifically instructs

 9   you to not answer the question.  Otherwise, he may

10   object, but you're still required to answer.

11             Do you understand?

12        A.    Yes, sir.

13             MR. MARRESE:  It's okay.  Rather than interrupt

14        your questioning, I'll just incorporate by reference

15        my e-mail and e-mails between us objecting to the

16        Duces Tecum, unless you would like me to object.

17             MR. VAZQUEZ:  I would prefer for you to object

18        directly.

19             MR. MARRESE:  Okay.  Sure, yeah.

20             MR. VAZQUEZ:  And if you want to pose it as a

21        standing objection, that's fine.  I just want to be

22        on the record then.

23             MR. MARRESE:  Okay.  Sure.

24             BY MR. VAZQUEZ:

25        Q.    Okay.  Ms. Robinson, as to Item number 1 in
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

585085 Robinson Damiyah 06-08-2023    Page 9

1  the Notice, did you bring any medicals, like psychiatric

2  or psychological records or bills or anything regarding

3  any treatment you may have received as a result of the

4  incident, which is the subject of this lawsuit?

5       A.   No, sir.

6       Q.   Regarding Item number 2, have you brought any

7  tax returns or any information from the IRS from the

8  year 2018 until the present date?

9       A.   No, sir.

10      Q.   Okay.  Have you brought any pay stubs, W-2

11 Forms, W-9 Forms, or any type of verification regarding

12 any payments made to you from 2018 to the present date?

13      A.   No, sir.

14      Q.   Have you brought any documentation,

15 photographs, digital images, video recordings, or any

16 tangible evidence, which you believe may prove each and

17 every one of the allegations in the underlying

18 complaint?

19      A.   No, sir.

20      Q.   Number 5, have you brought any documentation

21 submitted by you or given to you regarding any old

22 benefits sought by you from any government agencies

23 regardless of the type of benefit?

24      A.   No, sir.

25      Q.   Have you brought any documentation,

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

589095 Robinson Demiryan 06-01-2023    Page 10

```
 1  photographs, digital images, video recordings, or any

 2  other tangible evidence, which substantiates the special

 3  damages claimed by you as a result of the incident,

 4  which is the subject of this lawsuit?

 5       A.   No, sir.

 6       Q.   And have you brought any documents, opinions

 7  from respondents, reports, or e-mails, anything

 8  whatsoever from an expert witness retained on your

 9  behalf regarding this lawsuit?

10       A.   No, sir.

11       Q.   And Number 8, have you brought any

12  photographs, digital images, video recording, or any

13  tangible evidence of Mr. Lowery regarding the incident

14  which is the subject to this lawsuit?

15       A.   No, sir.

16       Q.   Okay.  And I understand that some were

17  produced with Discovery.

18           MR. MARRESE:  For the record, yes.  With

19       respect to Number 4, 6, and 8, Plaintiff has

20       produced documents responsive to those requests in

21       Discovery.  In particular, in response to the

22       Request for Production of Documents from the City of

23       Titusville.  In response to Number 2, 3, and 5,

24       referring to my e-mail on the subject, those matters

25       are irrelevant.  And just want to make that for the
```

**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

```
 1      record.  Thank you.

 2           MR. VAZQUEZ:  Sure.  Got you.

 3           BY MR. VAZQUEZ:

 4      Q.   And we had a discussion regarding the cell

 5 phones, two cell phones that were retrieved from the

 6 police department.  And I understand that they were

 7 given to you upon your request.

 8           Do you know what I'm talking about?

 9      A.   No, sir.

10      Q.   Okay.  I understand Mr. Lowery was your

11 father, correct?

12      A.   Yes, sir.

13      Q.   Okay.  My understanding is that Mr. Lowery

14 had, at the time of his passing, he had two cell phones

15 with him.  Have you ever seen those cell phones?

16      A.   No, sir.

17      Q.   You have not.  Do you know who possesses --

18 who has those cell phones?

19      A.   No, sir.  I do not.

20      Q.   Do you know who retrieved them from the police

21 department?

22      A.   No, sir.

23           MR. VAZQUEZ:  Okay.  Let's go off the record

24      momentarily.

25           THE REPORTER:  Okay.  Going off the record and
```

**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    the time is 10:16 a.m.

2         (A recess was taken.)

3         THE REPORTER:  Okay.  We are back on the video

4    record and the time is 10:18 a.m.

5         BY MR. VAZQUEZ:

6    Q.    Okay.  And will you please state and spell

7    your full name for the record?

8    A.    J-A, apostrophe, M-I-Y-A-H.

9    Q.    And do you have a middle name?

10   A.    Yes.  Frkiya, F-R-K-I-Y-A, Robinson,

11   R-O-B-I-N-S-O-N.

12   Q.    And Ms. Robinson, while we were off the

13   record, you gave us your date of birth and Social

14   Security number; is that correct?

15   A.    Yes, sir.

16   Q.    Okay.  And where do you currently live?

17   A.    Florence, South Carolina.

18   Q.    What is the address there?

19   A.    1825 Autumn Lane.

20   Q.    What city?

21   A.    Florence.

22   Q.    State?

23   A.    South Carolina.

24   Q.    And the ZIP code?

25   A.    29501.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        Q.    How long have you lived there?

 2        A.    For eight years.

 3        Q.    Eight years.  Do you live by yourself or does

 4   someone live with you?

 5        A.    I live with my grandmother --

 6        Q.    With your grandmother --

 7        A.    -- and two siblings.

 8        Q.    And what is your grandmother's name?

 9        A.    Gloria Robinson.

10        Q.    Okay.  And your siblings?

11        A.    Rah'kiya McCall.

12        Q.    How do you spell it?

13        A.    R-A-H-'-K-I-Y-A, McCall, M-C-C-A-L-L.

14        Q.    And how old is Ms. McCall?

15        A.    16.

16        Q.    And your other sibling?

17        A.    Robert McCall.

18        Q.    And how old is Mr. McCall?

19        A.    18.

20        Q.    And you are currently 21 years old, correct?

21        A.    Yes, sir.

22        Q.    Okay.  So you've lived with your grandmother

23   since you were approximately 13 years old?

24        A.    Yes, sir.

25        Q.    Okay.  And who raised you before you went to
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

5b9b95 Robinson Demiyah 06-08-2023        Page 14

1  live with your grandmother?

2      A.   My mother.

3      Q.   Your mother.  And what is your mother's name?

4      A.   Amanda, A-M-A-N-D-A, Robinson.

5      Q.   And where does Ms. Amanda Robinson live?

6      A.   She's deceased.

7      Q.   Deceased.  I'm sorry to hear that.

8      A.   Yes.  Thank you.

9      Q.   Is that the reason why you went to live with

10 your grandmother because of the passing of your mother

11 or was it for some other reason?

12     A.   The passing of my mother.

13     Q.   Okay.  And Mr. James Lowery was your father,

14 correct?

15     A.   Yes, sir.

16     Q.   How many children did Mr. Lowery have?

17     A.   One.  Just me.

18     Q.   Just you.  Did you ever live with your father?

19     A.   No, sir.

20     Q.   Okay.  At the time that you were born, where

21 did he live?

22     A.   I'm not sure.

23     Q.   Not sure, okay.  And were you born in South

24 Carolina or elsewhere?

25     A.   South Carolina.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

5b1ff11b Robinson Demiyah 06-03-2025    Page 15

1    Q.   South Carolina.  And have you lived in South

2  Carolina for your entire life?

3    A.   Yes, sir.

4    Q.   Okay.  We're here because of an incident that

5  occurred in 2021.  Do you recall the date or do you know

6  the date?

7    A.   December -- I don't recall the exact date, but

8  I know it was after Christmas.

9    Q.   Uh-huh.  My understanding, according to the

10  allegations, that it was December 26, 2021.  Is -- does

11  that sound correct?

12    A.   Yes, sir.

13    Q.   Okay.  Was Mr. Lowery living in Florida at the

14  time of his passing?

15    A.   Yes, sir.

16    Q.   How long had he lived in Florida before his

17  passing?

18    A.   I don't recall.

19    Q.   Okay.  Was it more than five years?

20    A.   Yes, sir.

21    Q.   More than 10 years?

22    A.   Yes, sir.

23    Q.   Okay.  When was the last time that you saw Mr.

24  Robinson before his passing?

25    A.   2017, at my mother's funeral.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   I asked you before if -- okay, so 2017 was the

2  year.  Yeah, that's eight years ago that your mom

3  passed.  I apologize.  And that would've been in South

4  Carolina?

5    A.   Yes, sir.

6    Q.   And where did you see him, at a funeral home,

7  or where was this?

8    A.   The actual funeral.  I don't know what -- what

9  you would call it.  I'm assuming the funeral place.

10    Q.   Okay.  And for how long did you see him that

11  day?

12    A.   The whole day.

13    Q.   The whole day.  Okay.  Were there some kind of

14  service or wake going on?

15    A.   Yes, sir.

16    Q.   Okay.  And before that location, when had you

17  last seen him?

18    A.   A year before that.

19    Q.   About where at?

20    A.   In 2015.

21    Q.   Oh, 2015?

22    A.   At my grandmother's house.

23    Q.   Okay.  Did he visit or did he stay at your

24  grandmother's house in 2015?

25    A.   Just visit.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Sb9095 Robinson Demiryan 06-01-2023                Page 17

1    Q.   But at that time you weren't living with your

2  grandmother either, correct?

3    A.   No.  No, sir.

4    Q.   Okay.  So that's correct?

5    A.   Yeah.  I was staying at my mother's still.

6    Q.   Yeah.  When was the last time that you stayed

7  under the same roof as your father?

8    A.   I don't recall.

9    Q.   Did you ever stay under the same roof with

10  your father?

11    A.   I maybe as a baby.  I'm not sure.

12    Q.   Okay.  Did you communicate with your father?

13    A.   Yes, sir.

14    Q.   Okay.  Now, how so?

15    A.   Maybe monthly.

16    Q.   Monthly?

17    A.   Yes, sir.

18    Q.   Okay.  And how did you communicate with him?

19  Was it text messages or a phone call?  How did you

20  communicate?

21    A.   Phone calls through my grandmother.

22    Q.   Okay.  So he would call his mom, and then at

23  the same time, you would talk to him; is that correct?

24    A.   No, my grandmother.

25    Q.   Oh, okay.  So --

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        A.   So my mom's mom.

 2        Q.   Oh, okay.  Okay.  I apologize.

 3        A.   It's okay.

 4        Q.   Okay.  So you -- this is your maternal

 5  grandmother?

 6        A.   Yes, sir.

 7        Q.   Okay.  Is your father's name on your birth

 8  certificate?

 9        A.   No, sir.

10        Q.   Why not?

11        A.   I'm not sure.

12        Q.   Did your father support you in any way?

13        A.   Yes, sir.

14        Q.   How so?

15        A.   Child support, and after the passing of my

16  mom, he started to help my grandmother with my braces.

17  He would send gifts for my birthday.

18        Q.   And you mentioned child support, was there a

19  court order ordering him to pay child support?

20        A.   I don't recall.

21        Q.   Okay.  And did he ever pay child support to

22  your mom while she was alive?

23        A.   Yes, sir.

24        Q.   How much?

25        A.   I'm not sure.  I was younger.
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

1       Q.    Okay.  Was it current or was it in arrears?

2       A.    Would you explain what in arrears means?

3       Q.    Yeah.  Well, was it current or did he miss

4  some payments?

5       A.    He did miss some payments.

6       Q.    And how much was he behind?

7       A.    I'm not sure.

8       Q.    Okay.  Is there any way you can obtain that

9  information?

10      A.    I'm not sure.

11      Q.    Okay.  How about after your mother's passing,

12 how did he support you?

13      A.    He would send money to my grandmother for my

14 braces.

15      Q.    For braces.  And how much did your braces

16 cost?

17      A.    I believed it was $130 a month.  I'm not sure.

18      Q.    For how long?

19      A.    I'm not sure.

20      Q.    And what is the doctor's name who would

21 prescribed the braces?

22      A.    I'm not sure the doctors.  I know the name of

23 the company.

24      Q.    Company?

25      A.    Okay.  White Brown Smiles.



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Sb9095 Robinson Demiyah 06-03-2023   Page 20

```
 1        Q.    I'm sorry, can you say it again?

 2        A.    White Brown Smiles.

 3        Q.    And where are they located?

 4        A.    Florence, South Carolina.

 5        Q.    When did you start your braces?

 6        A.    I believe either the year of 2017 or 2018

 7   after my birthday.

 8        Q.    At the time of his passing, were you done with

 9   your braces?

10        A.    Yes, sir.  I had already started somewhere

11   else.

12        Q.    Okay.  And was he paying at that other place

13   or --

14        A.    No, sir.

15        Q.    No.  Okay.  And you said that he would also

16   give you money for your birthday.  How much would he

17   give you?

18        A.    I'm not sure.  My mother would have that --

19        Q.    Okay.  And after your mother's passing, did he

20   send you money during your birthday?

21        A.    No, sir.

22        Q.    When was the last time that you spoke to him

23   before his passing?

24        A.    I do not recall.

25        Q.    Okay.  Did you talk to him on Christmas Day,
```


**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

5b9095-Robinson Demiryan 06-07-2023

1   the day before his passing?

2       A.   No, sir.

3       Q.   Okay.  Did you talk to him during the holiday

4   season of 2021?

5       A.   No, sir.

6       Q.   Did you talk to him at all during the year,

7   2021?

8       A.   I don't recall.

9       Q.   Did you talk to him in the year 2020?

10      A.   I don't remember.

11      Q.   How about 2019?

12      A.   I don't remember.

13      Q.   How about 2018?

14      A.   Yes, sir.

15      Q.   So last time that you currently remember that

16  you spoke to him would've been the year after your

17  mother's passing in 2018?

18      A.   Yes, sir.

19      Q.   What was the context of that conversation?

20      A.   Pertaining to my braces.

21      Q.   And what did you two discuss?  What was said?

22      A.   Payment issues.

23      Q.   Okay.  And what did he say?  That he would pay

24  for them in full, in part?

25      A.   Parts, and my grandma was doing half-and-half.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Sb9095-Robinson-Demiryan 06-01-2023        Page 22

1     Q.   So of the 130 a month, he would pay half of

2  it?

3     A.   Yes, sir.

4     Q.   And did he comply throughout the entire

5  treatment?

6     A.   Yes, sir.

7     Q.   When was the last time that you took a

8  photograph with your father?

9     A.   2017, my mother's funeral.

10    Q.   Okay.  Did your father support any other

11  relatives?

12    A.   Of my family?

13    Q.   Of his family; therefore, your family?

14    A.   I'm unsure.  I don't know.

15    Q.   You don't know?

16    A.   No, sir.

17    Q.   Is that correct?  You don't know?

18    A.   Yes, sir.  I don't know.

19    Q.   What kind of relationship do you have with

20  your father's side of the family?

21    A.   None.

22    Q.   None?

23    A.   Yes, sir.

24    Q.   Okay.  And why is that?

25    A.   They don't communicate with me, so I'm unsure.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

```
 1       Q.   Have you ever spoken with your paternal

 2  grandmother?  That is Mr. Lowery's mother.

 3       A.   I don't recall.  It hadn't been recently,

 4  like --

 5       Q.   When was the last time that you recall ever

 6  speaking to her?

 7       A.   I'm not sure.

 8       Q.   Were you a child at the time?

 9       A.   Yes, sir.

10       Q.   Okay.  Who were you -- was it while your

11  mother was alive or had your mother already passed at

12  the time?

13       A.   She was alive.

14       Q.   She was alive.  Okay.  That would've been

15  before 2018 then?

16       A.   Yeah.

17       Q.   Okay.  How about Mr. Lowery's sister?  Did you

18  speak to her at all?

19       A.   No, sir.

20       Q.   When was the last time you spoke to her?

21       A.   I don't recall.  I don't remember speaking to

22  her at all.

23       Q.   Does he have any other siblings?

24       A.   No, sir.

25       Q.   Does not.  Okay.  As far as you know, his only
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1  living relatives would've been his mother and his

 2  sister?

 3       A.   Yes, sir.

 4       Q.   And what are their names?

 5       A.   Johari is the sister name, and Linda is the

 6  mom's name.

 7       Q.   Where does Ms. Linda live?

 8       A.   Florence, South Carolina.

 9       Q.   And how about Ms. Johari?

10       A.   I'm not sure.

11       Q.   Ms. Robinson, are you currently employed?

12       A.   No, sir.

13       Q.   Okay.  Are you a student?

14       A.   Yes, sir.

15       Q.   Where at?

16       A.   Francis Marion University.

17            THE REPORTER:  Can you say that again?

18            THE WITNESS:  Francis Marion University.

19            THE REPORTER:  Thank you.

20            THE WITNESS:  You're welcome.

21            BY MR. VAZQUEZ:

22       Q.   And where is it located?

23       A.   Florence, South Carolina.

24       Q.   Is it nearby your home?

25       A.   No, sir.
```



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

S090961 Robinson Osmiyan 06-03-2025        Page 25

```
 1        Q.   Do you commute on a daily basis or do you stay

 2   near the university?

 3        A.   I commute on a daily basis.

 4        Q.   Okay.  So you still live with your grandmother

 5   and you commute in order to go to school?

 6        A.   Yes, sir.

 7        Q.   Okay.  And I understand that the academic year

 8   just finished, correct?

 9        A.   Yes, sir.

10        Q.   Okay.  What year did you just finish, a

11   freshman, a sophomore?

12        A.   Sophomore.

13        Q.   Sophomore.  And what degree are you pursuing?

14        A.   Master's.

15        Q.   A master's?

16        A.   Yes.

17        Q.   I believe.  Are you done with your undergrad,

18   with your bachelor's degree, or not yet?

19        A.   Not yet.

20        Q.   Okay.  So what is your major?

21        A.   Healthcare administration.

22        Q.   Is that a Bachelor's in Science?

23        A.   Yes, sir.

24        Q.   When do you foresee you will complete your

25   degree?
```

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

S09095 Robinson Demiryan 06-01-2023         Page 26

```
 1        A.   In 2027.

 2        Q.   In another two years?

 3        A.   Yes, sir.

 4        Q.   And then after that, based on what you just

 5   told me, you intend to pursue a grad degree, a master's

 6   degree; is that correct?

 7        A.   Yes, sir.

 8        Q.   In the same field or a different field?

 9        A.   Same field.

10        Q.   Same field.  What is your goal, as far as

11   professional goals of what to do for a living?

12        A.   I'm unsure, but I do plan on working in

13   healthcare.

14        Q.   Okay.  Do you have any scholarships or loans?

15   How do you pay for your studies?

16        A.   Financial aid.

17        Q.   Financial aid.  Does it cover it in full?

18        A.   Yes, sir.

19        Q.   Was Mr. Lowery employed at the time of his

20   passing?

21        A.   I'm not sure.

22        Q.   Do you know?

23        A.   No.

24        Q.   You don't know?

25        A.   No, sir.
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1    Q.   Okay.  What is your understanding of the

2  circumstances of the incident which is the subject of

3  this lawsuit.  Can you describe to me what is your

4  understanding of what occurred?

5    A.   That it was a wrongful death and he was killed

6  for no reason.

7    Q.   Okay.  Can you please expand on that?

8    A.   As in?

9    Q.   Okay.  Was he a suspect of a crime?  Have you

10 ever been told of that?

11         MR. MARRESE:  Form of the question.

12         BY MR. VAZQUEZ:

13    Q.   You may answer.  Was he a suspect at the time?

14    A.   Yes, sir.

15    Q.   Okay.  What crime was he a suspect of?

16         MR. MARRESE:  Foundation.  Form.

17         THE WITNESS:  From my understanding, he was

18    mis-targeted.  It was the wrong person.

19         BY MR. VAZQUEZ:

20    Q.   Okay.  But do you know the crime, the

21 underlying crime, that the person who he was mistaken

22 for had committed, or was accused of committing?

23    A.   A domestic violence dispute.

24    Q.   And who shot your father?

25    A.   The police officer.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      Q.   Do you know his name?

2      A.   No, sir.

3      Q.   Have you seen any bodycam videos regarding the

4  incident which is the subject of this lawsuit?

5      A.   No, sir.

6      Q.   I'm not interested in knowing anything that

7  you discussed with your attorney, or anyone from his

8  office. That is privileged communication.

9           I'm just asking you, what did you do in

10  preparation for today's deposition?  Did you review any

11  documentation?

12      A.   Yes, sir.

13      Q.   What did you review?

14      A.   I reviewed documents of -- I can't remember

15  the name of it.  I'm not sure of the name of it, but I

16  reviewed documents, and I've been on Zoom calls

17  discussing it.

18      Q.   Okay.  And again, if you've been communicating

19  with your attorney or anyone that represents you, either

20  from his office or any other office, okay, I don't want

21  to know the contents of that communication or that

22  discussion.

23           I am entitled to know if you ever -- if you

24  communicated period, that's the extent of it.  That

25  you've talked to your attorney in preparation for



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

5b9095 Robinson Usmliyan 06-01-2023              Page 29

```
 1   today's deposition?

 2        A.   Yes, sir.

 3        Q.   Okay.  And when was this?

 4        A.   Wednesday.

 5        Q.   Of this week?

 6        A.   Yes, sir.

 7        Q.   Two days ago?

 8        A.   Yes, sir.

 9        Q.   Okay.  And --

10        A.   And --

11        Q.   Yes.  Go ahead.  Sorry.

12        A.   -- and weeks before also.

13        Q.   I'm sorry?

14        A.   And weeks before also.

15        Q.   Okay.  And was that over phone?

16        A.   Yes, sir.

17        Q.   Okay.  And for how long?

18        A.   An hour.

19        Q.   Okay.  The documents that you reviewed, were

20   those photographs?

21        A.   No, sir.

22        Q.   Okay.  Were they related in any way to police

23   documents?

24        A.   No, sir.

25        Q.   Okay.  Did you review -- you said you didn't
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1  review any videos; is that correct?

 2       A.   Yes, sir.

 3       Q.   Did you review any answers to interrogatories?

 4  Those are written questions where you provided answers.

 5       A.   Yes, sir.

 6       Q.   Okay.  Any other documents that you may have

 7  reviewed?

 8       A.   That's all.

 9            MR. VAZQUEZ:  I'll take the notice.  I'm sorry

10       I kept it there.

11            And we'll mark the notice as Exhibit 1.

12            (Exhibit 1 was marked for identification.)

13            BY MR. VAZQUEZ:

14       Q.   Do you know of anyone who may have witnessed

15  the incident which is the subject of this lawsuit?

16       A.   No, sir.

17       Q.   Okay.  Obviously, other than the police

18  officer that was there, do you know of any other

19  persons?

20       A.   No, sir.

21       Q.   Okay.  Did Mr. Lowery have any medical

22  conditions at the time of his passing?

23       A.   I am unsure.

24       Q.   You don't know one way or the other?

25       A.   No, sir.
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        Q.   Is that correct?

 2        A.   Yes, sir.

 3        Q.   Okay.  Did Mr. Lowery, your father, ever tell

 4   you that he's reported any?

 5        A.   No, sir.

 6             MR. MARRESE:  Just form of the question.

 7             BY MR. VAZQUEZ:

 8        Q.   Did you pay any funeral expenses for Mr.

 9   Lowery?

10        A.   No, sir.

11        Q.   Are you aware of anyone who paid any funeral

12   expenses?

13        A.   No, sir.

14        Q.   Did you receive any insurance payments as a

15   result of his passing?

16        A.   No, sir.

17        Q.   Are you aware if there was any insurance

18   coverage, like, a life insurance for instance?

19        A.   No, sir.

20        Q.   Did you receive any contributions, let it be

21   donations or any other sort of contribution, from anyone

22   or any entity as a result of Mr. Lowery's passing?

23        A.   No, sir.

24        Q.   As the personal representative of the estate

25   of James Lowery, did the Court where you -- the probate
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

1  court where you filed the letters of administration, did

2  the Court distribute any of his assets to you or anyone?

3        A.   Not to me.  I'm unsure if anybody else

4  received anything.

5        Q.   Do you know if Mr. Lowery had any academic

6  degrees beyond GED?

7        A.   No, sir.  I do not.

8             MR. VAZQUEZ:  Ms. Robinson, I'm going to show

9        your attorney a copy of your answers to the first

10       set of interrogatories that was heard by the city,

11       and then he'll pass it on to you.

12            And those will be marked as Exhibit 2.

13            (Exhibit 2 was marked for identification.)

14            BY MR. VAZQUEZ:

15       Q.   Please review them.  Take your time.  You

16  don't have to read them out -- aloud.  Just take your

17  time.

18            Are you done, ma'am?

19       A.   Yes, ma'am.  Yes, sir.

20       Q.   Okay.  You may keep it for a moment.

21            At the very end, there is a verification page.

22  The last page.  Is that your electronic signature there?

23       A.   Yes, sir.

24       Q.   Are those your answers to those

25  interrogatories?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1        A.   Yes, sir.

 2        Q.   Okay.  I'll refer you then to Interrogatory

 3   number 7, please.

 4             Okay.  The question is, if any survivor or

 5   potential beneficiary is seeking to recover the value of

 6   past or future loss of supportive services, please list

 7   each person seeking award and the -- seeking any award

 8   of such damages, and the amount, et cetera.

 9             Your answer, the very last sentence of your

10   answer to Number 7 says, "Plaintiff is aware that Mr.

11   Lowery contributed household expenses and services to

12   his home in which he lived with his mother, Linda Lowery

13   Johnson."

14             Do you see that?

15        A.   Yes, sir.

16        Q.   Okay.  I asked you about that earlier, and you

17   said that you were not aware that that occurred.

18             So are you aware or are you not aware of it?

19             MR. MARRESE:  Form of the question.

20             BY MR. VAZQUEZ:

21        Q.   You may answer.

22        A.   I'm aware.

23             MR. MARRESE:  You can answer.

24             BY MR. VAZQUEZ:

25        Q.   You are aware?  Okay.
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
1              Why did you say that you weren't before?

2              MR. MARRESE:  Form of the question.

3              THE WITNESS:  Can you repeat that?

4              BY MR. VAZQUEZ:

5        Q.   Why did you say when I asked you initially,

6   that you were not aware that he contributed in any way?

7              MR. MARRESE:  Form of the question.

8              You can answer.

9              THE WITNESS:  I don't recall.

10             BY MR. VAZQUEZ:

11       Q.   Okay.  If you are aware, what kind of

12   contribution did he have towards Ms. Johnson?

13       A.   I'm assuming rent maybe.  I don't know.

14       Q.   Okay.  You're assuming.  Do you know?

15       A.   No.

16       Q.   Okay.

17             MR. MARRESE:  And just as an aside, and we can

18        have the discussion outside the presence of the

19        witness, but just to speed things along, the

20        Plaintiff in the case is obviously the estate, the

21        administrator of the estate.

22             MR. VAZQUEZ:  Sure.

23             MR. MARRESE:  Having an obligation to obtain

24        information beyond --

25             MR. VAZQUEZ:  Yeah.  We can do that later.
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

```
1              MR. MARRESE:  -- the personal knowledge --
2         okay.  All right.
3              MR. VAZQUEZ:  We can do that later.
4              I just asked -- she's the one who verified the
5         answers.
6              MR. MARRESE:  Yeah.  Well, that's -- sure.
7              MR. VAZQUEZ:  Okay.  So we'll mark that as
8         Number 2.  Take that back.  No.  No.  We're going to
9         mark it as number two.  We're done with it.
10             THE WITNESS:  Oh.
11             MR. VAZQUEZ:  Thank you.
12             MR. MARRESE:  Thank you.
13              BY MR. VAZQUEZ:
14        Q.  Are you aware of any liens, or outstanding
15   invoices, or bills, towards the estate of Mr. Lowery as
16   a result of the incident which is the subject of this
17   lawsuit?
18        A.  Can you repeat that?
19        Q.  Sure.  Are you aware of any outstanding
20   payments that are owed by the estate of James Lowery?
21   Let it be hospital bills, or medical bills, or any type
22   of invoice that has not been paid and needs to be paid?
23        A.  No, sir.
24        Q.  Was Mr. Lowery cremated or was he interned?
25        A.  I'm not sure.
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

589095 Robinson Damiyan 06-01-2023   Page 36

1    Q.   Did you go to his funeral or any wake?

2    A.   No, sir.  I wasn't invited.

3    Q.   I'm sorry?

4    A.   No, sir.  I wasn't invited.

5    Q.   Who took care of that?

6    A.   His mother, Linda.

7    Q.   Excuse me.  And I will show your attorney your

8  supplemental answers to the city's interrogatories, and

9  then he'll pass them on to you.

10        Same as before, please take a look at them.

11 You don't need to read them out loud.  Just let me know

12 when you're done.

13        Okay.  At the very end of the last page, that

14 is the verification page, is that your electronic

15 signature?

16   A.   Yes, sir.

17   Q.   So are those your answers to the

18 interrogatories?

19   A.   Yes, sir.

20        MR. VAZQUEZ:  Thank you.  We'll mark them as

21    Number 3.

22        (Exhibit 3 was marked for identification.)

23        MR. VAZQUEZ:  Thank you.  Would you like to

24    take a short break now?

25        MR. MARRESE:  Yeah.  Thank you.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1              THE REPORTER:  Okay.  We are going off record

 2       and the time is 11:01 a.m.

 3              (A recess was taken.)

 4              THE REPORTER:  We are back on the video record

 5       and the time is 11:12 a.m.

 6              BY MR. VAZQUEZ:

 7       Q.    Ms. Robinson, we just came back from break.

 8  Is there anything regarding the testimony that you have

 9  offered so far that you would like to modify or change?

10       A.    No, sir.

11       Q.    Okay.  Regarding your maternal grandmother,

12  Ms. Robinson, what is her opinion of Mr. Lowery?

13       A.    She loved him.

14       Q.    She loved him?

15       A.    Yes, sir.

16       Q.    And why was there this disconnect between Mr.

17  Lowery and you, as his only child, that he did not look

18  after you more often?

19       A.    My mother got married to somebody -- to my

20  sibling's father, and I believe from what I was told,

21  that put a strain on him actually coming to our house,

22  my mother's house, to see me, other than just visiting

23  me at my grandmother's house, Gloria.

24       Q.    Okay.  And your other grandmother, Ms.

25  Johnson, Mr. Lowery's mother, she also lives in
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Florence, correct?

2        A.    Yes, sir.

3        Q.    Okay.  And why didn't you visit them more

4    often?

5        A.    I'm really not sure.

6        Q.    Okay.  When was the last time that you visited

7    Ms. Johnson?

8            MR. MARRESE:  Form of the question.  You said

9        Ms. Johnson.

10           MR. VAZQUEZ:  Yeah.  Ms. Johnson -- yes.  His

11       -- or I'm sorry her -- his mom.

12           MR. MARRESE:  Oh.  I'm sorry.  Yeah.  Thank

13       you.  Okay.

14           THE WITNESS:  She came by in 2022, maybe -- it

15       was before I graduated.  And that was June.  I'm

16       unsure of what month, but it was 2022, before June.

17           BY MR. VAZQUEZ:

18       Q.    She came by your house?

19       A.    Yes.  My grandmother's house.  Where I lived.

20       Q.    Your grandmother's house.  And you saw her

21    that time?

22       A.    Yes, sir.

23       Q.    And what was the purpose of that visit?

24       A.    To speak about the lawyers and what they was

25    already doing.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    Q.   Talk about this lawsuit?

2    A.   Yes, sir.

3    Q.   Okay.  And have you seen her after that date?

4    A.   No, sir.

5    Q.   Do you know anything about Mr. Lowery's past

6  criminal history?

7    A.   No, sir.

8       MR. VAZQUEZ:  I'm going to show you an arrest

9    affidavit regarding Mr. Lowery, and it pertains to

10   an incident that occurred on July 4, 2020.

11      I'll show it to your attorney first and then

12   he'll hand it to you.

13      MR. MARRESE:  Was this one produced in this

14   case?  Just curious.  All right, because I don't

15   think there's Bates labels on it, unless I'm wrong.

16      MR. VAZQUEZ:  I don't know.

17      MR. MARRESE:  You don't know?

18      MR. VAZQUEZ:  I don't know.

19      MR. MARRESE:  Okay.  All right.  Give me a

20   second if you would.

21      MR. VAZQUEZ:  We'll mark it as Exhibit 4.

22         (Exhibit 4 was marked for identification.)

23         BY MR. VAZQUEZ:

24    Q.   Please review this document.  Let me know if

25  the subject matches your father's information.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      A.   Yes, sir.

2          MR. VAZQUEZ:  Okay.  Thank you.  Number 4.

3          And we will mark the next one as Composite

4      Exhibit Number 5, which would be the Judgment Order

5      of Probation regarding that arrest.

6          (Exhibit 5 was marked for identification.)

7          BY MR. VAZQUEZ:

8      Q.   Please take your time.  Did your father ever

9  tell you about that -- conviction that you have in your

10  hands right now?

11     A.   No, sir.

12     Q.   Okay.  Did you see that it was 30 months

13  probation?  Do you see that?

14     A.   Yes, sir.

15         MR. MARRESE:  Form.

16         BY MR. VAZQUEZ:

17     Q.   Did anyone ever tell you about that

18  conviction?

19     A.   No, sir.

20         MR. VAZQUEZ:  Okay.  Thank you.  Composite 5.

21     I'm going to show you now, another arrest affidavit.

22     This one is dated November 9, 2021.

23         MR. MARRESE:  Form of the question.  Just the

24     prior was not an arrest affidavit.  There was no

25     affidavit attached.  And this appears to be an

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

589095  Robinson  Demiryan  06-03-2025        Page 41

```
1    affidavit.
2          MR. VAZQUEZ:  I have number 4.  Yes.  It's an
3    electronic signature in the Affidavit Form in number
4    4.
5          MR. MARRESE:  He indicates no affidavit
6    enclosed in the documents entitled Arrest Notice to
7    Appear.  So are you talking about down here?
8          MR. VAZQUEZ:  Yes.
9          MR. MARRESE:  Maybe that's -- I don't know,
10   but --
11         MR. VAZQUEZ:  I can understand that --
12         MR. MARRESE:  -- I can assume it's not.
13         MR. VAZQUEZ:  You're not --
14         MR. MARRESE:  Not the end of the world.  It's
15   just I --
16         MR. VAZQUEZ:  Yes, sir.  It's titled Arrest
17   Notice to Appear Probable Cause Affidavit.
18         MR. MARRESE:  Do you mind if I see Number 4
19   again?
20         MR. VAZQUEZ:  Yeah, sure.
21         MR. MARRESE:  Thanks.  Thank you.  You're
22   right, it does say Probable Cause Affidavit at the
23   top. I'm sorry.  Thanks.
24         MR. VAZQUEZ:  Ms. Robinson, that will be
25   Exhibit Number 6.  It's another affidavit for a
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

589095 Robinson Demiryan 06-01-2023                Page 42

```
 1      violation of probation.
 2              (Exhibit 6 was marked for identification.)
 3              BY MR. VAZQUEZ:
 4      Q.   Okay.  Did your father ever tell you about
 5  this arrest for a violation of probation?
 6      A.   No, sir.
 7              MR. VAZQUEZ:  Number 6.  I am going to show
 8      your attorney now the Affidavit of Violation of
 9      Probation by Mr. Lowery's probation officer.  That
10      will be Exhibit Number 7.
11              (Exhibit 7 was marked for identification.)
12              BY MR. VAZQUEZ:
13      Q.   Did anyone ever make you aware of this
14  Affidavit of Violation of Probation?
15      A.   No, sir.
16              MR. VAZQUEZ:  This is number 7.  I'm going to
17      show you now the Violation of Probation Report by
18      his probation officer.  And this will be Exhibit
19      Number 8.
20              (Exhibit 8 was marked for identification.)
21              MR. MARRESE:  And do you know if this was
22      produced?  I just -- I don't see Bates stamps.
23      That's why I'm asking.
24              MR. VAZQUEZ:  I -- I'm not sure.
25              MR. MARRESE:  Okay.
```

MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1              MR. VAZQUEZ:  Those were obtained from the
 2      Court file.
 3              MR. MARRESE:  Okay.
 4              BY MR. VAZQUEZ:
 5       Q.    Please review it.  That is Exhibit Number 8.
 6              Ms.  Robinson, did your father ever tell you
 7      that he was arrested for this violation of his probation
 8      on November 12, 2021?
 9       A.    No, sir.
10       Q.    Okay.  Did you ever visit your father in
11      Florida?
12       A.    No, sir.
13       Q.    Okay.  Do you know his address in Florida?
14       A.    No, sir.
15       Q.    Please take a look at Exhibit 8, his address
16      on the first page.  Do you know, did you ever visit him
17      there or did you ever write to him at that address?
18       A.    No, sir.
19       Q.    Did you ever write to him at all?
20       A.    No, sir.
21       Q.    Okay.  Flip over to Page 2.  It says,
22              "Occupation: Unemployed."  Okay.  Do you have
23      any reason to doubt that he was unemployed at that time
24      in November of 2021?
25              MR. MARRESE:  Form.  You can answer.
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1          THE WITNESS:  No, sir.

 2          BY MR. VAZQUEZ:

 3     Q.   Okay.  Thank you.  You said that you

 4  communicated with your father over the phone.  What was

 5  his phone number?

 6     A.   I do not recall.

 7     Q.   Did you ever save it in your cell phone?

 8     A.   No, sir.

 9     Q.   Were you aware that at the time of his

10  passing, your father had a significant amount of money,

11  as well as either illicit drugs or controlled substances

12  on his person?

13     A.   No, sir.

14     Q.   Has anyone ever discussed this with you?

15     A.   No, sir.

16          MR. VAZQUEZ:  I'm going to show you through

17     your attorney, a Case Supplement Report prepared by

18     a separate agency, the Brevard County Sheriff's

19     Office, regarding the contents or what was found on

20     Mr. Lowery's person.

21          And these were produced -- these are part of

22     the --

23          MR. MARRESE:  Yeah, I recognize these.  Thank

24     you.

25          BY MR. VAZQUEZ:
```

**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

Sb9095 Robinson Demiyah 06-01-2023

```
 1       Q.   Please review them.  Have you reviewed the

 2  list?

 3       A.   Yes, sir.

 4       Q.   Okay.  The first two pages are typed, the rest

 5  of the pages are handwritten, but they're similar.  Did

 6  you know that these items were found in your father's

 7  possession at the time of his passing?

 8            MR. MARRESE:  Foundation.  Form.  You can

 9       answer.

10            THE WITNESS:  No, sir.

11             BY MR. VAZQUEZ:

12       Q.   Do you have any reason to doubt that these

13  items were found in your father's possession at the time

14  of his passing?

15            MR. MARRESE:  Form.

16            THE WITNESS:  No, sir.

17            MR. VAZQUEZ:  I think this will be Composite

18       Exhibit 9.

19            (Exhibit 9 was marked for identification.)

20            BY MR. VAZQUEZ:

21       Q.   Did your -- did anyone ever mention to you

22  that your father sold drugs?

23       A.   No, sir.

24       Q.   Did anyone ever mention to you that they

25  suspected that your father sold drugs?
```

**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          **www.MILESTONEREPORTING.com**          Toll Free 855-MYDEPOS

1    A.   No, sir.

2    Q.   Can you explain the inventory that was found

3  in your father's possession at the time of his passing?

4         MR. MARRESE:   Form.  Foundation.

5         THE WITNESS:   Based off what I just read?

6         BY MR. VAZQUEZ:

7    Q.   Yes, ma'am.

8    A.   Drugs, phones, flashlight, taser, money -- a

9  lot of money.

10    Q.   Do you know why this was in his possession?

11    A.   No, sir.

12    Q.   As far as the money, it appears that it was

13  over $3,600 altogether.  Do you have any reason to doubt

14  that?

15    A.   No, sir.

16         MR. VAZQUEZ:   Okay.  I'm going to keep those.

17     You can have the rest of them.

18         THE REPORTER:   Uh-huh.  You want to -- this is

19     going to be a composite?

20         MR. VAZQUEZ:   This one is going to be.

21         THE REPORTER:   Got you.  Got you.  Got you.

22         MR. VAZQUEZ:   Okay.  I'm going to show it to

23     your attorney now, a series of photographs of the

24     inventory that we just saw on the list and these

25     have been produced and they will be marked as

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

5b9095 Robinson Usmiyan 06-03-2025   Page 47

```
 1      Composite Exhibit 10.

 2              (Exhibit 10 was marked for identification.)

 3              MR. MARRESE:  Thanks.

 4              BY MR. VAZQUEZ:

 5      Q.   You've reviewed them, Ms. Robinson?

 6              Ms.  Robinson, have you ever seen the

 7  photographs of the previous inventory that you currently

 8  have in your hands now?

 9      A.   No, sir.

10      Q.   Is that a description of the previous lists

11  that were typed and handwritten?

12      A.   Yes, sir.

13              MR. MARRESE:  Foundation.

14              BY MR. VAZQUEZ:

15      Q.   There's some cards there that were

16  photographs. There's one that says Medical Marijuana Use

17  Registry. Let me show you the photograph so you can take

18  a look at it there.  Okay.  Yeah, that's -- well, that's

19  one of them, yes.  But there may be others.  You can

20  keep them in the same order.  That's fine.

21              It -- the one that says, "medical marijuana

22  use registry"; is that your father?

23      A.   Yes, sir.

24      Q.   And the all-access debit card right next to

25  it, to Matilda Akron or Agron (phonetic).  Do you know
```

**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

5b9095  Robinson  Demiyan  06-01-2023          Page 48

1  who Matilda is?

2       A.   No, sir.

3       Q.   Do you know why he would have a debit card for

4  that person?

5       A.   No, sir.  I do not.

6       Q.   The card next to it, Tom Fielding Bail Bonds.

7  Do you know why he would have a bail bondsman's business

8  card?

9       A.   No, sir.

10      Q.   And he has a business card for Brevard County

11 Sheriff's Office Agent Matthew Rush.  Do you know why he

12 would have that one?

13      A.   No, sir.

14      Q.   And there's a business card for a correctional

15 probation Officer M.  McNicholas.  Do you know why he

16 would have that card?

17      A.   No, sir.

18      Q.   Thank you.

19           MR. VAZQUEZ:  We're done with that set.

20           BY MR. VAZQUEZ:

21      Q.   As the personal representative of the estate

22 of James Lowery, have you ever read the complaint what

23 -- that was filed on behalf of the estate in Court?

24           The actual document, the complaints, have you

25 ever read it, the one that was filed in Court against

---

**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          Toll Free **855-MYDEPOS**

1    the City of Titusville and Mr. Payne?

2         A.    I do not recall.  I'm not sure.

3         Q.    Okay.  We've established that you are

4    currently a student in the health administration field,

5    correct?

6         A.    Yes, sir.

7         Q.    Okay.  And to be clear, you don't have any

8    legal training, correct?

9         A.    No, sir.

10        Q.    Is that correct?

11        A.    Yes, sir.

12        Q.    Okay.

13        A.    I'm sorry.

14        Q.    As a lay person and without discussing

15   anything that you have discussed with your counsel which

16   is privileged, okay, you have sued my client, the City

17   of Titusville.

18              Why have you sued my client, the City of

19   Titusville?

20        A.    For failure to train.

21        Q.    How did they fail to train and who did they

22   fail to train?

23        A.    The officer didn't know how to stop my dad

24   without killing him.

25        Q.    And how do you know that that was due to a

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1  failure of training as opposed to his own account?

 2          MR. MARRESE:  Form of the question.

 3          THE WITNESS:  Well, I would hope that would be

 4      the reason instead of anything else, as in --

 5          BY MR. VAZQUEZ:

 6      Q.   I'm sorry?

 7      A.   I hope that would be the reason as in -- I

 8  wouldn't want it to be anything else, as in color,

 9  maybe.

10      Q.   Do you know that accidents happen?

11      A.   Yes, sir.

12      Q.   Wouldn't a reasonable explanation be that this

13  was an accidental discharge of the firearm that

14  unfortunately hit your father?

15          MR. MARRESE:  Form.

16          THE WITNESS:  Could you reword that?

17          BY MR. VAZQUEZ:

18      Q.   Okay.  Wouldn't a reasonable explanation also

19  be that this was an accidental discharge of the

20  officer's firearm that ultimately hit your father?

21          MR. MARRESE:  Form.      You can answer.

22          THE WITNESS:  I mean, it could have been an

23      accident, but either way he's still dead, so.

24          BY MR. VAZQUEZ:

25      Q.   And other than assuming or speculating that
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1    the City failed to train the officer, what evidence do

 2    you have that the City failed to train him?

 3            MR. MARRESE:  Form of the question.

 4            THE WITNESS:  It's just a thought.

 5            BY MR. VAZQUEZ:

 6     Q.   An autopsy was conducted on your father, and

 7    there was a toxicology report as part of that autopsy.

 8    They found that your father had oxycodone, oxymorphone,

 9    and fentanyl in his body at the time of his passing.

10            Can you explain that?

11     A.   Can you explain what you mean?

12     Q.   Yes.

13            MR. MARRESE:  Form and foundation.

14            MR. VAZQUEZ:  Yes.  Okay.  I'm going to show

15        you the toxicology report for your father's autopsy.

16        It'll be Exhibit 11.  Well, that has been produced.

17            (Exhibit 11 was marked for identification.)

18            MR. MARRESE:  This says Page 1 of 4 on it.  Do

19        you have the other parts to it, or is this -- do you

20        just want use Page 1?

21            MR. VAZQUEZ:  You're absolutely right.  Here's

22        the rest of it.

23            MR. MARRESE:  Okay, thanks.

24            MR. VAZQUEZ:  I'll have that one.

25            MR. MARRESE:  All right.  Oh, got you.  All



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1     right.

 2            BY MR. VAZQUEZ:

 3     Q.   Ms. Robinson, can you explain the presence of

 4   those substances in your father's bloodstream at the

 5   time of his passing?

 6            MR. MARRESE:  Foundation.

 7            THE WITNESS:  I'm not sure.  I don't know.

 8            BY MR. VAZQUEZ:

 9     Q.   Do you have any reason to doubt that that is

10   an accurate toxicology report?

11     A.   No, sir.

12     Q.   That'll be Exhibit 11.  Following up on the

13   previous question again.  Regarding the lawsuit against

14   my client, the City of Titusville, what are you asking

15   the Court to do?

16            MR. MARRESE:  Form and foundation.  You can

17      answer.

18            BY MR. VAZQUEZ:

19     Q.   You understand, you have a lawsuit against my

20   client.  You filed that lawsuit.  What are you asking

21   the Court to do?

22            MR. MARRESE:  Same objections.

23            And you can answer.

24            THE WITNESS:  I'm not really sure how to put

25      into words.  Could you explain it differently?
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

589095 Robinson Demiryan 06-03-2025               Page 53

```
 1              BY MR. VAZQUEZ:
 2       Q.   Okay.  You filed -- you understand that you
 3  filed a complaint, a legal document, which is a claim
 4  against my client, the City of Titusville; do you
 5  understand that?
 6       A.   Yes, sir.
 7       Q.   Having filed a claim, a legal document, a
 8  lawsuit against my client, what are you asking the Court
 9  to do?
10       A.   So --
11            MR. MARRESE:  Same objections.  Form and
12       foundation.  You can answer.
13            THE WITNESS:  Justice.
14            BY MR. VAZQUEZ:
15       Q.   What does that mean?
16       A.   That he would be locked up.
17       Q.   Who?
18       A.   The officer.
19       Q.   Okay.  I asked you about my client, the City
20  of Titusville, not the officer.  What are you asking the
21  Court to do regarding my client, the City of Titusville?
22       A.   I'm unsure who's your client?
23       Q.   The City of Titusville.  You filed a lawsuit
24  against Mr. Payne, who was a former officer --
25       A.   Uh-huh.
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**         **www.MILESTONEREPORTING.com**         Toll Free 855-MYDEPOS

1        Q.   -- and against the City of Titusville.  What

2   are you asking the Court to do regarding my client, the

3   City of Titusville?

4             MR. MARRESE:  Form and foundation.  You can

5        answer.

6             THE WITNESS:  I'm not sure.

7             BY MR. VAZQUEZ:

8        Q.   Okay.  And to be clear, you are the sole child

9   of Mr. Lowery, correct?

10       A.   Correct.

11            MR. VAZQUEZ:  I don't have anything else for

12       now.  Mr. Jimenez may have some follow-up.

13            MR. JIMENEZ:  I'll have two right now, and I

14       think we can take a break.  I'll review my notes and

15       make sure of everything else.

16                  CROSS-EXAMINATION

17            BY MR. JIMENEZ:

18       Q.   Ma'am, you stated a moment ago that what

19   you're seeking from the Court here is to see the officer

20   and defendant, Payne, locked up based on his misconduct;

21   is that correct?

22       A.   Yes, sir.

23       Q.   Okay.  Do you understand that this is the case

24   that's been brought in civil court seeking money

25   damages, no criminal results here?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    A.   Yes, I'm aware now.

2    Q.   Okay.  Do you have any knowledge of any

3  criminal proceedings that have been brought against Mr.

4  Payne in this action, regarding this incident?

5    A.   No, sir.

6    Q.   Okay.  Okay.  We can take a five minute break.

7  I don't think I'll have much of anything.  I just want

8  to make sure we're all set before we continue.

9         MR. VAZQUEZ:  Sure.  Okay.  Yep.

10        THE REPORTER:  All right.  We are going off the

11     record, and the time is 12:00 noon.

12         (A recess was taken.)

13        THE REPORTER:  Okay.  We are back on the

14     record, and the time is 12:09 p.m.

15        MR. JIMENEZ:  All right, ma'am.  First, we have

16     a couple of additional photos here.  I'll show these

17     to your counsel and pass these on to you.  This will

18     be incorporated into Composite Exhibit 12.

19         (Exhibit 12 was marked for identification.)

20        MR. MARRESE:  James, it looks like there's two

21     copies of each, right?  Is that --

22        MR. JIMENEZ:  Yep.  Looks like --

23         BY MR. JIMENEZ:

24    Q.   And having reviewed those photographs, the

25  same with the other ones, any knowledge as to why those

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1  items were in your father's possession at the time of

2  his death?

3      A.   No, sir.

4      Q.   Okay.  Any doubt that those were not actually

5  in possession of the time of death?

6      A.   No, sir.

7      Q.   Okay.  Thank you.  I believe you testified

8  earlier that you have not seen any kind of video footage

9  of the actual incident in this case; is that correct?

10     A.   Yes, sir.

11     Q.   Okay.  Do you have any knowledge of the

12 actions your father took during the encounter with

13 Officer Payne?

14     A.   Some.  Yes, sir.

15     Q.   Okay.  What is the basis of that knowledge?

16     A.   I know he was running away, and he was --

17 before he was shot, he was trying to jump over a fence.

18     Q.   Okay.  And how do you know those facts?

19     A.   From -- from reading an article.

20     Q.   Would this be an article in a newspaper or

21 some kind of publication online?

22     A.   Yes, sir.  Some type -- something I found

23 online.

24     Q.   Found online.  Okay.  Do you know the name of

25 the website or the publication?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

589095 Robinson Damiyan 06-01-2023    Page 57

```
 1      A.   No, sir.

 2      Q.   Do you know when you read that article?

 3      A.   No, sir.  I don't recall.

 4      Q.   Other than reading that article, that

 5 description of the events, do you have any other

 6 information as to the actions your father took during

 7 that incident?

 8           MR. MARRESE:  Other than discussions with

 9      attorneys?  So no.

10           MR. JIMENEZ:  Yes.

11           THE WITNESS:  Other than that, no, sir.

12           BY MR. JIMENEZ:

13      Q.   Okay.  Have you heard or read any statements

14 by Officer Payne regarding this incident?

15      A.   No, sir.

16      Q.   Are you aware of any kind of explanation

17 Officer Payne has given as to what happened?

18      A.   Yes, sir.

19      Q.   Okay.  What explanation are you aware of?

20      A.    I believe he said it was a mistake.  He meant

21 to pull out the taser.

22      Q.   And what is the source of that?

23      A.   Just speaking with my lawyers and stuff.

24      Q.   Okay.  Again, anything other than

25 conversations with your counselor's office, any other
```

**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1  source of that information?

2      A.   No, sir.

3      Q.   Okay.  Ma'am, have you received any kind of

4  psychological or psychiatric treatment as a result of

5  your father's death?

6      A.   No, sir.

7      Q.   This may have been asked earlier, but will you

8  give any explanation as to why you were not invited to

9  your father's funeral?

10     A.   No, sir.  I was given an obituary after, but

11 there was never no reason.

12     Q.   Okay.  There are three separate claims against

13 my client, Mr. Payne, in this complaint you brought

14 against him.  There is a claim for use of excessive

15 force, a claim for battery, and a claim for negligence.

16 What is your understanding of the basis --

17          And again, as a lay person, not as an

18 attorney, what is your understanding of the basis of the

19 claim for use of excessive force by my client, Mr.

20 Payne?

21     A.   Could you explain "use of excessive force"?

22     Q.   Well, generally, the claim would be that, you

23 know, there was some use of force or contact between

24 Officer Payne and your father at the time the incident.

25 There is a certain amount of force that's allowable



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  under the law, by law enforcement officers in trying to

2  detain people they believe to have been breaking the

3  law.  And the claim here is that the force used by

4  Officer Payne was objectively, given that the facts and

5  circumstances at hand, it was unreasonable, there was

6  too much force was used.  So again, that's the legal

7  explanation.  I understand, again, you are not an

8  attorney.

9          So again, as a lay person here as the

10  plaintiff, what is your understanding of the basis for

11  that claim that excessive force was used?

12      A.   I felt like it could have been handled way

13  differently since he was only just running, and maybe --

14      Q.   If it were the case that your father was not

15  just running away, would that change your opinion as to

16  the reasonableness of the force used?

17      A.   No.  I don't think nobody deserves to die.

18      Q.   There's also a claim here for negligence

19  against my client.

20      A.   Right.

21      Q.   Sitting here today, do you have an independent

22  understanding of what "negligence" is?

23      A.   As in, like -- could you explain it?

24      Q.   Well, I think that the question I asked was,

25  do you understand what negligence is?  So if the answer

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Sb9095 Robinson Jamiyah 06-01-2023   Page 60

```
 1   is no, yes --

 2        A.   Yes, I kind of do.

 3        Q.   You kind of do?  So what is your understanding

 4   of what was negligent about how Officer Payne acted in

 5   that situation?

 6        A.   The way he handled the situation.

 7        Q.   Can you be more specific?

 8        A.   As in not making sure he pulled out the right

 9   weapon.

10        Q.   Okay.  And that would be based on your

11   understanding that he pulled -- he meant to pull out his

12   taser, but pulled out his firearm instead, correct?

13        A.   Correct.

14             MR. MARRESE:  Form of the last question.

15             BY MR. JIMENEZ:

16        Q.   And again, just to confirm, you have not seen

17   the actual video of the incident?

18        A.   No, sir.

19             MR. JIMENEZ:  All right.  I don't believe I

20        have anything further.  Counsel?

21             MR. MARRESE:  Thank you.  Jamiyah, I just have

22        a few questions for you.  First, marking as Exhibit

23        13, the Complaint filed in this case on July 13,

24        2023.

25             (Exhibit 13 was marked for identification.)
```

**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
1                   EXAMINATION

2              BY MR. MARRESE:

3       Q.   Before I hand it to you, you recall that Mr.

4  Vazquez asked you questions, that's the attorney for the

5  City of Titusville, about the Complaint in this case,

6  correct?

7       A.   Correct.

8       Q.   Okay.  I want to show it to you now.  We'll

9  mark it as Exhibit 13.  Take a minute to look at it. You

10  don't have to read every word but glance through it.

11       A.   Okay.

12       Q.   Looking at that document now, generally

13  speaking, have you seen it before?

14       A.   Yes, sir.

15       Q.   You can put that to the side.  Okay.  You were

16  asked a series of questions about evidence or items that

17  were indicated as found on your dad at the scene of his

18  shooting, do you recall that?

19       A.   Yes, sir.

20       Q.   In conjunction with that, you were shown a

21  series of photographs that included money, credit cards,

22  and some substances, do you recall that?

23       A.   Yes, sir.

24       Q.   Okay.  Have you ever been to the crime scene?

25       A.   No, sir.
```



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

5b9095-Robinson Demiryan 06-03-2025    Page 62

1    Q.   Have you ever spoken to police about their

2  investigation?

3    A.   No, sir.

4    Q.   Have police ever reached out to you about

5  their investigation?

6    A.   No, sir.

7    Q.   The reports of toxicology that Mr. Vazquez

8  asked you about indicated the presence of substances in

9  mister -- in your dad's system, do you recall that?

10   A.   Yes, sir.

11   Q.   Okay.  Have you ever seen that report before

12  today?

13   A.   No, sir.

14   Q.   Has anyone ever talked to you about the

15  toxicology lab's testing of substances in your father's

16  system?

17   A.   No, sir.

18   Q.   Okay.  Do you have any personal knowledge

19  whatsoever of what materials or items were on your

20  father's person on the night he was shot?

21   A.   No, sir.

22       MR. MARRESE:  Okay.  I don't have any further

23    questions.  Thank you.

24            REDIRECT EXAMINATION

25       BY MR. VAZQUEZ:

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      Q.   I have some follow-up, Ms. Robinson.  Who took

2   the lead within your relatives regarding any

3   communications with the City of Titusville?

4      A.   I'm assuming either his sister Johari or his

5   mother, Linda.

6      Q.   And why are you assuming that?

7      A.   Because I'm unsure.

8      Q.   Okay.  I think there was a discussion off the

9   record that there were two cell phones.  Do you recall

10  that discussion?

11     A.   Yes, sir.

12     Q.   Okay.  And you've never seen those cell

13  phones, correct?

14     A.   No, sir.

15     Q.   Okay.  And I believe that part of the

16  discussion was that your aunt, his sister, is in

17  possession of them, do you recall that?

18     A.   Yes, sir.

19     Q.   Okay.  Have you ever discussed that with her?

20     A.   No, sir.

21         MR. VAZQUEZ:  Okay.  I think that's all I have.

22     We will -- okay.  We will order a copy of the

23     transcript.  You going to say read?  I was going to

24     give her the --

25         MR. MARRESE:  You were going to give -- okay.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

1    Go ahead.  Yeah, yeah.

2         MR. VAZQUEZ:  Yeah.  We're going to order a

3    copy of the transcript.  You have the right to read

4    it for accuracy or you may waive that right.  It's

5    entirely up to you.  If you trust that our court

6    reporter will transcribe it accurately, you may

7    waive it, or if you'd rather review it for accuracy,

8    you may read it.  It's completely up to you, but you

9    have to decide today, whether you would like to read

10   or waive?

11        MR. MARRESE:  You'll read.

12        THE WITNESS:  Yeah, I'll read it.

13        MR. MARRESE:  Thanks.

14        THE REPORTER:  Regular delivery on the

15   transcript?

16        MR. VAZQUEZ:  Yes.

17        THE REPORTER:  Okay.  And would you need the

18   video?

19        MR. VAZQUEZ:  Yeah, I'll take it if its

20   included.  Yeah.

21        THE REPORTER:  Okay.  And sir, do you need a

22   copy?

23        MR. JIMENEZ:  I will hold off for now.

24        THE REPORTER:  Hold.  And do you need a copy?

25        MR. MARRESE:  Yeah.  Electronic PDF, please. No


MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1        video at this time.

2            THE REPORTER:  Okay.  No video at this.

3            MR. VAZQUEZ:  Yeah.  And ours is just a regular

4        PDF as well.

5            THE REPORTER:  Okay.  Okay.  No problem.  All

6        right.

7            Are we good to go off?

8            MR. VAZQUEZ:  We're good.

9            MR. MARRESE:  Yes.

10           THE REPORTER:  Okay.

11           MR. MARRESE:  Thank you.

12           THE REPORTER:  We are going off the record, and

13       the time is 12:23 p.m.

14           (Deposition concluded at 12:23 p.m. ET)

15

16

17

18

19

20

21

22

23

24

25

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF ORANGE

     I, the undersigned, certify that the witness in the
foregoing transcript personally appeared before me and
was duly sworn.

Identification:  Produced Identification

_____

KIMBERLY ROBERTS

Court Reporter, Notary Public

State of Florida

Commission Expires: 09/22/2027

Commission Number: HH 408073



**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1              C E R T I F I C A T E

 2

 3   STATE OF FLORIDA)

 4   COUNTY OF ORANGE)

 5

 6        I, KIMBERLY ROBERTS, Court Reporter and Notary

 7   Public for the State of Florida at Large, do hereby

 8   certify that I was authorized to and did report the

 9   foregoing proceeding, and that said transcript is a true

10   record of the said proceeding.

11

12        I FURTHER CERTIFY that I am not of counsel for,

13   related to, or employed by any of the parties or

14   attorneys involved herein, nor am I financially

15   interested in said action.

16

17   Submitted on: June 20, 2025.

18

19

20

21

22   _____

23        KIMBERLY ROBERTS

24        Court Reporter, Notary Public

25
```



**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

ERRATA

PAGE      LINE                      CHANGE      REASON

I have read the entire transcript of my deposition taken

in the captioned matter or the same has been read to

me.I request that the following changes be entered upon

the record for the reasons indicated. I have signed my

name to the Errata Sheet and authorize you to attach the

changes to the original transcript.

_____      _____
Date                          NAME

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

**MILESTONE I REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

June 20, 2025

**John Marrese, Esquire**
Hart, McLaughlin & Eldridge, LLC
1 South Dearborn
Suite 1400
Chicago, IL 60603

RE:    Deposition of **Ms. Jamiyah Robinson** taken on **6/6/2025**
       Robinson, J. PR of Estate of J. Lowery vs. COT

Dear Mr. **Marrese**,

## IMPORTANT NOTICE FOR DEPOSITION TRANSCRIPT READ AND SIGN

It is suggested that the review of this transcript be completed within 30 days of your receipt of this letter,
as considered reasonable under Federal Rules*.

___    **Attorney - Copy of Transcript Enclosed:**  Signature of the Deponent is required.  Please have the deponent make any corrections/changes necessary on the Errata Sheet ONLY, sign name on the form where indicated.  Please return ONLY the original signed Errata Sheet to our offices within 30 days from the date of this memorandum.  If you have any questions, please call our offices.

___    **Attorney - No Copy Ordered:**  Since you did not request a copy of the transcript, it will be necessary for the Deponent to call our offices to arrange for an appointment to read and sign the transcript of the Deposition within 30 days of this memorandum.

_X_    **Deponent:**   At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, attached please find a copy of the transcript and Errata Sheet.  Please read the transcript, make any corrections necessary on the Errata Sheet ONLY, sign the bottom of the Errata Sheet, and return it within 30 days from the date of this memorandum.  Please call our offices if you have any questions.

___    **Deponent:**   At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, it is necessary for you to come to our offices to read and sign same.  Please call Milestone Reporting Company to arrange for an appointment at your earliest convenience.

___    **The errata sheet(s) and Notary Certificates(s) have not been received by our office in the allotted time period. The original transcript has been filed with the appropriate court or counsel.**

Thank you for your attention to this matter.

No. 389095                                Reporter:

cc: Ramon Vazquez, Esquire


Waiver:
I, Ms. Jamiyah Robinson, hereby waive the reading and signing of my deposition transcript.

_____          _____

Deponent Signature                                       Date

*Federal Civil Procedure Rule 30 (e) / Florida Civil Procedure Role 1.310 (e)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMIYAH ROBINSON, AS
PERSONAL REPRESENTATIVE OF
THE ESTATE OF JAMES LOWERY,
DECEASED,

     Plaintiff,

v.                                                            Case No. 6:23-cv-01313-PGB-LHP

JOSHUA NATHAN PAYNE,
INDIVIDUALLY AND AS AN AGENT
AND EMPLOYEE OF THE
TITUSVILLE POLICE DEPARTMENT,
AND CITY OF TITUSVILLE,
FLORIDA,

     Defendants.

_____/

**<u>AMENDED NOTICE OF TAKING VIDEO-RECORDED DEPOSITION
DUCES TECUM OF PLAINTIFF, JAMIYAH ROBINSON, AS THE PERSONAL
REPRESENTATIVE OF THE ESTATE OF JAMES LOWERY, DECEASED</u>**
*(As to date per Plaintiff's requested)*

     YOU WILL PLEASE TAKE NOTICE that the undersigned attorneys for

Defendant, CITY OF TITUSVILLE, will take the video-recorded deposition *duces tecum*

of the following person, at the time and place indicated below, upon oral examination and

stenographic means before Milestone Reporting, or any other Notary Public authorized by

law to take depositions:

| | |
|---|---|
| **NAME:** | **Ms. Jamiyah Robinson** |
| **DATE:** | **Friday, June 6, 2025** |
| **TIME:** | **10:00 a.m.** |
| **LOCATION:** | **Milestone Reporting**<br>**315 E. Robinson St., Suite 510**<br>**Orlando, Florida 33602** |



Exhibit 1
J. Robinson
Date 6-6-2025
RR

This deposition is being taken for the purpose of discovery, trial, and for any and all use as allowed by the Federal Rules of Civil Procedure, Federal Rules of Evidence, the Court's Local Rules, and shall continue from day to day until completed.

**JAMIYAH ROBINSON is hereby commanded to have with her at that time and place the following:**

1. Any and all medical, psychiatric, and psychological records, bills, receipts, letters of protection, and liens regarding medical, psychiatric and psychological treatment rendered to JAMIYAH ROBINSON as a result of the incident, which is the subject of the above-styled lawsuit.

2. Any and all tax returns of JAMIYAH ROBINSON filed with the IRS from 2018 until the present date.

3. Any and all pay stubs, W-2 Forms, W-9 Forms, checks, electronic payments, and/or similar evidence of payments given to JAMIYAH ROBINSON by all sources of income and employers from 2018 to the present date.

4. All documentation, photographs, digital images, video recording, and other tangible evidence, which Plaintiff believes will prove each and every one of the claims alleged by Plaintiff in the underlying Complaint.

5. All documentation submitted by Plaintiff and given to Plaintiff regarding any and all benefits sought by Plaintiff from any and all government agencies (whether state, federal or local), including but not limited to, the Social Security Administration, Department of Labor, unemployment benefits, food stamps, etc.

6. All documentation, photographs, digital images, video recording, and other tangible evidence, which substantiates the special damages claimed by Plaintiff as a result of the incident which is the subject of this lawsuit.

7. Any and all documents, opinions, correspondence, reports, and emails from expert witnesses that Plaintiff has retained in this matter and that Plaintiff believes substantiates Plaintiff's claims.

8. Any and all photographs, digital images, video recording, and other tangible evidence of JAMES LOWERY which depict any and all injuries and damages which Plaintiff alleges are the subject of this lawsuit.

This video deposition *duces tecum* will be recorded stenographically and on video and is being taken for the purpose of discovery, for use as evidence and/or trial, and for such other uses and purposes as are permitted under the Federal Rules of Civil Procedure, Federal Rules of Evidence, the Court's Local Rules, and other applicable law. The deposition will be adjourned once completed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15st day of May, 2025, a true and correct copy hereof has been furnished by e-service to: Counsel for Plaintiff, Ben Crump, Esquire, Natalie Jackson, Esquire, Ben Crump Law, 122 S. Calhoun Street, Tallahassee, Florida 32301 at: ben@bencrump.com and natalie@nataliejacksonlaw.com; Steven Hart, Esquire, Brian Eldridge, Esquire, John Marrese, Esquire, Hart, McLaughlin & Eldridge, LLC, One South Dearborn, Suite 1400, Chicago, Illinois 60603 at:    shart@hmelegal.com; beldridge@hmelegal.com and jmarrese@hmelegal.com; mforbes@hmelegal.com; Kevin Edwards, Esquire, Edwards Injury Law, 226 Baldwin Ave., Charlotte, North Carolina 28204 at: kevin@edwardsinjury.com (Attorneys for Plaintiffs); and Lyman H. Reynolds, Esquire, James R. Jimenez, Esq. Roberts, Reynolds, Bedard & Tuzzio, PLLC, 470 Columbia Dr., Suite C101, West Palm Beach, FL 33409 at: lreynolds@rrbpa.com and jjimenez@rrbpa.com (Attorneys for Co-Defendant Joshua Payne).

*/s/ Ramon Vazquez*
Ramon Vazquez, Esquire
Florida Bar No. 196274
Roper, Townsend & Sutphen, P.A.
255 S. Orange Avenue, Suite 750
Orlando, FL  32801
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
Primary email:  rvazquez@roperpa.com
Secondary email:  Jmichaelsen@roperpa.com
Attorneys for Defendant CITY OF TITUSVILLE

cc:  Milestone Reporting

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JAMIYAH ROBINSON,                                    CASE NO.: 6:23-cv-01313-PGB-LHP
as Personal Representative of the
ESTATE OF JAMES LOWERY,
Deceased,

     Plaintiff,

v.

JOSHUA NATHAN PAYNE, individually
and as an agent and employee of the
Titusville Police Department, and
CITY OF TITUSVILLE, FLORIDA,

     Defendants.

_____/

## PLAINTIFF'S ANSWERS TO DEFENDANT CITY OF TITUSVILLE'S
## FIRST SET OF INTERROGATORIES

Plaintiff, JAMIYAH ROBINSON, as Personal Representative of the ESTATE
OF JAMES LOWERY, deceased, by and through her undersigned counsel and
pursuant to Rule 33, Federal Rules of Civil Procedure, answers Defendant, CITY
OF TITUSVILLE'S First Set of Interrogatories as follows:

1.     Describe in detail each act or omission, if any, on the part of this
Defendant which you contend was a contributing legal cause of the incident in
question, and the resulting damages or injury, if any.

**ANSWER:** Objection, this request calls for a detailed narrative and legal
analysis not conducive or proper to an interrogatory. Plaintiff further objects to the
extent this interrogatory calls for attorney work product.

1

Exhibit 2
J. Robinson
Date 6-6-2025

Subject to said objections, Plaintiff answers that Defendant Payne shot the unarmed James Lowery without justification in the back of the head, causing Mr. Lowery's death. Defendant Payne unlawfully shot and killed Mr. Lowery during a foot pursuit. The Titusville Police Department failed to train Mr. Payne on foot pursuits, including with respect to the use of a firearm during a foot pursuit. Investigation continues.

2.      List the names and addresses of all persons who are believed or known by you, your agents or attorneys, to have any knowledge concerning any of the issues raised by the pleadings and specify the subject matter about which the witness has knowledge.

**ANSWER:** Objection, this request is overly broad, unduly burdensome, and seeks information disproportionate to the needs of the case. Objection, the phrase "any of the issues raised by the pleadings" is vague and ambiguous.

Subject to said objections, Plaintiff identifies Defendant Payne. Answering further, see the witnesses disclosed by the parties under Rule 26(a)(1). To the extent responsive, see the persons identified in documents Plaintiff has produced in the case. Defendants have not produced any documents yet, but Plaintiff anticipates Defendants producing such documents which will identify further persons with knowledge of Defendant Payne's actions during the incident. Investigation continues.

3.      List the names, residence addresses, business addresses and telephone numbers of each person believed or known by you, your agents or attorneys to have heard or who is purported to have heard Defendant, including any employees thereof, make any statement, remark or comment concerning the

incident described in the complaint, and the substance of each statement, remark or comment.

**ANSWER:** None other than those "statements" identified in the materials Plaintiff has already produced as part of his initial disclosures. Investigation continues.

4.      Did the decedent ever sustain or suffer from any prior injuries, disabilities, diseases, conditions or infirmities; or, had the decedent ever been assigned or received any disability rating for any medical condition, prior accidents or personal injuries? If so, give the particulars, including dates, names and addresses of treating and examining doctors, and any institutions where care, diagnoses or treatment was rendered as a result of such injuries or conditions.

**ANSWER:** Objection, this request is irrelevant and is overly broad, unduly burdensome, and seeks information disproportionate to the needs of the case insofar as it seeks information on a variety of temporary illnesses or injuries that would not impact the matters in dispute. Subject to said objections, Plaintiff is not aware of any serious disabilities, diseases, or conditions.

5.      For each and every beneficiary or survivor of the estate, list the amount of money damages which are being sought, if any, by that individual for the following items of damage; lost support and services from the date of decedent's injury to death; future loss of support and services from the date of death, reduced to present value; loss of decedent's companionship and protection; mental pain and suffering from the date of injury; medical or funeral expenses due to the decedent's injury or death.

**ANSWER:** Objection, this request is premature insofar as discovery has just

commenced, Defendants have produced no documents, and no depositions have occurred. Objection to the extent this request calls for expert testimony.

Subject to said objections, Plaintiff will seek damages from a jury commensurate with proofs in the case, including for pain and suffering and loss of support and services, loss of decedent's companionship and protection, mental pain and suffering, and any medical or related expenses to which the Estate or heirs are obligated as a result of Defendants' conduct. Investigation continues.

6.      State the amount, if any, sought by the decedent's estate for the following items of damage; loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest; loss of prospective net accumulations of the estate which might reasonably have been expected but for the wrongful death; medical or funeral expenses due to the decedent's injury or death that have become a charge against the estate.

**ANSWER:** Objection, this request is premature insofar as discovery has just commenced, Defendants have produced no documents, and no depositions have occurred. Objection, this request calls for expert testimony to the extent it seeks future money amounts reduced to present value.

Subject to said objections, Plaintiff is not making a wage loss or loss of financial support claim. Plaintiff is not aware of medical or funeral expenses becoming a charge of the Estate and is only aware of the criminal court's order instructing Defendant Pay to reimburse James Lowery's family for funeral expenses. To date, Plaintiff has not received and is not aware of any medical lien; however, investigation continues.

4

7.    If any survivor or potential beneficiary is seeking to recover the value of past or future loss of support and services, please list for each person seeking any award of such damages, the following information; the amount, nature and extent of any support, monetary or otherwise, provided by the decedent to that person; describe in detail the services regularly performed by the decedent, including but not limited to the nature of the services performed, the duration of time over which said services were performed, the frequency with which the services were performed and the estimated fair market value of said services.

**ANSWER:** Objection, this request calls for a detailed narrative and legal analysis not conducive or proper to an interrogatory. Subject to said objection, Plaintiff, decedent's daughter, will seek damages as identified in response to Interrogatories Nos. 6 and 7 above. To the extent further recoverable under the law, decedent's mother and sister will also seek such damages. Plaintiff is aware that Mr. Lowery contributed household expenses and services to his home in which he lived with his mother, Linda Lowery Johnson.

8.    List each and every item of expense which has been incurred by the personal representative of the estate, decedent's estate, or any survivor to decedent's estate, as a result of the injuries or incident(s) sued on in this action, giving for each item the date incurred, to whom owed or paid, and the goods or services for which each was incurred. If any expense or benefit has been paid by Medicare or Medicaid, please indicate the amount, when payment was made, to whom payment was made and your Medicare and/or Medicaid identification number.

5

**ANSWER:** None of which Plaintiff is aware other than funeral expenses ordered to be paid by Defendant Payne as a part of his guilty plea. Investigation continues.

9.     Did decedent, decedent's estate, personal representative of the estate, beneficiary, or any survivor make any application or claim against any insurance company, workers' compensation insurer, or governmental entity or agency for benefits for medical expenses, life insurance benefits, or any other collateral source by virtue of any death or injuries allegedly sustained as a result of the subject incident? If so, please set forth the following; the name and address of each insurer, governmental entity or other third party to whom such application was directed; the claim number assigned to each such claim, if applicable; the name of the person or entity designated as the insurer under any such insurance policy; the name of any governmental entity affording the benefit for which the claim was asserted; the name and business address of any creditor whose bill was the subject of such application or claim; the amount paid to any such creditor by any such insurer or entity, if applicable.

**ANSWER:** Objection, this request seeks information irrelevant to the subject matter of the action. Objection, the terms "beneficiary" and "survivor" are vague, ambiguous, and undefined. Subject to said objections, on information and belief, decedent had a life insurance policy. Investigation continues.

10.     List the names and addresses of each and every physician, hospital or other person, medical facility or health care provider (including but not limited to mental health care), who examined decedent or provided any treatment to decedent within the five (5) years prior to his death, and also including any such

person who might have examined decedent at or since the time of his death, including any autopsy or similar examination.

**ANSWER:** Objection, this request seeks irrelevant information and is overbroad, unduly burdensome, and disproportionate to the needs of the case. Objection, this request unnecessarily invades the privacy of the decedent. Subject to said objections, on information and belief, the decedent was treated by personnel on scene and had an autopsy conducted by the Brevard County Medical Examiner. Investigation continues.

11.     Do you intend to call any medical or non-medical expert witnesses at the trial of this case, and if so, identify each witness, describe his/her qualifications as an expert, state the subject matter upon which he/she is expected to testify; state the substance of the facts and opinions to which he/she is expected to testify and give a summary of the grounds for each opinion.

**ANSWER:** Unknown at this time. Plaintiff anticipates the possibility of calling a medical examiner to discuss examination of the body and cause of death to the extent necessary. Plaintiff will supplement in accordance with the Court's scheduling order.

12.     State the names and addresses of decedent's former employers and dates of employment, including self-employment, for the ten (10) years preceding decedent's date of death, and for each describe the position/title held by decedent, and state the wage, salary or other compensation earned by the decedent at said employment from the five (5) years prior to death.

**ANSWER:** On information and belief, within five years of his death, decedent worked hourly at a sunscreen factory within a year of his death.

Otherwise, he did odd jobs, including handyman or construction work, lawn care, and some car towing. Plaintiff is not making a wage loss or loss of support claim.

13.    Did decedent file any income tax returns in any year during the five (5) years preceding the date of death? If so, please state whether you or anyone else has copies of the returns, and further state the decedent's gross and taxable income for the last five (5) years preceding his death, from any and all sources.

**ANSWER:** Objection, this request seeks irrelevant information. Plaintiff is not making a wage loss or loss of support claim.

14.    List each and every item of expense which has been incurred by the personal representative of the estate, decedent's estate, beneficiary, or any survivor to decedent's estate, as a result of the injuries or incident(s) sued on in this action, giving for each item the date incurred, to whom owed or paid, and the goods or services for which each was incurred. If any expense or benefit has been paid by Medicare and/or Medicaid, and/or any other health insurer, please indicate the amount, when payment was made, to whom payment was made and your Medicare and/or Medicaid identification number.

**ANSWER:** Decedent's family sustained funeral expenses. Plaintiff will produce documentation of same. Investigation continues.

15.    What was the average monthly cost of decedent's food, rent and housing, clothing, transportation, education, medical and dental care or other living expenses for the past twelve months preceding this incident?

**ANSWER:** Objection, this request seeks irrelevant information and is overbroad, unduly burdensome, and seeks information disproportionate to the needs of the case.

16.    State decedent's net worth at the time of the incident, at the time of decedent's death, if different, as well as the end of each of the last five (5) years of decedent's life. Additionally, list all decedent's assets and liabilities at the time of this incident, at the time of death, and one year preceding the date of this incident.

**ANSWER:** Objection, this request seeks irrelevant information and is overbroad, unduly burdensome, and seeks information disproportionate to the needs of the case. Plaintiff is not making a wage loss or loss of support claim.

17.    Identify the name, address and related account numbers for every bank or other type of financial institution where the decedent, or any company owned or controlled by decedent, singularly or jointly maintained any account including, but not limited to, checking, savings, money market, investment, corporate, etc. for the three (3) years preceding death.

**ANSWER:** Objection, this request seeks irrelevant information and is overbroad, unduly burdensome, and seeks information disproportionate to the needs of the case. Plaintiff is not making a lost wages claim.

18.    Please state the names and addresses of all educational institutions attended by the decedent, indicating the periods of attendance at each, whether or not the decedent graduated there from, degree received, if any, and the dates on which they were awarded.

**ANSWER:** Decedent attended Wilson High School in Florence, South Carolina. Later he obtained his General Equivalency Diploma through a correspondence program.

19.    Identify any other death benefits or gratuities that you and/or the Estate have received or anticipate receiving, in trust or otherwise, as a result of the

death of the decedent, including but not limited to "Go Fund Me" accounts, cash donations, checks, money orders, gift cards, etc.

**ANSWER:** Objection, this request seeks irrelevant information. Subject to said objection, none.

20.    State the approximate percentage of the decedent's annual income which he, himself, allotted to his own needs and comforts in the two years immediately prior to his death.

**ANSWER:** Objection, this request seeks irrelevant information and is overbroad, unduly burdensome, and seeks information disproportionate to the needs of the case. Plaintiff is not making a lost wages claim.

21.    Did the decedent use tobacco, alcoholic beverages or narcotic substances? If so, describe the extent to which he used each, specifying the particular kind of alcoholic beverage, tobacco and narcotic substance and the average quantity consumed per week.

**ANSWER:** Objection, this request seeks information irrelevant to the matters at issue.

22.    Please state if the decedent was ever a claimant or party, either plaintiff or defendant, in a claim or lawsuit other than the present matter and if so, state whether he was plaintiff or defendant, the nature of the action, and the date and court in which such suit or claim was filed.

**ANSWER:** Objection, this request seeks irrelevant information. Subject to said objection, in terms of civil proceedings, decedent was a party to child support proceedings in South Carolina.

Date: February 21, 2025

10

/s/    *John Marrese*

One of the Attorneys for Plaintiff

Ben Crump
Natalie Jackson
BEN CRUMP LAW
122 S. Calhoun Street
Tallahassee, Florida 32301
(800) 713-1222
ben@bencrump.com
natalie@nataliejacksonlaw.com

Steven Hart*
Brian Eldridge*
John Marrese* (*Lead Counsel Pursuant to L.R. 2.02(a)*)
HART MCLAUGHLIN & ELDRIDGE, LLC
One South Dearborn, Suite 1400
Chicago, IL 60603
(312) 955-0545
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com

Kevin Edwards*
EDWARDS INJURY LAW
226 Baldwin Avenue
Charlotte, NC 28204
(980) 400-3244
kevin@edwardsinjury.com

*Attorneys for Plaintiffs*

* Specially Admitted

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished via electronic mail this 21st day of February, 2025, to counsel of record.

/s/    John Marrese
John Marrese

Docusign Envelope ID: 9D4815DC-E6EA-43A4-A15E-32CD76BC1274

## VERIFICATION

I declare under penalty of perjury that the foregoing Plaintiff's Answers to
Defendant City of Titusville's First Set of Interrogatories are true and correct based
on personal knowledge or reasonable investigation by Plaintiff and her counsel.

Executed on February 21, 2025.                    /s/ _____

                                                      Ja'Miyah Robinson

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMIYAH ROBINSON,                              CASE NO.: 6:23-cv-01313-PGB-LHP
as Personal Representative of the
ESTATE OF JAMES LOWERY,
Deceased,

      Plaintiff,

v.

JOSHUA NATHAN PAYNE, individually
and as an agent and employee of the
Titusville Police Department, and
CITY OF TITUSVILLE, FLORIDA,

      Defendants.

                                              /

## PLAINTIFF'S SUPPLEMENTAL ANSWERS TO DEFENDANT CITY OF TITUSVILLE'S FIRST SET OF INTERROGATORIES

      Plaintiff, JAMIYAH ROBINSON, as Personal Representative of the ESTATE OF JAMES LOWERY, deceased, by and through her undersigned counsel and pursuant to Rule 33, Federal Rules of Civil Procedure, supplements her answers to Defendant, CITY OF TITUSVILLE'S First Set of Interrogatories as follows:

      5.      For each and every beneficiary or survivor of the estate, list the amount of money damages which are being sought, if any, by that individual for the following items of damage; lost support and services from the date of decedent's injury to death; future loss of support and services from the date of death, reduced to present value; loss of decedent's companionship and protection; mental pain and suffering from the date of injury; medical or funeral

1



Exhibit 3
J. Robinson
Date 6-6-2025

expenses due to the decedent's injury or death.

ANSWER: Objection, this request is premature insofar as discovery has just commenced and no depositions have occurred. Objection to the extent this request calls for expert testimony.

Subject to said objections, Plaintiff will seek damages from a jury commensurate with proofs in the case, including for pain and suffering (Decedent's and Plaintiff's) and loss of support and services, loss of decedent's companionship and protection, mental pain and suffering, and any medical or related expenses to which the Estate or heirs are obligated as a result of Defendants' conduct. Plaintiff Jamiyah Robinson is the sole heir to Mr. Lowery's estate. Plaintiff is not making any claim for lost wages or loss of financial support (past or future). Investigation continues.

6.      State the amount, if any, sought by the decedent's estate for the following items of damage; loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest; loss of prospective net accumulations of the estate which might reasonably have been expected but for the wrongful death; medical or funeral expenses due to the decedent's injury or death that have become a charge against the estate.

ANSWER: Objection, this request is premature insofar as discovery has just commenced and no depositions have occurred. Objection, this request calls for expert testimony to the extent it seeks future money amounts reduced to present value.

Subject to said objections, Plaintiff is not making a wage loss or loss of

2

financial support claim. Plaintiff is not aware of medical or funeral expenses becoming a charge of the Estate and is only aware of the criminal court's order instructing Defendant Payne to reimburse James Lowery's family for funeral expenses. Plaintiff is not seeking reimbursement for funeral expenses here as neither Plaintiff nor the Estate is responsible for them. To date, Plaintiff has not received and is not aware of any medical lien; however, investigation continues.

7.      If any survivor or potential beneficiary is seeking to recover the value of past or future loss of support and services, please list for each person seeking any award of such damages, the following information; the amount, nature and extent of any support, monetary or otherwise, provided by the decedent to that person; describe in detail the services regularly performed by the decedent, including but not limited to the nature of the services performed, the duration of time over which said services were performed, the frequency with which the services were performed and the estimated fair market value of said services.

**ANSWER:** Objection, this request calls for a detailed narrative and legal analysis not conducive or proper to an interrogatory. Subject to said objection, Plaintiff, decedent's daughter, will seek damages as identified in response to Interrogatories Nos. 5 and 6 above.

9.      Did decedent, decedent's estate, personal representative of the estate, beneficiary, or any survivor make any application or claim against any insurance company, workers' compensation insurer, or governmental entity or agency for benefits for medical expenses, life insurance benefits, or any other collateral source by virtue of any death or injuries allegedly sustained as a result

of the subject incident? If so, please set forth the following; the name and address of each insurer, governmental entity or other third party to whom such application was directed; the claim number assigned to each such claim, if applicable; the name of the person or entity designated as the insurer under any such insurance policy; the name of any governmental entity affording the benefit for which the claim was asserted; the name and business address of any creditor whose bill was the subject of such application or claim; the amount paid to any such creditor by any such insurer or entity, if applicable.

**ANSWER:** Objection, this request seeks information irrelevant to the subject matter of the action. Objection, the terms "beneficiary" and "survivor" are vague, ambiguous, and undefined. Subject to said objections, none applicable to Plaintiff.

10.   List the names and addresses of each and every physician, hospital or other person, medical facility or health care provider (including but not limited to mental health care), who examined decedent or provided any treatment to decedent within the five (5) years prior to his death, and also including any such person who might have examined decedent at or since the time of his death, including any autopsy or similar examination.

**ANSWER:** Objection, this request seeks irrelevant information and is overbroad, unduly burdensome, and disproportionate to the needs of the case. Objection, this request unnecessarily invades the privacy of the decedent. Subject to said objections, on information and belief, the decedent was treated by personnel on scene and had an autopsy conducted by the Brevard County Medical Examiner. Plaintiff is aware of no others treaters.

12.   State the names and addresses of decedent's former employers and

4

dates of employment, including self-employment, for the ten (10) years preceding decedent's date of death, and for each describe the position/title held by decedent, and state the wage, salary or other compensation earned by the decedent at said employment from the five (5) years prior to death.

**ANSWER:** On information and belief, within five years of his death, decedent worked hourly at a sunscreen factory within a year of his death. Otherwise, he did odd jobs, including handyman or construction work, lawn care, and some car towing. Plaintiff is not making a wage loss or loss of financial support claim. See Interrogatory No. 5 above.

13.    Did decedent file any income tax returns in any year during the five (5) years preceding the date of death? If so, please state whether you or anyone else has copies of the returns, and further state the decedent's gross and taxable income for the last five (5) years preceding his death, from any and all sources.

**ANSWER:** Objection, this request seeks irrelevant information. Plaintiff is not making a wage loss or loss of financial support claim. See Interrogatory No. 5 above.

14.    List each and every item of expense which has been incurred by the personal representative of the estate, decedent's estate, beneficiary, or any survivor to decedent's estate, as a result of the injuries or incident(s) sued on in this action, giving for each item the date incurred, to whom owed or paid, and the goods or services for which each was incurred. If any expense or benefit has been paid by Medicare and/or Medicaid, and/or any other health insurer, please indicate the amount, when payment was made, to whom payment was made and your Medicare and/or Medicaid identification number.

**ANSWER:** None. Decedent's family sustained funeral expenses; however, Plaintiff is not seeking those expenses here as neither she (as sole heir) nor the Estate paid them.

15.    What was the average monthly cost of decedent's food, rent and housing, clothing, transportation, education, medical and dental care or other living expenses for the past twelve months preceding this incident?

**ANSWER:** Objection, this request seeks irrelevant information and is overbroad, unduly burdensome, and seeks information disproportionate to the needs of the case. Plaintiff is not making a claim for lost wages or loss of financial support.

16.    State decedent's net worth at the time of the incident, at the time of decedent's death, if different, as well as the end of each of the last five (5) years of decedent's life. Additionally, list all decedent's assets and liabilities at the time of this incident, at the time of death, and one year preceding the date of this incident.

**ANSWER:** Objection, this request seeks irrelevant information and is overbroad, unduly burdensome, and seeks information disproportionate to the needs of the case. Plaintiff is not making a wage loss or loss of financial support claim. See answer to Interrogatory No. 5.

20.    State the approximate percentage of the decedent's annual income which he, himself, allotted to his own needs and comforts in the two years immediately prior to his death.

**ANSWER:** Objection, this request seeks irrelevant information and is overbroad, unduly burdensome, and seeks information disproportionate to the needs of the case. Plaintiff is not making a lost wages or loss of financial support

claim.

21.    Did the decedent use tobacco, alcoholic beverages or narcotic substances? If so, describe the extent to which he used each, specifying the particular kind of alcoholic beverage, tobacco and narcotic substance and the average quantity consumed per week.

**ANSWER:** Objection, this request seeks information irrelevant to the matters at issue. Subject to and without waiving the foregoing objections, Plaintiff has no information regarding her father's tobacco, alcohol, or narcotics use.

22.    Please state if the decedent was ever a claimant or party, either plaintiff or defendant, in a claim or lawsuit other than the present matter and if so, state whether he was plaintiff or defendant, the nature of the action, and the date and court in which such suit or claim was filed.

**ANSWER:** Objection, this request seeks irrelevant information. Subject to said objection, in terms of civil proceedings, decedent was a party to child support proceedings in Florence County, South Carolina, South Carolina Dept. of Social Services v. James Lowery, Docket No. 09-DR-21-2055.

Date:  April 29, 2025

/s/     _John Marrese_

One of the Attorneys for Plaintiff

Ben Crump
Natalie Jackson
BEN CRUMP LAW
122 S. Calhoun Street
Tallahassee, Florida 32301
(800) 713-1222
ben@bencrump.com
natalie@nataliejacksonlaw.com

7

Steven Hart*
Brian Eldridge*
John Marrese* (*Lead Counsel Pursuant to L.R. 2.02(a)*)
HART MCLAUGHLIN & ELDRIDGE, LLC
One South Dearborn, Suite 1400
Chicago, IL 60603
(312) 955-0545
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com

Kevin Edwards*
EDWARDS INJURY LAW
226 Baldwin Avenue
Charlotte, NC 28204
(980) 400-3244
kevin@edwardsinjury.com

*Attorneys for Plaintiffs*

* Specially Admitted

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished via electronic mail this 1st day May 2025, to counsel of record.

/s/     *John Marrese*
John Marrese

8

Docusign Envelope ID: C1C10422-2DD7-48CD-A4C5-7AF417481A66

## VERIFICATION

I declare under penalty of perjury that the foregoing Plaintiff's
Supplemental Answers to Defendant City of Titusville's First Set of Interrogatories
are true and correct based on personal knowledge or reasonable investigation by
Plaintiff and her counsel.

Executed on May 1, 2025.                    Signed by:

                                   /s/    Jamiyah Robinson
                                          FCA68CD570B74C1...

                                          Ja'Miyah Robinson

Filing # 109777816 E-Filed 07/04/2020 10:25:31 AM

**ARREST/NOTICE TO APPEAR PROBABLE CAUSE AFFIDAVIT/ JUVENILE REFERRAL**

FCIC/NCIC CHECK YES [X] NO [ ]

1. Arrest   4. Complaint Affidavit
2. Notice to Appear   5. Request for Capias
3. Arrest Affidavit   6. Juvenile Referral   Juvenile [1]

| OBTS Number | | | |
|---|---|---|---|
| 0501-410707 | | | |

Agency ORI Number **FL0050000** — Agency Name **Brevard County Sheriff's Office** — Agency Report Number **2020-00223393**

Charge Type Check as many as apply: [X] 1. Felony [ ] 3. Misdemeanor [ ] 5. Ordinance — [ ] 2. Traffic [X] 4. Traffic Misdemeanor [ ] 6. Other — Weapon Seized/Type 1. Yes [ ] No [2] Unarmed — Agency Arrest Number **4050874**

Location of Arrest (include Name of Business) **1585 Kings CT Titusville** — City — Location of Offense (Business Name, Address) **Singleton Ave/Dairy Rd** — City **Titusville**

Date of Arrest **07/04/2020** — Time of Arrest **08:49** — Transport Date / / — Transport Time : — Jail Date **07/04/2020** — Jail Time **10:00** — Fingerprinted [ ] Identification Only [ ] Criminal — By:

Date of Offense **07/03/2020** — FDLE Number — DOC Number — FBI Number

Name (Last, First, Middle) **Lowery, James Garland** — Alias

Race [ ] White [ ] American Indian [X] Black [ ] Asian [ ] Unknown — Sex **M** — Date of Birth **12/22/1981** — Height **5'11** — Weight **170** — Eye Color **Brown** — Hair Color **Black** — Complexion **Medium** — Build **Tall**

Scars, Marks, Tattoos, Unique Physical Features (Location, Type, Description) — Indication of: Alcohol Influence / Drug Influence [Y/N/Unk]

Local Address (Street, Apt. Number) **1585 Kings CT Titusville, FL 32796-** — (City) (State) (Zip) — Phone **(321)362-3278** — Residency Type [ ] City [ ] S. Florida [ ] County [ ] Out of State

Permanent Address (Street, Apt. Number or Parent's Name If Juv.) — (City) (State) (Zip) — Phone — Parent Contacted [Y/N]

Business Address (Name, Street or Parent's Address If Juv.) **Unemployed** — (City) (State) (Zip) — Phone — Occupation

Driver's License State/Number **FL L600447814620** — *Social Security Number — INS Number — Place of Birth **South Carolina** — Citizenship **US**

*Collection of social security numbers from an arrested individual is to verify identity and may be shared with other law enforcement agencies

Co-Defendant Name (Last, First, Middle) — Race — Sex — Date of Birth or Age — [ ] 1. Arrested [ ] 2. At Large — [ ] 3. Felony [ ] 4. Misdemeanor [ ] 5. Juvenile

Co-Defendant Name (Last, First, Middle) — Race — Sex — Date of Birth or Age — [ ] 1. Arrested [ ] 2. At Large — [ ] 3. Felony [ ] 4. Misdemeanor [ ] 5. Juvenile

Charge Description **Fleeing & Eluding Police Officer** — Counts **1** [ ] F.S. [X] Ord. — Statute Violation Number **316.1935.1** — Violation of Section (ORI) **Commit**

Activity — Drug Type — Amount/Unit — Bond Amount **$2000.00** — Court Number

[X] PC [ ] Capias [ ] AC [ ] BW [ ] FW [ ] PW [ ] Juv. PU [ ] Citation — Date Issued / / — [ ] Writ. Art. — [ ] Domestic Viol. Inj. — [ ] Order of Arrest

Charge Description **No Driver License-Never Had One** — Counts **1** [ ] F.S. [X] Ord. — Statute Violation Number **322.03.1** — Violation of Section (ORI) **Commit**

Activity — Drug Type — Amount/Unit — Bond Amount **$500.00** — Court Number

[X] PC [ ] Capias [ ] AC [ ] BW [ ] FW [ ] PW [ ] Juv. PU [ ] Citation — Date Issued / / — [ ] Writ. Art. — [ ] Domestic Viol. Inj. — [ ] Order of Arrest

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that, the above named Defendant committed the following violation of law. On the **3rd** day of **July, 2020** at **1638** [ ] A.M. [X] P.M. (Specifically include facts constituting cause for arrest)

**On the above date and time, I attempted a traffic stop near the intersection of Singleton Avenue and Dairy Road, Titusville, Brevard County, Florida, on a black Dodge Charger (FL #IZGK07). The black male driver failed to yield to emergency lights and siren and fled southbound at a high rate of speed.**

per mile for a total of $ ___ Affidavit enclosed Y ___ N X ___ — Continue for Narrative [ ] — Charges [ ]

In accordance with F.S.S. 874, two (2) or more characteristics constitutes gang member; one (1) characteristic constitutes gang associate.

[ ] GANG MEMBER [ ] ADMITS [ ] ID BY PARENT [ ] DOCUMENTED [ ] STYLE OF DRESS [ ] HAND SIGNS [ ] TATTOO [ ] KNOWN ASSOCIATE
[ ] GANG ASSOCIATE [ ] ID BY PHYSICAL EVIDENCE [ ] IN COMPANY OF MEMBERS [ ] AUTHORIZED COMMUNICATION [ ] ID BY INFORMANT

**Mandatory Appearance in Court** — Location (Court, Room Number, Address)

Time — Month — Day — Year — Time : — [ ] A.M. [ ] P.M.

I AGREE TO APPEAR AT THE TIME AND PLACE DESIGNATED TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE SUBSCRIBED. I UNDERSTAND THAT SHOULD I WILFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS NOTICE TO APPEAR, THAT I MAY BE HELD IN CONTEMPT OF COURT AND A WARRANT FOR MY ARREST OR A TAKE INTO CUSTODY ORDER SHALL BE ISSUED.

Signature of Defendant/Juvenile — Signature of Juv. Parent/Custodian — Release to (Name) — Date / / — Time :

[ ] Miranda Warning — Hold for Other Agency Name: — Verified By: — Date / / — Bond #

Adults Only [ ] Hold for First Appearance [ ] Do Not Bond Out. Reason: — Bond #

I swear/affirm the above and attached statements are true and correct. **Yes** — Sworn to/subscribed before me, the undersigned authority this ___ day of **07/04/2020** — Bond #

Officer's/Complainant's Signature **Electronically Signed** — Signature **Electronically Signed**

ID No./Dist. **0757** **Patrol - North** — Print or Type Name **Wagner, Robert F** — Returnable Court Date — Returnable Court Time [ ] A.M. [ ] P.M.

Name (Printed) **Ginther Christopher** — Notary/Law Enforcement Officer In Performance of Official Duties Personally Known [X] ID Produced [ ] — Court Location — Page **1** of **2**

Exhibit **4**
J. Robinson
Date **10-6-202...**

**AGENCY NAME:** Brevard County Sheriff's Office                    BREVARD COUNTY, FLORIDA

| | |
|---|---|
| **AGENCY REPORT NO.** | 2020-00223393 |

NARRATIVE Continuation    Page 2 of 2

| | |
|---|---|
| **OBTS NO.** | 0501-410707 |

(Last, First, Middle)
**DEFENDANT/JUVENILE:** Lowery, James, Garland

| CHARGE | Charge Description | | | | | Counts | ☐ F.S. ☐ Ord. | Statute Violation Number | | Violation of Section (ORD) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Activity | Drug Type | Amount/Unit | | | Bond Amount | | Court Number | | |
| | ☐PC ☐ | ☐AC ☐BW | ☐FW ☐PW | ☐Juv. PU | ☐Citation | Date Issued | ☐Writ-Aft. | ☐Domestic Viol. Inj. | | ☐Order of Arrest |

| CHARGE | Charge Description | | | | | Counts | ☐ F.S. ☐ Ord. | Statute Violation Number | | Violation of Section (ORD) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Activity | Drug Type | Amount/Unit | | | Bond Amount | | Court Number | | |
| | ☐PC ☐Caplas | ☐AC ☐BW | ☐FW ☐PW | ☐Juv. PU | ☐Citation | Date Issued | ☐Writ-Aft. | ☐Domestic Viol. Inj. | | ☐Order of Arrest |

On July 4, 2020, at approximately 0846 hours, Sgt. Prisco and I responded to 1585 Kings Court, Titusville, Brevard County, Florida, and found the black Charger parked in front of the residence. As we approached the residence on foot the same black male from the day before was sitting outside. We made contact with him, he identified himself as the driver and I asked why he fled the traffic stop the day before and the defendant told me he did not have a driver's license and had some "weed" in the vehicle with him.

The defendant was cooperative and he was arrested and transported to the Brevard County Detention Center without incident.

| Officer's Signature | Officer's Name PRINTED |
|---|---|
| **Electronically Signed** | **Christopher Ginther, 0757** |

Sadoff, Clerk of Courts, Brevard County



*Reserved for Recording*

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
## IN AND FOR BREVARD COUNTY, FLORIDA

_____ Probation Violator _____ Community Control Violator _____ Retrial _____ Resentence

STATE OF FLORIDA

vs.

JAMES GARLAND LOWERY

Case Number: 05-2020-CF-033350-AXXX-XX

Filed in Open Court on April 8, 2021 2:02 pm.
A McBride, Deputy Clerk



33280558

### JUDGMENT/ORDER OF PROBATION

Court was opened with the Honorable KENNETH FRIEDLAND (DIV. 7) presiding, and in attendance: State Attorney: JENNIFER (GILL) DENICK; Trial Clerk A McBride.  The Defendant, JAMES GARLAND LOWERY, being personally before this Court represented by CHRISTOPHER W CONOMOS, the attorney of record,  and said Defendant having entered a plea of nolo contendere  to the following crime(s):

| OBTS Number(s): | 0501410707 | | |
|---|---|---|---|
| Count | Crime | Offense Statute Number | Degree |
| 2 | NO DRIVER LICENSE OR OPERATE MOTOR VEH WO VALID DL | 322..03.(1) | M2 |

| X | and no cause being shown why the Defendant should not be adjudicated guilty, it is ordered that the Defendant is hereby ADJUDICATED GUILTY of the above crime(s). |
|---|---|

Court was opened with the Honorable KENNETH FRIEDLAND (DIV. 7) presiding, and in attendance: State Attorney: JENNIFER (GILL) DENICK; Trial Clerk A McBride.  The Defendant, JAMES GARLAND LOWERY, being personally before this Court represented by CHRISTOPHER W CONOMOS, the attorney of record,  and said Defendant having entered a plea of nolo contendere  to the following crime(s):

| OBTS Number(s): | 0501410707 | | |
|---|---|---|---|
| Count | Crime | Offense Statute Number | Degree |
| 1 | FLEEING OR ATTEMPTING ELUDE WITHOUT LIGHTS SIREN | 316..193(5.1) | F3 |

| X | and no cause being shown why the Defendant should not be adjudicated guilty, it is ordered that the Defendant is hereby ADJUDICATED GUILTY of the above crime(s). |
|---|---|
| X | And being a qualified offender pursuant to s. 943.325, the defendant shall be required to submit DNA samples as required by law. |

JAMES GARLAND LOWERY                    Case Number: 05-2020-CF-033350-AXXX-XX

DONE AND ORDERED in open court at Brevard County, Florida, on April 8, 2021

_____
KENNETH FRIEDLAND (DIV. 7), Circuit Judge

PTY: D-1
Event Code 5637

| | CASE NUMBER |
|---|---|
| ☒ IN THE CIRCUIT COURT, EIGHTEENTH JUDICIAL CIRCUIT, BREVARD COUNTY, FLORIDA<br>☐ IN THE COUNTY COURT, BREVARD COUNTY, FLORIDA | 05-2020-CF-033350-AXXX-XX |

**FINGERPRINTS OF DEFENDANT**

OBTS NUMBER _____

PLAINTIFF

STATE OF FLORIDA
vs

JAMES GARLAND LOWERY

**FILED IN OPEN COURT**

This _____ day of _____,

20____, at _____M.

**CLERK OF COURTS**

BY_____DC

| 1. R. Thumb | 2. R. Index | 3. R. Middle | 4. R. Ring | 5. R. Little |
|---|---|---|---|---|
| | | | | |
| 6. L. Thumb | 7. L. Index | 8. L. Middle | 9. L. Ring | 10. L. Little |
| | | | | |

Fingerprints taken by: _____ Scott Andrews #4831 _____ Deputy Sheriff ____
(name) (title)

I HEREBY CERTIFY that the above and foregoing fingerprints on this judgment are the fingerprints of the defendant, JAMES GARLAND LOWERY and that they were placed thereon by the defendant in my presence in open court this date.

| DONE AND ORDERED BREVARD COUNTY, FLORIDA | _____<br>JUDGE | DATE<br>04/08/21 |
|---|---|---|

LAW 148
Rev. 07/2008

PAGE ____ OF ____

BAR CODE LABEL

*Reserved for Recording*

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
## IN AND FOR BREVARD COUNTY, FLORIDA

STATE OF FLORIDA

vs.

JAMES GARLAND LOWERY

Case Number: 05-2020-CF-033350-AXXX-XX

OBTS Number(s):    0501410707

## SENTENCE

The Defendant, JAMES GARLAND LOWERY, being personally before this Court, accompanied by the Defendant's attorney of record, CHRISTOPHER W CONOMOS, and having been adjudicated guilty herein, and the Court having given the Defendant an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why the Defendant should not be sentenced as provided by law, and no cause being shown

**It is the sentence of the Court that:**

### (as to Count  1  )

__X__    And being a qualified offender pursuant to s. 943.325, the defendant shall be required to submit DNA samples as required by law.

__X__    The Defendant is placed on probation for a period of thirty-six (36) months under the supervision of the Department of Corrections, according to the terms and conditions of supervision set forth in a separate order entered herein.

### (as to Count  2  )

__X__    The Defendant is hereby committed to the custody of the Sheriff of Brevard County, Florida.

**To be imprisoned (Check one; unmarked sections are inapplicable):**

__X__    For a term of one (1) day.

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
IN AND FOR BREVARD COUNTY, FLORIDA

STATE OF FLORIDA

Case Number: 05-2020-CF-033350-AXXX-XX

vs.

OBTS Number(s):     0501410707

JAMES GARLAND LOWERY

**SPECIAL PROVISIONS**

By appropriate notation, the following provisions apply to the sentence imposed:

**(as to Count  2 )**

**Other Provisions:**

**Original Jail Credit**          X     It is further ordered that the defendant be allowed a total of 1 day as credit for time incarcerated before imposition of this sentence.

*Reserved for Recording*

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
## IN AND FOR BREVARD COUNTY, FLORIDA

STATE OF FLORIDA,                                    Case Number:   05-2020-CF-033350-AXXX-XX
            Plaintiff

vs.

JAMES GARLAND LOWERY,
            Defendant

### ORDER OF PROBATION

Probation          The court hereby stays and withholds the imposition of sentence as to count(s) 1 and places the
                   defendant on probation for a period of thirty-six (36) months under the supervision of the Department
                   of Corrections

*Reserved for Recording*

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
## IN AND FOR BREVARD COUNTY, FLORIDA

STATE OF FLORIDA,
       Plaintiff

Case Number:   05-2020-CF-033350-AXXX-XX

vs.

JAMES GARLAND LOWERY,
       Defendant

## STANDARD CONDITIONS OF PROBATION

It is further ordered that the defendant comply with the following standard conditions and sanctions of community control / probation:

1. (01)  Not later than the fifth day of each month, you will make a full and truthful report to your officer on the form provided for that purpose.
2. (02)  You will pay the State of Florida the amount of $50.00 per month toward the cost of your supervision, unless otherwise waived in compliance with Florida Statutes.
3. (03)  You will not change your residence or employment or leave the county of your residence without first procuring the consent of your officer.
4. (04)  You will not possess, carry or own any firearm.  You will not possess, carry, or own any weapons without first procuring the consent of your officer.
5. (05)  You will live without violating the law.  A conviction in a court of law shall not be necessary for such a violation of law to constitute a violation of your probation.
6. (06)  You will not associate with any person engaged in any criminal activity.
7. (07)  You will not use intoxicants to excess or possess any drugs or narcotics unless prescribed by a physician.  Nor will you visit places where intoxicants, drugs or other dangerous substances are unlawfully sold, dispensed or used.
8. (08)  You will work diligently at a lawful occupation, advise your employer of your probation status, and support any dependents to the best of your ability, as directed by your officer.
9. (09)  You will promptly and truthfully answer all inquiries directed to you by the court or the officer, and allow your officer to visit in your home, at your employment site or elsewhere, and you will comply with all instructions your officer may give you.
10. (10)  You will pay restitution, court costs, and/or fees in accordance with special conditions imposed or in accordance with attached orders.
11. (11)  You will report in person within 72 hours of your release from incarceration to the Probation Office in Brevard County, Florida, unless otherwise instructed by the court or department.  (This condition applies only if released from the Department of Corrections confinement.)  Otherwise, you must report immediately to the probation office located at: CALL 321-634-3570 BY 4:00PM TODAY .
12. (12)  You shall submit to the drawing of blood or other biological specimens as required by s. 943.325, Florida Statutes.
13. (13)  You shall submit to the taking of a digitized photograph as required by s. 948.03, Florida Statutes.
14. (13a)  You shall pay a related cost of $1.00 for each month of your probationary term.  The amount due, up to $60.00, shall be paid within the first ninety (90) days after the beginning of your probationary sentence.  Further, payments, if any, shall be paid in accordance with a schedule to be established by your officer, if the offender agrees, or the Court.
15. (31)  Submit to random testing as directed by the probation officer or the professional staff of the treatment center where he or she is receiving treatment to determine the presence or use of alcohol or controlled substances.

*Reserved for Recording*

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
## IN AND FOR BREVARD COUNTY, FLORIDA

STATE OF FLORIDA                                    Case Number: 05-2020-CF-033350-AXXX-XX

vs.

JAMES GARLAND LOWERY

### SPECIAL CONDITIONS OF PROBATION

And it is further ordered that the defendant comply with the following special conditions of community control / probation.

#### (as to Count  1 )

a.  Your fines and court costs set forth on the Fine/Costs/Fees page on this judgment are made conditions of your probation and will be paid to the Clerk of the Circuit Court, P.O. Box 919026, Orlando, FL 32891-9026.

b.  Early Termination: The defendant may apply for early termination after 18 MONTHS if all conditions are met and there are no violations.

**PROBATION**

You are hereby placed on notice that the court may at any time rescind or modify any of the conditions of your probation, or may extend the period of probation as authorized by law, or may discharge you from further supervision. If you violate any of the conditions of your probation, you may be arrested and the court may revoke your probation, adjudicate you guilty if adjudication of guilt was withheld, and impose any sentence which it might have imposed before placing you on probation or require you to serve the balance of said sentence.

DONE AND ORDERED in Brevard County, Florida, on April 8, 2021.

_____
KENNETH FRIEDLAND (DIV. 7), Circuit Judge

**CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,**
**IN AND FOR BREVARD COUNTY, FLORIDA**

STATE OF FLORIDA

Case Number: 05-2020-CF-033350-AXXX-XX

vs.

JAMES GARLAND LOWERY

## SIGNATURE PAGE

In the event the above sentence is to the Department of Corrections, the Sheriff of Brevard County, Florida, is hereby ordered and directed to deliver the Defendant to the Department of Corrections at the facility designated by the department together with a copy of this judgment and sentence and any other documents specified by Florida Statute.

The Defendant was advised in open court of the right to appeal from this sentence by filing a notice of appeal within thirty (30) days from this date with the clerk of this court and the Defendant's right to the assistance of counsel in taking the appeal at the expense of the State on showing of indigency.

In imposing the above sentence, the Court further recommends:
*(Items marked with \*(COP), \*(COCC), and \*(COS) are Conditions of Probation, Community Control, and Condition of Suspension)*

**(as to Count  1 )**

**Driver's License Action**
    Driver's license is revoked for a period of 12 months.

THE COURT HEREBY ORDERS THE DEFENDANT released on Probation. Report to Probation within 24 hours.

DONE AND ORDERED at Brevard County, Florida, on April 8, 2021.

_____
KENNETH FRIEDLAND (DIV. 7), Circuit Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by U.S. Mail / hand delivery to CHRISTOPHER W CONOMOS, 2725 JUDGE FRAN JAMIESON WAY STE E, MELBOURNE, FL 32940-6698 on 04/08/2021.

_____

_____
Deputy Clerk

Exhibit
J. Robinson
Date 6-6-2025
KR

| PROBABLE CAUSE AFFIDAVIT | FORM PURPOSE | On View (PC Arrest) __X__ | | Capias Request ____ | | JUVENILE  YES ____  NO __X__ |
|---|---|---|---|---|---|---|
| | | Taken into Custody (Warrant/Capias Arrest) ____ | | Summoned/Cited (NTA) ____ | | Referral ____  Civil Citation ____ |

| Arresting Agency ORI | Arresting Agency Name | | Arresting Agency Case/Arrest Number | OBTS Number |
|---|---|---|---|---|
| FL0050000 | BREVARD COUNTY SHERIFF'S OFFICE | | 2021-00412794 | 0501413416 |

| FDLE (SID) Number | FBI Number | DOC Number | Transport Time | Jail Date / Time | Jail Booking Number | Booking Agency ORI |
|---|---|---|---|---|---|---|
| | | | | 11/12/2021  16:00 | 2021-00013702 | FL0050000 |

| Location of Arrest (Include Name of Business) | | City | Location of Offense (Business Name, Address | City) |
|---|---|---|---|---|
| PROBATION AND PAROLE 3880 S WASHINGTON  AV 106 Titusville | | | PROBATION AND PAROLE 3055 BLVD COLUMBIA BLVD Titusville | |

| Offense Date OR Date Range | Arrest Date / Time | Charge Type (Check as many as apply) | Felony __X__ | Evidence Confiscated (Check as many as apply) |
|---|---|---|---|---|
| 11/09/2021 | 11/12/2021 15:28 | Misdemeanor ____  Traffic __X__  Ordinance ____ | | Vehicle ____  Firearm ____  Property ____ |

| Name (Last, First, Middle) | | Alias and Type | Date of Birth | Age | Jacket Number |
|---|---|---|---|---|---|
| LOWERY JAMES GARLAND | | | 12/22/1981 | 39 | 4050874 |

| Race | Ethnicity | Sex | Height | Weight | Eye Color | Hair Color |
|---|---|---|---|---|---|---|
| B-Black | Non-Hispanic | Male | 5' 11 | 200 | Brown | Brown |

Scars, Marks, Tattoos, Unique Physical Features (Location, Type, Description)

| Local Address (Street, Apt. Number) | City, State, Zip | Phone/Type (Include area code) | Primary Language |
|---|---|---|---|
| 1705 KINGS CT TITUSVILLE, FL 32780 | | | English  __Y__ |

| Permanent Address (Street, Apt. Number) or Parent's Name if Juvenile | City, State, Zip | Phone/Type (Include area code) | Complexion |
|---|---|---|---|
| 1705 KINGS CT TITUSVILLE, FL 32780 | | | Dark |

| Business Address (Name, Street) or School if Juvenile | City, State, Zip | Phone/Type (Include area code) | Build |
|---|---|---|---|
| NO INFO AVAILABLE | | | Medium |

| Driver's License State / Number / Type | Social Security Number* | INS Number | Place of Birth | Citizenship |
|---|---|---|---|---|
| L600447814620 / FL 6 - E Oper Rest | | | South Carolina | US |

| Residence Type: | Mark All that Apply (Y, N, Unk) | Suspected of Using (Y, N, Unk) | |
|---|---|---|---|
| City ____  County __X__  Florida ____  Out of State ____ | Homeless __N__  Sex Offender __N__  Gang Affiliation __N__ | Drugs __N__  Alcohol __N__  Computer/Handheld Device __N__ | |

| PARENT Driver's License State / Number / Type | PARENT Social Security Number | Juvenile Civil Citation Not Referred Explanation | Juvenile Facility |
|---|---|---|---|
| -- | | | |

*Collection of social security numbers from an arrested individual is to verify identity and may be shared with other law enforcement agencies.

| PC __X__  Capias ____  Warrant ____  Additional Charge ____ | Date Issued | Writt Aff. ____  Domestic Violence ____  Order of Arrest ____ |
|---|---|---|

| Charge Description | Counts | F.S. __X__ | Statute / Ordinance Number | Reclassifier |
|---|---|---|---|---|
| VOP On Site | 1 | Ord. | 948.06 os | |

| Drug Activity | Drug Type | Amount / Unit | Bond Amount | Warrant / Citation / Court Number |
|---|---|---|---|---|
| | | | NO BOND | 05-2020-CF-033350-A |

The undersigned certifies and swears that he/she has just and reasonable grounds to believe and does believe that the above named Defendant committed the following violation of law

On the __09__ day of __NOVEMBER__ , __2021__ at __0846__ __X__ AM ____ PM     (Specifically include facts constituting cause for arrest)

*************************************************SEE ATTACHED NARRATIVE ***************************************************

In accordance with F.S.S. 938.27, I hereby request reimbursement of investigative costs consisting of ____ hrs @ $ ____ per hr and/or ____ miles @ ____ per mile for a total of $ ____

Affidavit Attached: Yes _____ No _____     Continue for: Narrative __X__  Charges _____

| **Mandatory Appearance in Court** | Location (Court and Address) | | Division # |
|---|---|---|---|
| | Date:  Month ____ | Day ____  Year ____  Time ____ ____ AM ____ PM | |

I AGREE TO APPEAR AT THE TIME AND PLACE DESIGNATED TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE SUBSCRIBED. I UNDERSTAND THAT SHOULD I WILLFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS NOTICE TO APPEAR, THAT I MAY BE HELD IN CONTEMPT OF COURT AND A WARRANT FOR MY ARREST OR A TAKE INTO CUSTODY ORDER SHALL BE ISSUED.

| Signature of Defendant / Juvenile | Signature of Juvenile's Parent/Custodian | Release to: (Name) | Date | Time |
|---|---|---|---|---|

| Hold for Other Agency | Verified By: | Do Not Bond Out Reason | |
|---|---|---|---|
| Name: | | | Hold for 1st Appearance (Adults Only) |

| I swear/affirm the above and attached statements are true and correct __X__ on 11/12/2021 | Officer's/Complainant's Signature Electronically Signed | ID# 4514 | Officer's/Complainant's Name (Printed) Matthew Rush |
|---|---|---|---|
| Sworn and Subscribed before me, the undersigned authority this ____ day of 11/12/2021 | Notary Signature Electronically Signed | Notary Name (Printed) Michaud, Jessica | Notary/Law Enforcement Officer In Performance of Official Duties. Personally Known __X__  ID ____ |

GCU - East                                     Page __1__ of __3__

| AGENCY NAME: | BREVARD COUNTY SHERIFF'S OFFICE | | BREVARD COUNTY, FLORIDA | Arresting Agency Case Number |
|---|---|---|---|---|
| Continuation Page 2 of 3 | | | | 2021-00412794 |

| Defendant / Juvenile Name (Last, First, Middle) | | | | OBTS Number |
|---|---|---|---|---|
| LOWERY JAMES GARLAND | | | | 0501413416 |

| Co-Defendant Name (Last, First, Middle) | | Race | Sex | Date of Birth/Age | Juvenile (Y or N) |
|---|---|---|---|---|---|
| Arrested ____ At Large ____ Cited ____ Felony ____ Misdemeanor ____ | | | | | |
| Co-Defendant Name (Last, First, Middle) | | Race | Sex | Date of Birth/Age | Juvenile (Y or N) |
| Arrested ____ At Large ____ Cited ____ Felony ____ Misdemeanor ____ | | | | | |

| PC **X** Capias ____ Warrant ____ Additional Charge ____ | | Date Issued | | Writt Aff. ____ Domestic Violence ____ Order of Arrest ____ | |
|---|---|---|---|---|---|
| Charge Description | | Counts 1 | F.S. **X** | Statute / Ordinance Number | Reclassifier |
| DWLS W/Knowledge 2nd Offense | | | Ord. ____ | 322.34.2b | |
| Drug Activity | Drug Type | Amount / Unit | Bond Amount NO BOND | Warrant / Citation / Court Number | |

| PC ____ Capias ____ Warrant ____ Additional Charge ____ | | Date Issued | | Writt Aff. ____ Domestic Violence ____ Order of Arrest ____ | |
|---|---|---|---|---|---|
| Charge Description | | Counts | F.S. | Statute / Ordinance Number | Reclassifier |
| | | | Ord. | | |
| Drug Activity | Drug Type | Amount / Unit | Bond Amount | Warrant / Citation / Court Number | |

| PC ____ Capias ____ Warrant ____ Additional Charge ____ | | Date Issued | | Writt Aff. ____ Domestic Violence ____ Order of Arrest ____ | |
|---|---|---|---|---|---|
| Charge Description | | Counts | F.S. | Statute / Ordinance Number | Reclassifier |
| | | | Ord. | | |
| Drug Activity | Drug Type | Amount / Unit | Bond Amount | Warrant / Citation / Court Number | |

| Year | Make | Model | VIN | Tag / Tag State | Primary Color | Secondary Color |
|---|---|---|---|---|---|---|
| 2001 | Ford | F150 | 1FTRW08L51KA40326 | UI05J / FL | White | White |

*If Applicable, provide information related to the vehicle involved in the crime.

On the above date and time, the defendant, Mr. James Lowery was in possession of the aforementioned motor vehicle at the time of the incident and did have knowledge of driving the motor vehicle without a valid Florida driver's license.

In addition, Mr Lowery was on surveillance video driving the aforementioned vehicle from the area. I then confirmed the defendant's driving history, via D.A.V.I.D and FINDER, where it was confirmed the defendant has a pending case in reference to Felony Flee or Elude Law Enforcement, Citation# ADLJEIE that ultimately caused his Florida driver's license to be revoked on Thursday, April 8, 2021.

The defendant is currently on felony probation in reference to Felony Flee or Elude Law Enforcement 05-2020-CF-033350-AXXX-XX until Sunday, April 7, 2024 and supervised probation, Officer Shannon Holley. Therefore, the defendant was secured in handcuff restraints, that were double-locked and checked for proper fit. The defendant was transported to the Brevard County Detention Center and charged pursuant to Florida State Statues. It should be noted, when the Defendant was originally placed on probation he was told in his terms and conditions his driver's license privileges were revoked for a period of 12 months.

In a sworn recorded Post-Miranda interview, the defendant did provide a full confession to the incident. The interview was submitted into evidence for review.

| Officer's/Complainant's Signature | ID# | Officer's/Complainant's Name (Printed) |
|---|---|---|
| **Electronically Signed** | 4514 | **Matthew Rush** |

| AGENCY NAME: | BREVARD COUNTY SHERIFF'S OFFICE | | BREVARD COUNTY, FLORIDA | | Arresting Agency Case Number |
|---|---|---|---|---|---|
| Continuation Page 3 of 3 | | | | | 2021-00412794 |

| Defendant / Juvenile Name (Last, First, Middle) | | OBTS Number |
|---|---|---|
| LOWERY JAMES GARLAND | | 0501413416 |

| Co-Defendant Name (Last, First, Middle) | | Race | Sex | Date of Birth/Age | Juvenile (Y or N) |
|---|---|---|---|---|---|
| Arrested ____ At Large ____ Cited ____ Felony ____ Misdemeanor ____ | | | | | |
| Co-Defendant Name (Last, First, Middle) | | Race | Sex | Date of Birth/Age | Juvenile (Y or N) |
| Arrested ____ At Large ____ Cited ____ Felony ____ Misdemeanor ____ | | | | | |

| PC ____ Capias ____ Warrant ____ Additional Charge ____ | Date Issued | | | Writt Aff. ____ | Domestic Violence ____ Order of Arrest ____ |
|---|---|---|---|---|---|
| Charge Description | | Counts | F.S. ____ Ord. ____ | Statute / Ordinance Number | Reclassifier |
| Drug Activity | Drug Type | Amount / Unit | | Bond Amount | Warrant / Citation / Court Number |

| PC ____ Capias ____ Warrant ____ Additional Charge ____ | Date Issued | | | Writt Aff. ____ | Domestic Violence ____ Order of Arrest ____ |
|---|---|---|---|---|---|
| Charge Description | | Counts | F.S. ____ Ord. ____ | Statute / Ordinance Number | Reclassifier |
| Drug Activity | Drug Type | Amount / Unit | | Bond Amount | Warrant / Citation / Court Number |

| PC ____ Capias ____ Warrant ____ Additional Charge ____ | Date Issued | | | Writt Aff. ____ | Domestic Violence ____ Order of Arrest ____ |
|---|---|---|---|---|---|
| Charge Description | | Counts | F.S. ____ Ord. ____ | Statute / Ordinance Number | Reclassifier |
| Drug Activity | Drug Type | Amount / Unit | | Bond Amount | Warrant / Citation / Court Number |

| Year | Make | Model | VIN | Tag / Tag State | Primary Color | Secondary Color |
|---|---|---|---|---|---|---|
| | | | | * If Applicable, provide information related to the vehicle involved in the crime. | | |

In accordance with F.S.S. 938.27 The Brevard County Sheriff's Office request reimbursement for investigative cost in the amount of $173.80

****************************Case Report to Follow****************************************

| Officer's/Complainant's Signature | ID# | Officer's/Complainant's Name (Printed) |
|---|---|---|
| Electronically Signed | 4514 | Matthew Rush |

**STATE OF FLORIDA**

**DEPARTMENT OF CORRECTIONS**

Docket #: <u>05-2020-CF-033350-AXXX-XX</u>

DC #: <u>134419</u>

**AFFIDAVIT**
**VIOLATION OF PROBATION**

Before me this day personally appeared **SHANNON HOLLEY** who, being first duly sworn says that **JAMES LOWERY**, hereinafter referred to as the offender, was on the **8TH** day of **APRIL**, A.D. **2021** placed on <u>probation</u> for the offense of **COUNT 1: FLEEING OR ATTEMPTING ELUDE WITHOUT LIGHTS SIREN, A THIRD DEGREE FELONY** in the <u>Circuit</u> Court of **BREVARD** County, for a term of **THIRTY-SIX (36) MONTHS** in accordance with the provisions of Chapter 948, Florida Statutes.

Affiant states that the offender was instructed on the conditions of probation on <u>04/08/2021</u> by Officer <u>MCNICHOLAS</u>.

Affiant further states that the offender has not properly conducted <u>himself</u>, but has violated the conditions of <u>his</u> <u>probation</u> in a material respect by

**<u>Violation of Condition (5) of the Order of Probation:</u>** by failing to live without violating any law by committing the criminal offense of Driving With License Suspended Revoked With Knowledge 2ns Conviction in Case # 05-2021-CT-052170-AXXX-XX on 11/12/2021, in Brevard  County, and as grounds for belief that the offender violated his probation, Officer Holley states that the offender was arrested on 11/12/2021, for the said offense by Agent Rush of the Brevard County Sheriff's Office, as told to Officer Holley by the Arrest Report.

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

SHANNON HOLLEY
Correctional Probation Officer

**THIS AFFIDAVIT MUST BE NOTARIZED OR ATTESTED TO UNDER S. 117.10 OR 92.50, FLA. STAT.**

Sworn to and subscribed before me this  15m  (day) of  November  (month), 2021  A.D. (year)

by <u>SHANNON HOLLEY</u>, who is **personally known to me** or has produced identification _____.

Signature of Attesting
Officer Under S. 117.10, F.S. _____    Title:  CPSO

Approved by Supervisor: _____                                    Date: 11/15/21

SHANNON HOLLEY/(321) 264-4073
Officer Telephone/E-Mail Address
DC3-216 (Revised 11/21/17)

Distribution:    Original:    Court
                Copy:       Left Side-Offender File



Exhibit +
J. Robinson
Date 6-6-2025

Filing # 138489901 E-Filed 11/15/2021 10:12:06 AM

Exhibit __8__
J. Robinson
Date 6-6-2025
KR

## FLORIDA DEPARTMENT OF CORRECTIONS
### VIOLATION REPORT

☒ REPORT CONTAINS CONFIDENTIAL INFORMATION

Date: November 15, 2021          ☐ MANDATORY RETAKING FROM: _____

To: Honorable **TESHA SCOLARO BALLOU**     From: **SHANNON HOLLEY**
Name: **JAMES LOWERY**                      DC No: **134419**   Circuit: 18/0
Case No: **05-2020-CF-033350-AXXX-XX**      UC No: 052020CF033350AXXXXX
Scheduled Termination Date: April 07, 2024

### REQUESTING

☒ Violation of          ☐ Warrant for Arrest   ☐ Violation of Probation     ☐ No further
Probation Hearing-      (Violation of          Hearing without Warrant        action
Warrantless  Arrest     Probation)             (Notice to Appear)
Conducted

### TYPE OF REPORT

☐ Non-Compliance with Conditions       ☒ Arrest/New Charge        ☐ Warrantless Arrest
☐ Delinquent Monetary Obligations Only

### LOCATION

☒ At Large
☐ In Custody
☐ On Bond             Current Address              1705 Kings Court
☐ ROR                                              Titusville Florida 32780
☐ Absconder

(1)  **HOW VIOLATION OCCURRED:**

**Violation of Condition (5) of the Order of Probation:** by failing to live without violating any law by committing the criminal offense of Driving With License Suspended Revoked With Knowledge 2ND Conviction in Case # 05-2021-CT-052170-AXXX-XX on 11/12/2021, in Brevard County, and as grounds for belief that the offender violated his probation, Officer Holley states that the offender was arrested on 11/12/2021, for the said offense by Agent Rush of the Brevard County Sheriff's Office, as told to Officer Holley by the Arrest Report.

**Circumstances:**
On November 12, 2021, the offender was in possession of a motor vehicle at the time of the incident and did have knowledge of driving the motor vehicle without a valid Florida driver's license.
In Addition, the offender was on surveillance video driving the aforementioned vehicle from the area. Agent Rush confirmed the offenders driving history via DAVID and FINDER, where it was confirmed that the offenders license has been revoked on April 08, 2021.

(2)  **OFFENDER'S STATEMENT:** None obtained.

(3)  **HISTORY OF SUPERVISION:** ☐ ADJUDICATION WITHHELD   ☒ ADJUDICATED

Original sentence: On April 08, 2021, the offender was sentenced to thirty-six (36) months' probation for the offense of Count 1: Fleeing or Attempting Elude Without Lights Siren, a Third-Degree Felony in Case # 05-2020-CF-033350-AXXX-XX by the Honorable Judge Friedland.

Prior violation(s) of supervision for all periods of supervision and disposition(s) of violation(s) include the following:

☐ Florida Crime Information Center (FCIC) and National Crime Information Center (NCIC) criminal history record attached. **NOTE: FCIC/NCIC criminal history record information is not public record, pursuant to Chapter 119, Florida Statutes.**

**RESIDENCE**:     ☒ STABLE          ☐ UNSTABLE           ☐ ABSCONDED
Resides with: Prior to the offender's arrest, he resided at 1705 Kings Court, Titusville Florida 32780.

**EMPLOYMENT**: ☐ EMPLOYED          ☐ RETIRED/DISABLED    ☐ STUDENT
☒ UNEMPLOYED
Current Employer/school name and address:
Full-time employment or school attendance: ☐     Part-time employment or school attendance: ☐
Monthly salary or other source of income: _____

**RESTITUTION:**          ☒ N/A          ☐ PAID IN FULL    ☐ COMPLYING
☐ DELINQUENT
Original Obligation: _____          Current Balance: _____

**COURT COSTS/FINES**:     ☐ N/A          ☐ PAID IN FULL    ☒ COMPLYING
☐ DELINQUENT
Original Obligation: $990.00          Current Balance: $50.00

**ELECTRONIC MONITORING**: ☒ N/A       ☐ PAID IN FULL    ☐ COMPLYING
☐ DELINQUENT
Original Obligation: _____          Current Balance: _____

**COST OF SUPERVISION**:     ☐ N/A       ☐ PAID IN FULL    ☒ COMPLYING
☐ DELINQUENT
Original Obligation: $1800.00          Current Balance: $1400.00

**PUBLIC SERVICE WORK** ☒ N/A     ☐ COMPLETED    ☐ COMPLYING
☐ DELINQUENT
Total Hours Imposed: _____          Current Balance: _____

**TREATMENT STATUS:**     ☒ N/A     ☐ COMPLETED    ☐ COMPLYING
☐ NON-COMPLIANT
**Summary of offender's current and prior participation in treatment, educational, and vocational programs:**

**STATUS OF OTHER SPECIAL CONDITIONS**:

**(4)**   <u>**RECOMMENDATION**</u>:

No warrant is being requested due to a warrantless arrest conducted by Agent Rush of the Brevard County Sheriff's Office. This is the offenders first violation of probation and is ineligible for any form of Alternative Sanctions Program due to new law violation. The offender has been on supervision since 04/08/2021 and has already obtained a new law violation to wit: fail to DWLS W/ Knowledge 2nd Offense. It is clear that probation is not providing an adequate form of supervision. The offender is not compliant with his current conditions of supervision and a stricter form of supervision, such as community control, allows for increased contacts with the offender in the office and field, which may ensure compliance with the court's orders and ensure the public's safety. This also affords the offender another opportunity to remain in the community instead of incarceration. Therefore, this officer recommends that the offender's probation be modified to include 24 months' community control followed by the remainder of probation with all previously imposed conditions.

The foregoing is true and correct to the best of my knowledge and belief.

Approved:

**SHANNON HOLLEY**                              **OMAR RIJOS**
**Correctional Probation Officer**                  **Correctional Probation Supervisor**

DC3-202 (Revised 7/13/17)                    Page 3                    2 Part File-Left Side
                                                                      6 Part File-Section 1

## VIOLATION OF PROBATION REPORT
### WITNESS LIST

**Witness 1.**

Name:          SHANNON HOLLEY, Correctional Probation Officer
Address:       3880 S Washington Ave Suite 106
               Titusville, Florida 32780
Telephone:     (321)-264-4073

Testify as to: Affidavit Violation of Probation

**Witness 2.**

Name:
Address:

Telephone:

Testify as to:

**Witness 3.**

Name:
Address:

Telephone:

Testify as to:

**Witness 4.**

Name:
Address:

Telephone:

Testify as to:



**BREVARD COUNTY SHERIFF'S OFFICE**
CASE SUPPLEMENT REPORT          CASE#
700 S Park Avenue
Titusville FL 32780          **2021-00472099**

---

**NARRATIVE**

---

On Sunday, December 26, 2021, at approximately 2016 hours, I received a request to assist Brevard County Sheriff's Office (BCSO) Crime Scene Investigator (CSI) J. Gardner, ID 4342, in an AOA Officer Involved Shooting investigation. I responded to the scene, Gayle Ave/Queen Street, Titusville, Brevard County, Florida, arriving at approximately 2139 hours.

I obtained measurements of the scene using a FARO Focus$^{3D}$ X330 Laser Scanner. I completed a field sketch of the FARO positions. This sketch was made as an enclosure to this case file.

I also assisted with the collection of evidence items.

Prior to departing the scene at approximately 2327 hours, I signed for and received items JG1-JG14 from CSI Gardner to transport them to the Crime Scene Unit Evidence Room. The items were listed on three property receipts as follows:

Item JG1a: US currency bills (4-$50, 45-$20, 12-$10, 7-$5 = $1255) (PM 1)
Item JG1b: (1) key ring w/key fob, (2) keys, (1) flashlight, (1) dice charm, (1) unicorn charm, (1) green clip, (1) measurement device, (1) red lanyard w/ (2) keys (PM 1)
Item JG1c: Newport cigarette package containing (12) cigarettes (PM 1)
Item JG2a: US currency (3-$100, 3-$50, 91-$20, 4-$10, 14-$5, 22-$1, 3-$0.25 = 2402.75) (PM 2)
Item JG2b: black flip top container previously contained JG2b1 (PM 2)
Item JG2b1: unknown white substance
Item JG2c: black flip top container previously contained JG2c1 (PM 2)
Item JG2c1: (2) yellow round tablets, (2) white oblong tablets, (1) white partial
Item JG2d: medical marijuana card – James Lowery
Item JG2e: miscellaneous cards + documents belonging to James Lowery
Item JG3: yellow metal cartridge casing "SPEER 9mm LUGER + P" (PM 3)
Item JG4: (39) FL lottery tickets (5) miscellaneous documents (PM 4)

Item JG5: green leafy substance in clear plastic bag (PM 5)
Item JG6: taser probe w/wire (PM 6)
Item JG7: ASP UL 40776 black flashlight
Item JG8: Hawkers black sunglasses (PM 8)
Item JG9: plastic bag w/unknown white substance (PM 9)
Item JG10: Newport cigarette package formerly contained JG10a (PM 10)


Exhibit 9
J. Robinson
Date 6-6-2025

---

Crime Scene

| WRITTEN BY | DATE | APPROVED BY | DATE |
|---|---|---|---|
| George Skyler    4829 | 01/05/2022 | Laufenberg, Terrance | 01/06/2022 |



**BREVARD COUNTY SHERIFF'S OFFICE**

CASE SUPPLEMENT REPORT    CASE #

700 S. Park Avenue
Titusville FL 32780

**2021-00472099**

---

**NARRATIVE (continuation)**

---

Item JG10a: plastic bag w/unknown white substance
Item JG11: yellow plastic piece (PM 11)
Item JG12: taser probe (PM 12)

Item JG13: Samsung touchscreen cellphone in purple case (PM 13)
Item JG14: Samsung touchscreen cellphone w/cracked screen in black case

On Monday, December 27, 2021, at approximately 0800 hours, CSI Gardner signed for and received items JG1-JG14.

The SD card used in the FARO was listed on a property receipt as follows:

Item SG1: SD card containing FARO scans

On Tuesday, December 28, 2021, at approximately 1257 hours, CSI Gardner signed for and received item SG1 (SD card).

I had no further involvement with this investigation.

**Enclosures:**

Four (4) BCSO property receipts
One (1) field sketch of FARO positions
One (1) Reimbursement of Investigative Costs Affidavit

---

Crime Scene

| WRITTEN BY | | DATE | APPROVED BY | |
|---|---|---|---|---|
| George  Skyler | 4829 | 01/05/2022 | Laufenberg, Terrance | 01/06/2022 |

PAGE _____ OF _____

**BREVARD COUNTY SHERIFF'S OFFICE**
**TITUSVILLE, FLORIDA 32780**
**PROPERTY RECEIPT**

NOTICE: PROPERTY SEIZED AS EVIDENCE; UNLESS TURNED OVER TO APPROPRIATE COURT WILL BE DISPOSED OF 60 DAYS FROM ACQUITTAL/DISMISSAL DATE OF CASE, UNLESS CLAIMED BY OWNER. FOUND, ABANDONED OR SAFEKEEPING PROPERTY, UNLESS CLAIMED BY OWNER, WILL BE DISPOSED OF 90 DAYS AFTER RECEIPT BY THIS OFFICER.

| MO. | DAY | YEAR | TIME: | ADDRESS FROM WHERE PROPERTY TAKEN: | PRECINCT | CR NUMBER |
|---|---|---|---|---|---|---|
| 12 | 26 | 21 | | | | |

- ☐ FOUND PROPERTY
- ☐ RECOVERED STOLEN
- ☑ EF-EVIDENCE FELONY
- ☐ EM-EVIDENCE MISD
- ☐ CONFISCATED
- ☐ TO BE DESTROYED
- ☐ PROPERTY OF DECEASED
- ☐ SAFEKEEPING
- ☐ FORFEITURE

☐ INJUNCTION#: _____  ☐ OTHER: _____
☐ ITEMS MAY BE RELEASED TO OWNER    LIST ITEMS TO RELEASE/DISPOSED OF:

| | |
|---|---|
| ☐ BCSO CSU LAB SUBMISSION | ☐ LFP LATENT FINGERPRINT PROCESSING |
| ☐ FDLE LAB SUBMITTAL | ☐ PBT PRESUMPTIVE BLOOD TESTING |
| ☐ DNA SWAB | ☐ SNR SERIAL NUMBER RESTORATION |

**EVIDENCE USE ONLY**

BIN LOCATION(S)

☐ (CHECK BOX(ES) OF ITEM(S) TO BE TRANSFERRED)
ITEMS PROCESSED MAY BE RETURNED TO  ☐ OWNER  ☐ DISPOSED OF AFTER BCSO PROCESSING
☐ DRUG CASES  ☐ PRESUMPTIVE TEST  ☐ ARREST MADE  ☐ JUVENILE
☐ ITEMS CHECKED THROUGH NCIC/FCIC  ☐ CRIMINAL HISTORY CHECK COMPLETED    BY ID#

NAME ☐ ARR/ ☐ COMP/ ☐ VCT/ ☐ SUSP/ ☐ OWNER:    ADDRESS:    PHONE:

NAME ☐ ARR/ ☐ COMP/ ☐ VCT/ ☐ SUSP/ ☐ OWNER:    ADDRESS:    PHONE:

CASE AGENT/DEPUTY: Sr. C. Sinclair

| ITEM | QUANTITY: | PROPERTY DESCRIPTION (MAKE, MODEL, BRAND, TYPE, SIZE, COLOR, CALIBER, ETC.) | SERIAL #/V.I.N. | ☑ |
|---|---|---|---|---|
| J65 | 1 | green (2) gunshots in clear plastic bag (J45) | | ☐ |
| J66 | 1 | Hosel probe wire (PM6) | | ☐ |
| J67 | 1 | ADP u 4077a black Mas1bu1 lot (J44 SB2) | | ☐ |
| J68 | 1 | Hanibus black sunglasses (PB8) | | ☐ |
| J69 | 1 | Disten bag w/unknown white substance (J15) | | ☐ |
| J610 | 1 | Newport cigarette package brown container J610a (PM10) | | ☐ |
| J611 | 1 | Plastic bag w/unknown white substance (J44 SB2) | | ☐ |
| J611 | 1 | yellow plastic piece (PM11) | | ☐ |
| J612 | 1 | 4 wire place (PM12) | | ☐ |
| | | END | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |

IMPOUNDING DEPUTY/AGENT SIGNATURE ID NO./DIVISION: _____ CSU2 CSU

SIGNATURE FROM WHOM PROPERTY TAKEN:

PRINT NAME OF IMPOUNDING DEPUTY / AGENT: _____

PRINT NAME OF PERSON FROM WHOM PROPERTY TAKEN:

**FIREARMS/CURRENCY ONLY**

FIREARM RENDERED SAFE BY:    WITNESSED BY:

CURRENCY INVENTORIED BY:    WITNESSED BY:

**TRANSFER OF CUSTODY**

| RECEIVED BY/ID#: | | REASON: | | TIME: | | MO/DAY/YEAR: |
|---|---|---|---|---|---|---|
| Groover | 8529 | transport to CSU | | 23 27 | | 12/26/200 |
| RECEIVED BY/ID#: | 4342 | REASON: CSU | | TIME: 800 | | MO/DAY/YEAR: 12/1/201 |

**PROPERTY RECEIPT DISTRIBUTION**
ORIGINAL Remains with Property/CANARY-Investigating Officer/PINK-To Person from Whom Property Seized

BCSO4

PAGE _____ OF _____

**BREVARD COUNTY SHERIFF'S OFFICE**
**TITUSVILLE, FLORIDA** 32780
**PROPERTY RECEIPT**

NOTICE: PROPERTY SEIZED AS EVIDENCE: UNLESS TURNED OVER TO APPROPRIATE COURT WILL BE DISPOSED OF 60 DAYS FROM ACQUITTAL/DISMISSAL DATE OF CASE, UNLESS CLAIMED BY OWNER. FOUND, ABANDONED OR SAFEKEEPING PROPERTY, UNLESS CLAIMED BY OWNER, WILL BE DISPOSED OF 90 DAYS AFTER RECEIPT BY THIS OFFICER.

| MO. | DAY | YEAR | TIME: | ADDRESS FROM WHERE PROPERTY TAKEN: | PRECINCT | CR NUMBER |
|---|---|---|---|---|---|---|
| 12 | 06 | 21 | | | | 2021-00 |

☐ FOUND PROPERTY   ☒ EF-EVIDENCE FELONY   ☐ CONFISCATED   ☐ PROPERTY OF DECEASED   ☐ FORFEITURE
☐ RECOVERED STOLEN   ☐ EM-EVIDENCE MISD   ☐ TO BE DESTROYED   ☐ SAFEKEEPING
☐ INJUNCTION#:
☐ ITEMS MAY BE RELEASED TO OWNER   ☐ OTHER:
LIST ITEMS TO RELEASE/DISPOSED OF:

☐ BCSO CSU LAB SUBMISSION   ☐ LFP LATENT FINGERPRINT PROCESSING
☐ FDLE LAB SUBMITTAL   ☐ PBT PRESUMPTIVE BLOOD TESTING         **EVIDENCE USE ONLY**
☐ DNA SWAB   ☐ SNR SERIAL NUMBER RESTORATION
☐ (CHECK BOX(ES) OF ITEM(S) TO BE TRANSFERRED)                      BIN LOCATION(S)
ITEMS PROCESSED MAY BE RETURNED TO   ☐ OWNER ☐ DISPOSED OF AFTER BCSO PROCESSING
☐ DRUG CASES   ☐ PRESUMPTIVE TEST   ☐ ARREST MADE   ☐ JUVENILE
☐ ITEMS CHECKED THROUGH NCIC/FCIC   ☐ CRIMINAL HISTORY CHECK COMPLETED         BY ID#

| NAME ☐ ARR / ☐ COMP / ☐ VICT / ☐ SUSP / ☐ OWNER | ADDRESS: | PHONE: |
|---|---|---|

| NAME ☐ ARR / ☐ COMP / ☐ VICT / ☐ SUSP / ☐ OWNER | ADDRESS: | PHONE: |
|---|---|---|

CASE AGENT/DEPUTY: S.F. Castleberri

| ITEM | QUANTITY | PROPERTY DESCRIPTION (MAKE, MODEL, BRAND, TYPE, SIZE, COLOR, CALIBER, ETC.) | SERIAL #/V.I.N. | ☑ |
|---|---|---|---|---|
| 162 | 1 | Samson touch screen cell phone and (IMEI | | ☐ |
| T-11 | 1 | Samson touch screen cell phone cracked | | ☐ |
| | | screen in black case | | ☐ |
| | | and | | ☐ |
| | | | | ☐ |

IMPOUNDING DEPUTY/AGENT SIGNATURE ID NO /DIVISION
SIGNATURE FROM WHOM PROPERTY TAKEN:

PRINT NAME OF IMPOUNDING DEPUTY / AGENT
PRINT NAME OF PERSON FROM WHOM PROPERTY TAKEN:

**FIREARMS/CURRENCY ONLY**
FIREARM RENDERED SAFE BY:                    WITNESSED BY:

CURRENCY INVENTORIED BY:                      WITNESSED BY:

**TRANSFER OF CUSTODY**

| RECEIVED BY/ID#: | REASON: | TIME: | MO/DAY/YEAR: |
|---|---|---|---|
| -Pord / 4587 | transfer to CSU | 0? | 12/06/202 |
| RECEIVED BY/ID#: | REASON: | TIME: | MO/DAY/YEAR: |
| / 4340 | FSU load | 8:00 | 2-7/2021 |

**PROPERTY RECEIPT DISTRIBUTION**
ORIGINAL Remains with Property/CANARY-Investigating Officer/PINK-To Person from Whom Property Seized

BCSO4

PAGE_____ OF _____

**BREVARD COUNTY SHERIFF'S OFFICE**
TITUSVILLE, FLORIDA 32780
**PROPERTY RECEIPT**

NOTICE: PROPERTY SEIZED AS EVIDENCE: UNLESS TURNED OVER TO APPROPRIATE COURT WILL BE DISPOSED OF 60 DAYS FROM ACQUITTAL/DISMISSAL DATE OF CASE, UNLESS CLAIMED BY OWNER. FOUND, ABANDONED OR SAFEKEEPING PROPERTY, UNLESS CLAIMED BY OWNER, WILL BE DISPOSED OF 90 DAYS AFTER RECEIPT BY THIS OFFICER.

| MO. | DAY | YEAR | TIME: | ADDRESS FROM WHERE PROPERTY TAKEN: | PRECINCT | CR NUMBER: |
|---|---|---|---|---|---|---|
| 12 | 27 | 21 | 40 | US 1 Hwy Blvd Harbor 1-1 | | 202-00-172014 |

- ☐ FOUND PROPERTY
- ☐ RECOVERED STOLEN
- ☐ INJUNCTION#:
- ☐ ITEMS MAY BE RELEASE TO OWNER
- ☐ EF-EVIDENCE FELONY
- ☐ EM-EVIDENCE MISD
- ☐ CONFISCATED
- ☐ TO BE DESTROYED
- ☐ OTHER:
- ☐ PROPERTY OF DECEASED
- ☐ SAFEKEEPING
- ☐ FORFEITURE

LIST ITEMS TO RELEASE/DISPOSED OF:

- ☐ BCSO CSU LAB SUBMISSION
- ☐ FDLE LAB SUBMITTAL
- ☐ DNA SWAB
- ☐ LFP LATENT FINGERPRINT PROCESSING
- ☐ PBT PRESUMPTIVE BLOOD TESTING
- ☐ SNR SERIAL NUMBER RESTORATION

(CHECK BOX(ES) OF ITEM(S) TO BE TRANSFERRED )
ITEMS PROCESSED MAY BE RETURNED TO ☐ OWNER ☐ DISPOSED OF AFTER BCSO PROCESSING

**EVIDENCE USE ONLY**

BIN LOCATION(S)

- ☐ DRUG CASES ☐ PRESUMPTIVE TEST ☐ ARREST MADE ☐ JUVENILE
- ☐ ITEMS CHECKED THROUGH NCIC/FCIC ☐ CRIMINAL HISTORY CHECK COMPLETED    BY ID#

| NAME: ☐ ARR / ☐ COMP / ☐ VICT / ☐ SUSP / ☐ OWNER: | ADDRESS: | PHONE: |
|---|---|---|
| NAME: ☐ ARR / ☐ COMP / ☐ VICT / ☐ SUSP / ☐ OWNER: | ADDRESS: | PHONE: |

CASE AGENT/DEPUTY:

| ITEM: | QUANTITY: | PROPERTY DESCRIPTION (MAKE, MODEL, BRAND, TYPE, SIZE, COLOR, CALIBER, ETC.) | SERIAL #/ V.I.N | ☑ |
|---|---|---|---|---|
| SG1 | 1 | SD card containing FIRO Scans | | ☐ |
| | | and | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |

| IMPOUNDING DEPUTY/AGENT SIGNATURE ID NO./ DIVISION: | SIGNATURE FROM WHOM PROPERTY TAKEN: |
|---|---|
| PRINT NAME OF IMPOUNDING DEPUTY/ AGENT | PRINT NAME OF PERSON FROM WHOM PROPERTY TAKEN: |

**FIREARMS/CURRENCY ONLY**

| FIREARM RENDERED SAFE BY: | WITNESSED BY: |
|---|---|
| CURRENCY INVENTORIED BY: | WITNESSED BY: |

**TRANSFER OF CUSTODY**

| RECEIVED BY/ID#: 4348 | REASON: Software | TIME: 1057 | MO/DAY/YEAR: 12/28/21 |
|---|---|---|---|
| RECEIVED BY/ID#: | REASON: | TIME: | MO/DAY/YEAR: |

**PROPERTY RECEIPT DISTRIBUTION**
ORIGINAL- Remains with Property/CANARY-Investigating Officer//PINK-To Person from Whom Property Seized

































































**Steward**
**Reference Laboratory**

Steward Reference Laboratory
6800 Spyglass Court
Melbourne, Florida 32940
Shondell Bouie, M.D., Laboratory Director

---

Patient: **LOWERY,JAMES**                                    Age: 40              Sex: M
Client Patient ID: **18-21-1156**                        Account #: FT0000245860
Physician: Darin Trelka, MD              Client: Dist 18 Medical Examiner

---

### TOXICOLOGY

---

Specimen Collected: 12/28/21        Lab Order No: 1228:T00010R            Reg Date:12/28/21

---

| Test Name | Result | Units | Cutoff/ Reporting Limits |
|---|---|---|---|

*VOLATILE PANEL-VOLP*

| | | | |
|---|---|---|---|
| SPECIMEN TYPE | ILIAC BLOOD | | |
| ETHANOL | NONE DETECTED | g/dL | 0.010 |
| ACETONE | NONE DETECTED | mg/dL | 7.5 |
| METHANOL | NONE DETECTED | mg/dL | 15.0 |
| ISOPROPANOL | NONE DETECTED | mg/dL | 15.0 |

    Analysis by Gas Chromatography (GC) Headspace Injection

*BLOOD DRUG SCREEN-BDSME*

SPECIMEN TYPE                          ILIAC BLOOD
GC/MS
    NICOTINE, NICOTINE METABOLITE
LC/MS/MS
    OXYCODONE, OXYMORPHONE, FENTANYL, ACETAMINOPHEN

*BLOOD IMMUNOASSAY SCREEN*

| | | | |
|---|---|---|---|
| AMPHETAMINES | NEGATIVE | mg/L | 0.100 |
| BARBITURATES | NEGATIVE | mg/L | 0.100 |
| BENZODIAZEPINES | NEGATIVE | mg/L | 0.050 |
| BUPRENORPHINE | NEGATIVE | mg/L | 0.001 |
| CANNABINOIDS | | | |

    Screening result suggests the need for further
    testing.

| | | | |
|---|---|---|---|
| COCAINE METABOLITE | NEGATIVE | mg/L | 0.100 |
| FENTANYL | *POSITIVE* | mg/L | 0.001 |
| OPIATES | | | |

    Screening result suggests the need for further
    testing.

*CANNABINOIDS PANEL-THCP*

SPECIMEN TYPE                          ILIAC BLOOD

---

Toxicology Report                    **LOWERY,JAMES**              Printed: 03/29/22 0837



Exhibit 11
J. Robinson
Date 6-6-2025
KR



Steward Reference Laboratory
6800 Spyglass Court
Melbourne, Florida 32940
Shondell Bouie, M.D., Laboratory Director

Patient: **LOWERY, JAMES**                                Age: 40                Sex: M
Client Patient ID: **18-21-1156**                         Account #:  FT0000245860
Physician: Darin Trelka, MD                Client: Dist 18 Medical Examiner

## TOXICOLOGY

Specimen Collected: 12/28/21        Lab Order No: 1228:T00010R        Reg Date:12/28/21

| Test Name | Result | Units | Cutoff/ Reporting Limits |
|---|---|---|---|
| DELTA-9 THC | 30.0 | ng/mL | 1.0 |

Synonym(s):  Active ingredient of Marijuana
The concentrations in blood are usually about one-half of
serum/plasma concentrations.  Usual peak levels in serum for
1.75% or 3.55% THC marijuana cigarettes: 50 - 270 ng/mL at 6
to 9 minutes after beginning smoking, decreasing to less
than 5 ng/mL by 2 hours.
Passive inhalation:  Up to 2 ng/mL.

| 11-HYDROXY DELTA-9 THC | 4.2 | ng/mL | 1.0 |

Synonym(s):  Active metabolite
Usual peak levels:  Less than 10% of THC levels after
smoking.

| DELTA-9 CARBOXY THC | 33.0 | ng/mL | 5.0 |

Synonym(s):  Inactive metabolite
Usual peak levels in serum for 1.75% or 3.55% THC marijuana
cigarettes:
10 - 101 ng/mL about 32 to 240 minutes after beginning
smoking, with a slow decline.  Usually not detectable after
passive inhalation.
Analysis by GC/MS

*FENTANYL PANEL-FENP*

SPECIMEN TYPE                          ILIAC BLOOD

| FENTANYL | 0.80 | ng/mL | 0.25 |

Immediately following a single 2 mcg/kg I.V. dose:
Up to 11 ng/mL, declining to 1 ng/mL after one hour.

Following the application of a 100 mcg/hour transdermal
patch, serum levels (after an initial lag time of
approximately six hours) of 0.8 - 2.6 ng/mL were maintained
after application.

Peak plasma levels following a single oral transmucosal dose
(fentanyl orolet) of 15 mcg/kg to children: 2 - 4 ng/mL at
20 minutes.

| NORFENTANYL | 0.28 | ng/mL | 0.25 |

Toxicology Report                **LOWERY, JAMES**         Printed: 03/29/22 0837



**Steward
Reference Laboratory**

Steward Reference Laboratory
6800 Spyglass Court
Melbourne, Florida 32940
Shondell Bouie, M.D., Laboratory Director

---

Patient: **LOWERY,JAMES**                                      Age: 40          Sex: M
Client Patient ID: **18-21-1156**                        Account #:  FT0000245860
Physician: Darin Trelka, MD                      Client: Dist 18 Medical Examiner

---

### TOXICOLOGY

---

Specimen Collected: 12/28/21     Lab Order No: 1228:T00010R          Reg Date:12/28/21

---

| Test Name | Result | Units | Cutoff/ Reporting Limits |
|---|---|---|---|
| Analysis by LC/MS/MS | | | |
| *FREE OPIATES PANEL-OPPF* | | | |
| SPECIMEN TYPE | ILIAC BLOOD | | |
| CODEINE | NONE DETECTED | mg/L | 0.010 |
| MORPHINE | NONE DETECTED | mg/L | 0.010 |
| HYDROCODONE | NONE DETECTED | mg/L | 0.010 |
| 6-MONOACETYLMORPHINE | NONE DETECTED | mg/L | 0.005 |
| HYDROMORPHONE | NONE DETECTED | mg/L | 0.005 |
| OXYCODONE | 0.524 | mg/L | 0.010 |
| OXYMORPHONE | 0.020 | mg/L | 0.005 |

Analysis by GC/MS

*ACETAMINOPHEN - ACNMS*

| | | | |
|---|---|---|---|
| SPECIMEN TYPE | ILIAC BLOOD | | |
| ACETAMINOPHEN | 3.8 | mcg/mL | 0.5 |

Usual therapeutic range (following one gram):
17-24 mcg/mL. Hepatic damage may occur if
concentration is greater than 150 mcg/mL at 4 hours or
greater than 37.5 mcg/mL at 12 hours after ingestion.
The blood to plasma ratio of acetaminophen is
approximately 1.1.
Testing performed by NMS Labs, 200 Welsh Road, Horsham, PA
19044-2208

---

Toxicology Report                    **LOWERY,JAMES**            Printed: 03/29/22 0837



**Steward**
**Reference Laboratory**

Steward Reference Laboratory
6800 Spyglass Court
Melbourne, Florida 32940
Shondell Bouie, M.D., Laboratory Director

---

Patient: **LOWERY,JAMES**                                    Age: 40                   Sex: M
Client Patient ID: **18-21-1156**                    Account #:  FT0000245860
Physician: Darin Trelka, MD                  Client: Dist 18 Medical Examiner

---

### TOXICOLOGY

---

Specimen Collected: 12/28/21       Lab Order No: 1228:T00011R            Reg Date:12/28/21

---

| Test Name | Result | Units | Cutoff/ Reporting Limits |
|---|---|---|---|

*URINE DRUG SCREEN COMPREHENSIVE-UDSME*

| | | | |
|---|---|---|---|
| SPECIMEN TYPE | URINE | | |

GC/MS
    OXYCODONE, ACETAMINOPHEN

*IMMUNOASSAY SCREEN*

| Test Name | Result | Units | Cutoff/Reporting Limits |
|---|---|---|---|
| AMPHETAMINES | NEGATIVE | mg/L | 0.500 |
| BARBITURATES | NEGATIVE | mg/L | 0.200 |
| BENZODIAZEPINES | NEGATIVE | mg/L | 0.200 |
| COCAINE METABOLITE | NEGATIVE | mg/L | 0.150 |
| MDMA/MDA | NEGATIVE | mg/L | 0.300 |
| METHADONE | NEGATIVE | mg/L | 0.300 |
| METHAQUALONE | NEGATIVE | mg/L | 0.300 |
| OPIATES | *POSITIVE* | mg/L | 0.300 |
| OXYCODONE | *POSITIVE* | mg/L | 0.100 |
| PHENCYCLIDINE | NEGATIVE | mg/L | 0.025 |
| PROPOXYPHENE | NEGATIVE | mg/L | 0.300 |
| CANNABINOIDS | *POSITIVE* | mg/L | 0.050 |
| TRICYCLICS | NEGATIVE | mg/L | 0.300 |

---

Specimens were intact upon receipt. Chain of custody, specimen security and integrity
has been maintained. Testing has been performed as requested.

Reviewed by: _____Katheryn Caswell_____    Date 8/29/2022

FINAL REPORT - THIS COMPLETES REPORTING ON THIS CASE

---













Case 6:23-cv-01313-PGB-LHP    Document 89-1    Filed 12/04/25    Page 158 of 172
PageID 1265
Case 6:23-cv-01313-PGB-LHP    Document 1    Filed 07/13/23    Page 1 of 14 PageID 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JAMIYAH ROBINSON,
as Personal Representative of the
ESTATE OF JAMES LOWERY,
Deceased,

        Plaintiff,

        **DEMAND FOR JURY TRIAL**

   v.

JOSHUA NATHAN PAYNE, individually
and as an agent and employee of the
Titusville Police Department, and
CITY OF TITUSVILLE, FLORIDA,

        Defendants.

---

## COMPLAINT

---

Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, Deceased, by and through counsel, Ben Crump Law, Hart McLaughlin & Eldridge, LLC, and Edwards Injury Law, complains as follows against Defendants Joshua Nathan Payne, individually and as an agent and employee of the Titusville Police Department, and the City of Titusville, Florida:

### NATURE OF THE ACTION

1.     On December 26, 2021, unarmed 40-year-old James Lowery was shot in the back of the head and killed, without justification, by Defendant Joshua Nathan Payne, a uniformed Titusville Police Department officer.



Exhibit 13
J. Robinson
Date 6-6-2025
KR

2.      James Lowery was a man who committed no act that would remotely justify the use of lethal force. He was unarmed and running away from Officer Payne when he was shot in the back of the head. As such, his life was intentionally and unjustifiably taken by law enforcement.

3.      Plaintiff Jamiyah Robinson is James Lowery's daughter. She brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of the rights of her father, as secured by the United States Constitution and the common law of the State of Florida.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the federal questions at issue pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as well as supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Middle District of Florida, Orlando Division. Moreover, all parties reside in the Middle District of Florida, Orlando Division.

## THE PARTIES

6.      Plaintiff Jamiyah Robinson is the daughter of decedent James Lowery and has been appointed personal representative of James Lowery's estate. Ms. Robinson is a citizen of the United States and a resident of the State of South Carolina. Ms. Robinson sues on behalf of James Lowery's estate and his survivors.

Case 6:23-cv-01313-PGB-LHP    Document 89-1    Filed 12/04/25    Page 160 of 172
PageID 1267
Case 6:23-cv-01313-PGB-LHP    Document 1    Filed 07/13/23    Page 3 of 14 PageID 3

7.      Defendant Joshua Nathan Payne is a citizen of the State of Florida and was at all relevant times a police officer with the Titusville Police Department.

8.      Defendant City of Titusville is a city within Brevard County, State of Florida, served by the Titusville Police Department ("TPD"). Plaintiff sues the City of Titusville pursuant to the U.S. Supreme Court decision of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and its progeny.

## FACTS APPLICABLE TO ALL COUNTS

9.      On December 26, 2021, at approximately 7:00 p.m., TPD officers were dispatched to a 9-1-1 call of a domestic battery complaint near South Deleon Avenue and Gibson Street in Titusville, Florida.

10.      Decedent James Lowery had absolutely no involvement with this domestic battery. TPD Chief John Lau has admitted that, prior to Officer Payne ever engaging Mr. Lowery, TPD had already ascertained and broadcast the identity of the domestic violence suspect—another man named Alton Johnson.

11.      Responding to that call, Defendant Joshua Payne observed James Lowery on Craig Avenue, south of Queen Street, and purportedly determined that he "matched the description" of the suspect for the domestic battery incident. As Defendant Payne began walking toward Mr. Lowery, Mr. Lowery walked away and then began jogging away.

12.      Officer Payne chased Mr. Lowery and pulled his department-issued taser in the process. Officer Payne discharged his taser at Mr. Lowery several times as he chased him but missed.

3

Case 6:23-cv-01313-PGB-LHP    Document 89-1    Filed 12/04/25    Page 161 of 172
PageID 1268
Case 6:23-cv-01313-PGB-LHP    Document 1    Filed 07/13/23    Page 4 of 14 PageID 4

13.    Still holding the taser in one of his hands, Officer Payne drew his department-issued firearm with his other hand as he continued to chase Mr. Lowery.

14.    Defendant Payne observed that Mr. Lowery was unarmed as he continued to jog away from Defendant Payne.

15.    Mr. Lowery then approached a fence or wall and climbed over it.

16.    Defendant Payne scaled the wall after Mr. Lowery, with both his firearm and taser still drawn. As he did, Defendant Payne shot Mr. Lowery in the back of his head and killed him.

17.    The Florida Department of Law Enforcement ("FDLE") conducted a criminal investigation into the shooting. The FDLE investigation revealed no evidence justifying the use of deadly force on James Lowery.

18.    The TPD also conducted an internal investigation into Mr. Lowery's shooting. According to TPD Chief John Lau, Defendant Payne was found to have violated several of the Titusville Police Department's "general orders," including the unnecessary use of deadly force. Defendant Payne was also found to have violated the Department's firearm safety rules due to Officer Payne holding both a taser and firearm at the same time.

19.    However, the TPD did not reach any conclusions with respect to the propriety of Officer Payne engaging in a foot pursuit while drawing and engaging his firearm. On information and belief, the Titusville Police Department has never had a policy governing foot pursuits of persons or suspects. Similarly, on

Case 6:23-cv-01313-PGB-LHP    Document 89-1    Filed 12/04/25    Page 162 of 172
PageID 1269
Case 6:23-cv-01313-PGB-LHP    Document 1    Filed 07/13/23    Page 5 of 14 PageID 5

information and belief, the Titusville Police Department has never trained its officers, including Defendant Payne, on safe and effective foot pursuits.

20.     Foot pursuits have been a daily part of law enforcement officers' lives since the beginning of law enforcement. Foot pursuits are unpredictable and fast-moving. They also give pursuing officers rushes of adrenaline which can compromise decision-making, certainly without significant and meaningful real-life scenario-based training. This was known or should have been known to the TPD at all times.

21.     The law enforcement community has long known that foot pursuits are dangerous to both officers and the public. The law enforcement community has long known that foot pursuits require express rules and training to prepare officers to engage in foot pursuits in a safe and effective manner.

22.     Further, the law enforcement community recognizes that running with an unholstered firearm in hand creates a greater inherent risk of injury. It is safer to run with a firearm holstered. At a minimum, the reasonableness of running with a firearm in hand should depend on the nature of the incident (e.g., call of a suspect with a gun) and the level of threat, resistance, or risk to the public presented by the suspect (e.g., suspect's possession of a weapon or indicators of such possession). This was known or should have been known to the TPD at all times.

23.     The nature of the incident here—an unarmed person jogging away from police on foot—did not warrant Defendant Payne running with a gun in

hand. Such conduct was objectively unreasonable. Moreover, given that the name of the domestic violence suspect was known to law enforcement prior to any encounter with Mr. Lowery, approaches other than chasing a suspect carrying a firearm existed, including containment and surveillance for ultimate apprehension of the proper suspect.

24.    In 2019, the International Association of Chiefs of Police ("IACP") published a document on foot pursuits setting forth considerations for law enforcement agencies in developing foot pursuit policies and training on them.

25.    The IACP stated: "Foot pursuits are inherently dangerous. Agencies must establish a balance between protecting the safety of the public and officers during pursuits on foot and law enforcement's duty to enforce the law and apprehend suspects." The IACP stated further that: "Agencies should develop and train officers on procedures to be followed during the foot pursuit" and advised agencies to address, among other things, "tactics to be utilized by pursuing officers, to include those related to safety concerns involving . . . situations where a suspect crosses over a wall or fence[.]"

26.    The IACP further advised that: "Specific guidelines should be developed regarding when and how a foot pursuit should be terminated," giving due consideration to among other things whether:

> a. The danger to pursuing officers or the public outweighs the necessity for immediate apprehension;

Case 6:23-cv-01313-PGB-LHP    Document 1    Filed 07/13/23    Page 7 of 14 PageID 7

b. The officer is acting alone—in exigent circumstances, agencies may elect to allow lone officers to keep the suspect in sight from a safe distance and coordinate containment; and

c. A suspect's identity is established or other information exists, allowing for the suspect's probable apprehension without immediate threat to the public or officers.

27.    The IACP also advised that law enforcement agencies "should provide initial and regular training regarding foot pursuits," which "should address foot pursuit tactics for officers, supervisory responsibilities, and communication personnel responsibilities."

28.    The TPD failed to consider, implement, or train on any of the above with respect to foot pursuits despite knowing officers are regularly involved in that dangerous activity.

29.    Following the conclusion of the FDLE and TPD investigations, Defendant Payne was charged by the State of Florida with manslaughter, a second-degree felony, in violation of Fla. Stat. § 782.07(1). Accordingly, Defendant Payne was charged with killing Mr. Lowery with a firearm, without lawful justification, in a manner which was not excusable.

30.    On June 1, 2022, Defendant Payne surrendered to the custody of the authorities and resigned his position with the TPD. He is no longer a law enforcement officer. The criminal charges against him remain pending as of the filing of this Complaint.

Case 6:23-cv-01313-PGB-LHP    Document 89-1    Filed 12/04/25    Page 165 of 172
PageID 1272
Case 6:23-cv-01313-PGB-LHP    Document 1    Filed 07/13/23    Page 8 of 14 PageID 8

## COUNT 1
### 42 U.S.C. § 1983 — Fourth Amendment and Fourteenth Amendments
### (Jamiyah Robinson, as Personal Representative
### of the Estate of James Lowery, deceased v. Joshua Nathan Payne)

31.     Plaintiff incorporates the allegations in Paragraphs 1 through 30 as if fully restated here.

32.     Defendant Payne's conduct constituted excessive force in violation of the U.S. Constitution.

33.     At all material times, Defendant Payne was acting under the color of state law as an agent and employee of the Titusville Police Department and City of Titusville.

34.     At all material times, Defendant Payne had no reason to believe that he was in imminent danger or fear of imminent bodily harm from Decedent.

35.     Every reasonable officer would have known that shooting an unarmed, fleeing person, who was not a danger to anyone, in the back of the head constitutes excessive force in violation of the U.S. Constitution.

36.     Defendant Payne's conduct was objectively unreasonable.

37.     As a result of Defendant Payne's excessive and unjustified use of deadly force, James Lowery was shot in the back of the head, experienced severe pain and suffering and emotional distress, and died.

38.     As a direct and proximate result of these wrongful acts and omissions, Mr. Lowery's next of kin have suffered pecuniary loss, including medical and

Case 6:23-cv-01313-PGB-LHP   Document 89-1   Filed 12/04/25   Page 166 of 172
PageID 1273
Case 6:23-cv-01313-PGB-LHP   Document 1   Filed 07/13/23   Page 9 of 14 PageID 9

funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

39.      The acts and omissions of Defendant Payne were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of James Lowery.

WHEREFORE, Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, deceased, demands judgment against Defendant Joshua Nathan Payne for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 2
### Common Law Battery
### (Jamiyah Robinson, as Personal Representative
### of the Estate of James Lowery, deceased v. Joshua Nathan Payne)

40.      Plaintiff incorporates the allegations in Paragraphs 1 through 39 as if fully restated here.

41.      Defendant Payne's conduct resulted in a harmful or offensive contact with James Lowery's person.

42.      Defendant Payne's harmful or offensive contact with James Lowery was intentional.

43.      Defendant Payne's harmful or offensive contact with James Lowery was unjustified, unpermitted, and made without James Lowery's consent.

Case 6:23-cv-01313-PGB-LHP    Document 89-1    Filed 12/04/25    Page 167 of 172
PageID 1274
Case 6:23-cv-01313-PGB-LHP    Document 1    Filed 07/13/23    Page 10 of 14 PageID 10

44.    As a result of Defendant Payne's harmful or offensive contact with James Lowery, James Lowery was shot, experienced severe pain and suffering and emotional distress, and died.

45.    As a direct and proximate result of these wrongful acts and omissions, Mr. Lowery's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

46.    The acts and omissions of Defendant Payne were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of James Lowery.

WHEREFORE, Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, deceased, demands judgment against Defendant Joshua Payne for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

### COUNT 3
**Common Law Negligence**
**(Jamiyah Robinson, as Personal Representative**
**of the Estate of James Lowery, Deceased v. Joshua Nathan Payne)**

47.    This count is pled in the alternative to Counts 1 and 2 above.

48.    Defendant Payne owed a duty of care to James Lowery.

49.    When Defendant Joshua Payne drew and used his department-issued taser and firearm, he owed a duty to exercise reasonable care in the handling and operation of the same.

Case 6:23-cv-01313-PGB-LHP    Document 89-1    Filed 12/04/25    Page 168 of 172
PageID 1275
Case 6:23-cv-01313-PGB-LHP    Document 1    Filed 07/13/23    Page 11 of 14 PageID 11

50.    Defendant Joshua Payne breached that duty by simultaneously arming himself with both a taser and a firearm, without justification, and climbing over a wall with both weapons in hand.

51.    Defendant Joshua Payne's conduct placed the Decedent directly and foreseeably in the line of fire.

52.    The way Defendant Joshua Payne handled his taser and firearm displayed complete disregard for the life of Mr. Lowery.

53.    Defendant Joshua Payne's conduct directly and proximately caused James Lowery's death when Defendant Payne shot him in the back of the head.

54.    Defendant Joshua Payne's conduct was grossly and flagrantly negligent, wanton, indifferent to the rights, safety, and welfare of the Decedent.

WHEREFORE, Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, deceased, in the alternative to Counts 1 and 2 above, demands judgment against Defendant Joshua Payne for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

### COUNT 4
**42 U.S.C. § 1983 —** *Monell /City of Canton* **Liability
for Deliberate Indifference in Training
(Jamiyah Robinson, as Personal Representative
of the Estate of James Lowery, deceased v. City of Titusville)**

55.    Plaintiff incorporates the allegations of paragraphs 1-39 above as if fully restated here.

Case 6:23-cv-01313-PGB-LHP    Document 89-1    Filed 12/04/25    Page 169 of 172
PageID 1276
Case 6:23-cv-01313-PGB-LHP    Document 1    Filed 07/13/23    Page 12 of 14 PageID 12

56.     The Titusville Police Department failed to adequately train Officer Payne on when it is proper to draw a firearm, on the use of lethal force, and on foot pursuits.

57.     The TPD's failures to train resulted in Officer Payne being incapable of reasonably and constitutionally performing his job as a law enforcement officer on December 26, 2021. Such failures to train were demonstrated by Officer Payne's drawing a firearm when Mr. Lowery had done nothing to justify such action, drawing and holding both his firearm and taser simultaneously as he continued to chase Lowery as well as maintaining such a tactic as he scaled a fence/gate/wall, and then shooting the unarmed Mr. Lowery in the back of the head despite the fact that he posed no threat to Officer Payne or anyone else.

58.     On information and belief, the TPD has no policy governing officers' foot pursuits of persons or suspects. Similarly, the TPD has never trained its officers, including former Officer Payne, on foot pursuits.

59.     The TPD's training failures, and the absence of a foot pursuit policy, resulted in the death of James Lowery.

60.     In light of the duties assigned Officer Payne, the TPD's training failures made the need for more or different training so obvious, and the inadequacy of training so likely to result in the violation of citizens' constitutional rights, that the City of Titusville (through the TPD) can be said to have been deliberately indifferent to the need for more training. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 390 (1989). Indeed, foot pursuits have been a daily reality of the

life of a law enforcement officer since the beginning of law enforcement. The dangers of those pursuits while armed have long been known. Law enforcement associations, including the IACP, have long recommended training on foot pursuits.

61.    Such a failure to train fairly represents a policy of the City of Titusville such that it is responsible for Mr. Lowery's death and the failure to train constituted a deliberate indifference to the constitutional rights of citizens like James Lowery.

62.    As a result of the failure to adequately train in these respects, James Lowery was shot, suffered severe pain and suffering and emotional distress, and died.

63.    Further, as a direct and proximate result of the failure to train, Mr. Lowery's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

64.    The City of Titusville, through the TPD, acted under the color of state law to deprive James Lowery of his rights under the U.S. Constitution. As such, it has violated 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, deceased, demands judgment against Defendant City of Titusville for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

Case 6:23-cv-01313-PGB-LHP    Document 89-1    Filed 12/04/25    Page 171 of 172
PageID 1278
Case 6:23-cv-01313-PGB-LHP    Document 1    Filed 07/13/23    Page 14 of 14 PageID 14

## JURY DEMAND

Plaintiff demands a trial by jury of all claims herein.

Date: July 12, 2023

Jamiyah Robinson, as Administrator of the
Estate of James Lowery, Deceased.

By:    /s/    *Ben Crump*

One of the Attorneys for Plaintiff

Ben Crump
Natalie Jackson
BEN CRUMP LAW
122 S. Calhoun Street
Tallahassee, Florida 32301
(800) 713-1222
ben@bencrump.com
natalie@nataliejacksonlaw.com

Steven Hart*
Brian Eldridge*
John Marrese*
HART MCLAUGHLIN & ELDRIDGE, LLC
One South Dearborn, Suite 1400
Chicago, IL 60603
(312) 955-0545
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com

Kevin Edwards*
EDWARDS INJURY LAW
226 Baldwin Avenue
Charlotte, NC 28204
(980) 400-3244
kevin@edwardsinjury.com

*Attorneys for Plaintiffs*

* Pending Special Admission

Case 6:23-cv-01313-PGB-LHP    Document 89-1    Filed 12/04/25    Page 172 of 172
PageID 1279
Case 6:23-cv-01313-PGB-LHP    Document 1-1    Filed 07/13/23    Page 1 of 1 PageID 15

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JAMIYAH ROBINSON,
as Personal Representative of the

## DEFENDANTS

JOSHUA NATHAN PAYNE, individually
and as an agent and employee of the

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Natalie Jackson, Esq.
Ben Crump Law, PLLC
122 Calhoun Street

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____

Brief description of cause:
Police Excessive Force Case

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
10000000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
July 13, 2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____