23-783/lhr/jrj/mlt

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

### CASE NO.: 6:23-CV-01313-PGB-LHP

**JAMIYAH ROBINSON**, as Personal
Representative of the **ESTATE OF
JAMES LOWERY**, Deceased,

      Plaintiff,

vs.

**JOSHUA NATHAN PAYNE**, individually
and as an agent and employee of the
Titusville Police Department, and
**CITY OF TITUSVILLE, FLORIDA,**

      Defendants.

_____/

## DEFENDANT JOSHUA NATHAN PAYNE'S MOTION FOR FINAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW

COMES NOW Defendant, JOSHUA NATHAN PAYNE ("Defendant Payne"), by and through their undersigned counsel, pursuant to Rule 56 *Fed. R. Civ. P.* and *M.D. Fla. L. R. 3.01*, and moves this Court for final summary judgment on Plaintiff, JAMIYAH ROBINSON, as Personal Representative of the ESTATE OF JAMES LOWERY, Deceased ("Plaintiff") complaint, and, in support thereof, states as follows:

### I. INTRODUCTION

This action arises out of the death of James Lowery on December 26,

1

2021. *See Plaintiff's Complaint, D.E. 1.* Plaintiff alleges that on December 26, 2021, Mr. Lowery was unarmed and running away from Defendant Payne when Defendant Payne, in course of his employment as a police officer for the City of Titusville Police Department, used lethal force upon Mr. Lowery without justification and with no reason to believe that he was in imminent danger or fear of bodily harm from Mr. Lowery. *Id.* Based upon this incident, Plaintiff raises several causes of action against Defendant Payne, alleging counts of violations of Mr. Lowery's Fourth and Fourteenth Amendment rights through excessive force, common law battery, and common law negligence. *Id.*

As discussed in greater detail below, Defendant Payne is entitled to summary judgment in his favor, as a matter of law. The Defendant is entitled to qualified immunity on Plaintiff's claim pursuant to 42 U.S.C. § 1983 as his use of force was reasonable under the circumstances known to him at the time of the incident. Plaintiff's claim of battery similarly must be dismissed as the evidence within the record fails to show that Defendant Payne's use of force in his role as a law enforcement officer was "clearly excessive" under the circumstances. Finally, Plaintiff's claim of negligence, pled in the alternative to his claims of civil rights violations and battery, must be dismissed as the evidence within the record has established that Defendant Payne was acting in the course and scope of his employment,

that his use of force was intentional, and failed to show that Defendant Payne's conduct was malicious, wanton, or indifferent to the rights, safety, and welfare of Mr. Lowery, making the Defendant entitled to statutory immunity under Fla. Stat. § 768.28(9)(a). Therefore, summary judgment in this Defendant's favor is appropriate.

## II.    MEMORANDUM OF LAW

### A.    Federal Summary Judgment Standard

Under *Fed. R. Civ. P.* Rule 56, in order to prevail on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 344, n. 3 (1986); *Sunderland v. Bethesda Health, Inc.*, 2016 WL 3128652, at *7 (S.D. Fla. 2016). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Harrison v. Culliver*, 746 F.3d 1288, 1289 (11th Cir. 2014). The movant may discharge this burden by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. An issue is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Burgos v. Chertoff*, 274 F. App'x. 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th

3

Cir.1997); *Sunderland*, 2016 WL 312852 at *7. The material facts are determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 249. A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

Once the moving party satisfies its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party to produce specific facts through admissible evidence showing that a jury trial is warranted. *Allen*, 121 F.3d at 646. The non-moving party must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial, through its own affidavits, or by depositions, answers to interrogatories, and admissions on file. *Porter v. Ray*, 461 F.3d 1315, 1321 (11th Cir. 2006). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"). Although courts construe all reasonable inferences in the light most favorable to the non-moving party, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find… by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1184 (11th Cir. 2003); *Nichols v. CSG Systems, Inc.*, 245 Fed Appx. 937 (11th Cir. 2007). Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. *Celotex*, 477 U.S. at 322.[1]

A court may grant a motion for summary judgment "if the evidence on file show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Fla. R. Civ. P. 1.510(a)*. Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, only then does the non-moving party bear the burden of response. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In its response, "the nonmoving party

---

[1] Florida recently amended Florida Rule of Civil Procedure 1.510 to "align Florida's summary judgment standard with that of the federal courts and of the supermajority of states that have already adopted the federal summary judgment standard." *In re Amends. to Fla. Rule of Civ. Pro. 1.510*, 309 So. 3d 192, 192 (Fla. 2020).

'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added).

### B.    *Defendant Payne is Entitled to Qualified Immunity on Plaintiff's Claim of Fourth and Fourteenth Amendment Violations*

### a. *Standard for Qualified Immunity*

It is well established that government officials sued in their individual capacities are entitled to dismissal of the claims against them pursuant to qualified immunity where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kinsey v. Aledda,* 2018 WL 11352486, *6 (S.D. Fla. Feb. 28, 2018) (citing *Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1284-85 (11th Cir. 2009)). In order to receive qualified immunity, the government official must show that they were acting within their discretionary authority, at which point the burden then shifts to the plaintiff to show that qualified immunity is not appropriate under the circumstances. *Kinsey*, 2018 WL 11352486 at *6; *Senko v. Jackson*, 603

F.Supp.3d 1299, 1312 (S.D. Fla. 2022) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority.") To evaluate claims of qualified immunity on a motion to dismiss or motion for summary judgment, the Court must consider whether "(1) the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was 'clearly established' at the time of the defendant's misconduct." *Rehberg v. Paulk*, 611 F.3d 828, 838-39 (11th Cir. 2010).

A plaintiff may show that a constitutional right is clearly established by referencing "(1) case law with indistinguishable facts clearly establishing the constitutional right, (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1273 (11th Cir. 2021) ("A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."").

The 11th Circuit has held that qualified immunity serves to shield law enforcement officers from claims of Fourth Amendment excessive force claims "unless a controlling and materially similar case declares the

official's conduct unconstitutional." *See Priester v. City of Rivera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000); *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) ("[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). A narrow exception exists to the rule requiring specific case law, wherein a plaintiff may show that "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw," and may therefore demonstrate that the official is not entitled to the defense of qualified immunity. *See Priester*, 208 F.3d at 926 ("To come within the narrow exception, a plaintiff must show that the official's conduct "was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point."); *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 1227–28 (1997).

### b. Standard for Claim of Excessive Force under the Fourth Amendment

Claims of use of excessive force in the course of an arrest, investigatory stop, or seizure are governed by the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 281 (1994); *Graham v. Conner*, 490 U.S. 386 (1989). The Supreme Court has held that the inquiry in a claim of excessive force is an objective one, analyzing whether a law enforcement

officer's actions are "objectively reasonable" solely in light of the facts and circumstances confronting the officer, without regard to their underlying intent or motivation. *See Graham*, 490 U.S. at 397; *Scott v. United States*, 436 U.S. 128, 137-139. In making this assessment of reasonableness, the court must look to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Foulke v. Weller*, 2024 WL 2761778, *7 (11th Cir., May 29, 2024). Officers may use deadly force to dispel threats of serious physical harm and it has been held to be permissible for an officer to use deadly force when he has "probable cause to believe that his own life is in peril." *Id.* (affirming grant of summary judgment on claim of excessive force after decedent claimed to have murdered someone, refused to drop his weapon, and non-lethal methods were ineffective). A mistaken belief that probable cause exists for using force is not actionable under §1983 if the belief is reasonable. *See Carr v. Tatangelo,* 338 F.3d 1259, 1268 (11th Cir. 2003); *see also* § 776.05, Fla. Stat.

In *Murphy v. Dennings,* 626 F. App'x 836, 840 (11th Cir. 2015), the 11th Circuit held that an officer was entitled to use deadly force consisting of ten to twelve shots fired, two striking the suspect, based upon the suspect making a sudden movement towards his waistband:

When Plaintiff made a sudden movement toward his waistband, an objective officer in Deputy Caron's situation could have believed reasonably that Plaintiff was reaching for a gun and that Plaintiff posed an imminent threat of serious physical injury to the officers and to others. Faced with a "tense, uncertain, and rapidly evolving" situation, Deputy Caron made a split-second decision to fire his gun in an attempt to disarm or incapacitate Plaintiff. Given the circumstances, we cannot say that Deputy Caron's decision was unreasonable in the Fourth Amendment sense. Although Plaintiff was running away from Deputy Caron when he was shot and had not threatened definitely the officers with a gun, "the law does not require officers in tense and dangerous situations to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *See Long v. Slaton*, 508 F.3d 576, 581 (11th Cir.2007)." *Id.* at 840.

### c. Standard for Claim of Excessive Force under the Fourteenth Amendment

While the analysis of whether a particular use of force was excessive is the same objectively reasonable standard for claims under the Fourteenth Amendment as the Fourth, the Supreme Court has held that as the Fourteenth Amendment provides that a State shall not ""deprive any person of life, liberty, or property, without due process of law," this Amendment has been found to apply solely to pretrial detainees, individuals who have been who have been arrested and are awaiting trial prior to conviction. *See Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021); *C.P. by and through Perez v. Collier County*, 145 F.Supp.3d 1085, 1091,92 (M.D. Fla. 2015) (dismissing claim of excessive force pursuant to

the Fourteenth Amendment as claims were premised on use of force at the time of arrest).

### III.  ARGUMENT

### A.  Federal Claims

In the instant matter, Defendant Payne was clearly acting within his discretionary authority as it is undisputed that the conduct at issue occurred in the regular performance of his duties as a law enforcement officer employed by the City of Titusville. *See D.E. 1,* ¶¶ 1, 7, 33; *Stipulation of Agreed Material Facts (SAMF); Deposition of Joshua Payne,* [26:12-23][2]. Plaintiff's claims of excessive force are presented subject to both the Fourth and Fourteenth Amendments; however, as stated above, claims of excessive force pursuant to the Fourteenth Amendment apply only to pre-trial detainees. As it is further undisputed that Defendant Payne's use of force occurred during his attempt to detain Mr. Lowery and that Mr. Lowery was not taken into police custody prior to the use of force, it cannot be reasonably said that he could be considered to be a "pre-trial detainee" at any time relevant to the subject incident. *See Crocker,* 995 F.3d at 1246; *C.P. by and through Perez,* 145 F.Supp.3d at 1091-92.

This leaves only Plaintiff's claim of use of excessive force in the

---

[2] In the interest of avoiding duplicate filings, Defendant Payne refers this Court to the exhibits as filed on behalf of Defendant City of Titusville in support of their separate Motion for Summary Judgment (D.E. 89).

course of the attempted detainment of Mr. Lowery pursuant to the Fourth Amendment, which must be analyzed using the factors identified in *Graham* to determine whether Defendant Payne's actions were objectively reasonable. The evidence within the record, including this Defendant's testimony, has established that the officers on scene that night were responding to a call for assistance regarding a domestic battery which included information that the suspect had attempted to push a woman into traffic. *See SAMF; Deposition of Joshua Payne,* [32:6-25; 33:1-25; 34:1-15]; *Deposition of Matthew Gonzalez,* [19:16-25; 20:1-6] Defendant Payne has testified that based on this information, he believed the crime at issue to be a felony domestic battery. *See Deposition of Joshua Payne,* [34:2-15]. When Defendant Payne began his pursuit of Mr. Lowery based upon Mr. Lowery's refusal to remain on scene for an investigatory stop and subsequent fleeing, Defendant Payne gave several commands for Mr. Lowery to stop, utilized his taser in an attempt to incapacitate Mr. Lowery through non-lethal means, and further engaged in a physical altercation with Mr. Lowery. *See SAMF; Deposition of Joshua Payne,* [36:23-25; 37:1-10; 38:23-25; 39:1-3; 40:1-20; 42:9-25; 43:1-25; 44:1-23]; *Body Worn Camera of Payne,* 0:00 - 1:00.

Defendant Payne testified that during his pursuit of Mr. Lowery, he observed Mr. Lowery reaching into the front pocket of his sweater or

sweatshirt to pull out objects and throw them away, and further that he did not know what Mr. Lowery had in that pocket. *Deposition of Joshua Payne*, [41:6-17]. Defendant Payne testified that during the physical altercation with Mr. Lowery, Mr. Lowery grabbed Payne's body and additionally grabbed Payne's firearm by the barrel in what Payne perceived to be an attempt to take the gun away. *Deposition of Joshua Payne*, [42:9-25; 43:1-25; 44:1-23]; *Body Worn Camera of Payne*, 0:53 – 1:00. Finally, Defendant Payne has testified that just prior to his use of force upon Mr. Lowery, he observed Mr. Lowery go over a gate, approached to look over the gate, and observed Mr. Lowery crouched on the ground with his hands not visible. *Deposition of Joshua Payne*, [45:13-16; 46:24-25; 47:1; 49:10-25; 50:1-25; 51:1-20; 56:2-13]. Defendant Payne testified that he perceived Mr. Lowery to be positioned in a "shooter's stance" and that Mr. Lowery appeared prepared to draw a weapon, turn, and attack Defendant Payne. *Deposition of Joshua Payne*, [64:18-25; 65:1-25]. Based on these observations, the prior physical resistance and attempt to grab his firearm, and his belief at that moment that his life was in danger, Defendant Payne fired a single shot from his department-issued firearm at Mr. Lowery. *See SAMF; Deposition of Joshua Payne*, [52:22-25; 53:13-14; 64:18-25; 65:1-25].

In analyzing similar cases, the courts have consistently held that

determinations must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, **not with the 20/20 vision of hindsight.**" *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *Foulke*, 2024 WL at 7 (holding that use of lethal force was not excessive as officers on scene had reasonable belief the decedent had recently committed a murder and was potentially armed with a firearm). It has further been held to be reasonable that a law enforcement officer may use deadly force when he has "probable cause to believe that his own life is in peril." *Davis v. Waller*, 44 F.4th 1305, 1313 (11th Cir. 2022). Where a suspect has or is believed to have a weapon available and appears willing to use it, law enforcement officers are "not required to wait and hope for the best." *Jean-Baptiste v. Gutierrez,* 627 F.3d 816, 821 (11th Cir. 2010).

With these holdings in mind, the *Graham* factors all favor Defendant Payne in this matter. Defendant Payne has testified that Mr. Lowery matched the description of a suspect in a felony battery which involved attempts to push a woman into traffic. Mr. Lowery further refused to comply with repeated orders to stop and fought with Defendant Payne, at one point attempting to take his firearm away. *See SAMF; Deposition of Joshua Payne,* [36:11-25; 37:1-10; 38:23-25; 39:1-3; 40:1-20; 42:9-25; 43:1-25; 44:1-23]; *Body Worn Camera of Payne,* 0:00 – 1:05. Defendant Payne's testimony that he perceived Mr. Lowery to still be a potential

14

immediate threat directly after going over the gate further supports the instant arguments that the use of lethal force was reasonable under the circumstances as a reasonable officer could have believed that Mr. Lowery posed an immediate threat to others and was clearly actively resisting arrest. Under the well-established standards for analysis and based upon the undisputed facts within the record, Defendant Payne's use of force cannot be shown to be unreasonable by the Plaintiff; as such, he is entitled to qualified immunity and summary judgment in his favor on the claims of Fourth and Fourteenth Amendment violations based upon excessive force.

### B.    State Law Claims

Under Florida state law, a claim of battery has two elements: intent to cause a harmful or offensive contact, and a resulting offensive contact with the person of the other. *See Baxter v. Roberts*, 54 F.4th 1241, 1272 (11th Cir. 2022). In the context of an arrest, a presumption of good faith attaches to a law enforcement officer's use of force in making a lawful arrest and an officer is liable "only where the force used is **clearly excessive.**" (emphasis added) *City of Miami v. Sanders,* 672 So.2d 46, 47 (Fla. 3rd DCA 1996); *Jackson v. City of Miami*, 2010 WL 11553182, *3-4 (S.D. Fla., Nov. 15, 2010) ("A battery claim under Florida law against a law enforcement officer is different from a simple battery claim, because

officers are only liable for damages where the force used is "clearly
excessive."") If excessive force is used in an arrest, "the ordinarily protected
use of force by a police officer is transformed into a battery," and is then
analyzed by focusing upon whether the force used was reasonable under
the circumstances. *Sanders*, 672 So.2d at 47; *Jackson,* 2010 WL at *3;
*Sullivan v. City of Pembroke Pines*, 161 Fed.Appx. 906, 911 (11th Cir. 2006)
(dismissing both federal and Florida claims for excessive force due to the
de minimis force used and the "similar standard set forth under Florida
law.")

The Florida courts have held that a certain amount of force utilized
by law enforcement officers during a lawful arrest is "entirely ordinary and
do not give rise to a battery claim under Florida law." *See Baxter*, 54 F.4th
at 1272 (holding that officer use of force of grabbing resisting suspect,
forcing him to the ground, and pulling the suspect's arm up did not
constitute excessive force despite injuries of a chipped tooth and facial
abrasions); *Lester v. City of Tavares*, 603 So.2d 18 (Fla 5th DCA 1992)
(holding that acts taken by police officer to make physical arrest and
officer's preparation of arrest affidavit did not give rise to independent tort
claims for battery and libel since acts were no more than ordinary
incidents of arrest). In *Behm v. Campbell*, 925 So.2d 1070, 1071-72 (Fla.
5th DCA 2006), plaintiff brought claims of excessive force against the

Sheriff of Putnam County and Putnam County deputies. The record in that case established that the deputies had responded to a disturbance call involving possible gunshots and stopped the plaintiff at his residence. Deputies observed a rifle in plaintiff's truck and what appeared to be a bullet hole in the vehicle and prevented the plaintiff from entering his house to investigate. After the plaintiff attempted to strike one of the deputies, the deputies forced him to the ground and pepper sprayed him. *Id.* The plaintiff was later convicted of resisting arrest and as such the court found that his arrest had been deemed lawful, further holding that the use of force by officers to detain him was "simply part of the arrest process." *Id.*

As discussed above, the use of force at issue in the instant case as alleged by the Plaintiff is limited to Defendant Payne's firing a single shot at Mr. Lowery. *See D.E. 1.* It is undisputed that prior to this shot being fired that Mr. Lowery failed to comply with orders to remain on scene and identify himself, that Mr. Lowery matched the description given to Defendant Payne of the suspect in a felony battery, that Mr. Lowery actively physically resisted Defendant Payne's efforts to subdue and detain him with non-lethal methods, or that Mr. Lowery attempted to grab Defendant Payne's firearm during a physical altercation. *See SAMF; Deposition Testimony of Joshua Payne,* [36:11-25; 37:1-10; 38:23-25;

17

39:1-3; 40:1-20; 42:9-25; 43:1-25; 44:1-23]; *Body Worn Camera of Payne,* 0:00 – 1:05. Based upon these undisputed facts, all use of force by Defendant Payne was in the course of his employment as a law enforcement officer and was incident to his attempts to lawfully detain and arrest Mr. Lowery. *See Behm*, 925 So.2d at 1071-72. As such, the presumption of good faith attaches, and the Plaintiff's claim of battery may only succeed upon a showing that the force used was "clearly excessive." *Sanders,* 672 So.2d at 47.

While Plaintiff attempts to characterize Defendant Payne's conduct as excessive, unjustified, and objectively unreasonable, his testimony and the available Body Worn Camera footage shows that his conduct and all force used against Mr. Lowery was all incident to Defendant Payne's attempts to detain Mr. Lowery, and further that his use of force was based upon a reasonable belief that Mr. Lowery posed an immediate and deadly threat. As Defendant Payne's actions were all incident to the attempted lawful arrest and justified given the facts and circumstances as known to Defendant Payne at the time, they are insufficient to support a claim of battery under Florida law as they are not "clearly excessive." *See Baxter*, 54 F.4th at 1272; *Lester*, 603 So.2d 18; *Sullivan*, 161 Fed. Appx. at 911 (holding law enforcement officer grabbing plaintiff's arm, pulling her arms behind her back, forcing her to the ground, placing a knee on her back,

and handcuffing her incident to a lawful arrest was not clearly excessive force under Florida law).

Therefore, in consideration of well-established Florida statutory and case law as well as the factual circumstances at hand, the use of force by Defendant Payne incident to his attempted lawful detainment and arrest of Mr. Lowery was not "clearly excessive." As such, there is no issue of material fact and the Plaintiff's claim for battery should be dismissed.

§768.28(9)(a), *Fla. Stat.* states in relevant part as follows:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any **act, event, or omission of action in the scope of her or his employment or function**, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

(emphasis added). This immunity has been held to be both an immunity from liability as well as immunity from suit, with the trial court acting as a gatekeeper which is required to terminate civil proceedings when the immunity is shown to apply. *See Willingham v. City of Orlando*, 929 So.2d 43, 48 (Fla. 5th DCA 2006) (affirming trial court's granting summary judgment on behalf of police officer on claim of false arrest in the absence of any assertion that the officer acted outside of the course and scope of employment or that his actions were willful, wanton, malicious, or in bad

faith); *Pace v. City of Palmetto*, 489 F.Supp.2d 1325, 1336 (M.D. Fla. 2007) (granting summary judgment on assault and battery claim on grounds of statutory immunity).

Although Florida law recognizes use of force as an intentional tort of battery for which the governmental employer may be held liable, it clearly holds that there is no recognized claim for negligence under these circumstances. *See City of Miami v. Sanders*, 672 So.2d 46, 48 (Fla. 3rd DCA 1996) ([I]t is not possible to have a cause of action for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional' tort.").

In matters where the claim brought against an individual governmental employee, the courts have held that mere negligence is not enough to satisfy the wanton and willful disregard standard pursuant to law, with the Eleventh Circuit stating that the plain text of §768.28 "bars negligence claims categorically against officers." *See Diaz v. Miami-Dade County*, 424 F.Supp.3d 1345, 1361 (S.D. Fla. 2019); *Simon v. Murphy*, 895 So.2d 1245, 1246 (Fla. 4th DCA 2005) (affirming trial court decision that automobile accident did not rise to the level of willful and wanton disregard); *Pena v. Marcus*, 715 Fed.Appx. 981, 989 (11th Cir. 2017) ("By its own terms, §768.28 protects officers from negligence-based claims.")

An officer or employee acts within the scope of their employment if

"(a) it is the type of conduct which the employee is hired to perform, (b) it occurs substantially within the time and space limits authorized or required by the work to be performed, (c) the conduct is activated at least in part by a purpose to serve the employer." *Pena v. Marcus,* 715 F. App'x 981, 988 (11th Cir. 2017) (quoting *Craft v. John Sirounis and Sons, Inc.*, 575 So.2d 795, 796 (Fla. Dist. Ct. App. 1991)); *City of Boynton Beach v. Weiss*, 120 So.3d 606 (Fla. 4th DCA 2013) (affirming verdict against municipality on finding that officer employee was acting within the scope of his employment when he committed battery).

In the instant matter, there is no dispute that Defendant Payne was acting within the course and scope of his employment at the time of the subject incident. *See D.E. 1.* Further, while the pleadings present a claim of negligence which is apparently based upon allegations that Defendant Payne negligently fired his department issued handgun rather than his taser, failing to use reasonable care in the handling and operation of both by having both weapons simultaneously drawn, the evidence within the record provides no support for a claim of negligence. Defendant Payne has testified that prior to the shooting he had already discharged both loaded cartridges of his issued taser, making it impossible for him to use that device at range without reloading, and further that he intentionally fired a single shot from his department issued handgun at Mr. Lowery. *See SAMF;*

*Deposition Testimony of Joshua Payne,* [38:23-25; 39:1-3; 40:1-20; 52:22-25; 53:13-14].

Furthermore, there is no evidence of bad faith, malicious purpose, or wanton and willful disregard of the human rights of Mr. Lowery on the part of Defendant Payne which would negate his statutory immunity from a claim of negligence pursuant to Fla. Stat. § 768.28(9)(a). While Plaintiff sets forth allegations that Defendant Payne's conduct was "grossly and flagrantly negligent, wanton, indifferent to the rights, safety, and welfare of [Mr. Lowery]", she has failed to produce any evidence in support of this claim.

Defendant Payne's testimony established that his actions took place within the course of his employment, and additionally that his use of force was prompted not by carelessness or desire to cause harm but instead by fear for his own life based upon Mr. Lowery's actions in physically resisting and attempting to grab Defendant Payne's firearm. *See SAMF; Deposition Testimony of Joshua Payne,* [64:18-25; 65:1-25]. There is no evidence within the record to contradict this testimony or the events as depicted within Defendant Payne's Body Worn Camera footage, and as such this matter is not analogous to cases where issues of fact as to the true events or an officer's motivations prevented a determination being made on summary judgment.

In the absence of any evidence to create an issue of fact, Plaintiff's claim of negligence is insufficient to satisfy the wanton and willful disregard standard pursuant to law. *See Diaz v. Miami-Dade County*, 424 F.Supp.3d 1345, 1361 (S.D. Fla. 2019) (holding that the text of §768.28 "bars negligence claims categorically against officers."); *Simon v. Murphy*, 895 So.2d 1245, 1246 (Fla. 4th DCA 2005) (affirming trial court decision that automobile accident did not rise to the level of willful and wanton disregard); *Pena v. Marcus*, 715 Fed.Appx. 981, 989 (11th Cir. 2017) ("By its own terms, §768.28 protects officers from negligence-based claims.") As such, Plaintiff's claim of negligence under common law must also be dismissed.

### III.    CONCLUSION

As Plaintiff cannot demonstrate any support in law or fact for his claims based upon the undisputed and undisputable facts within the record, there are no material facts in dispute and there is therefore no basis to hold Defendant Payne liable. As such, final summary judgment on behalf of the Defendant is appropriate as a matter of law.

WHEREFORE, Defendant, JOSHUA NATHAN PAYNE, hereby moves the Court for entry of final summary judgment in their favor and any other relief it deems just and proper.

Respectfully submitted,

*/s/ James R. Jimenez*_____
LYMAN H. REYNOLDS, JR.
FBN: 380687
JAMES R. JIMENEZ
FBN: 1032069
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Dr., Bldg. C101
West Palm Beach, FL 33409
Phone: 561-688-6560/Fax: 561-688-2343
E-Service: service_LHR@rrbpa.com
Email: lreynolds@rrbpa.com
Attorneys for Defendant Payne

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy hereof has been furnished by ECF e-service to all parties on the attached Counsel List this 5th day of December, 2025.

**ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC**
470 Columbia Drive, Bldg. C101
West Palm Beach, FL  33409
Phone: 561-688-6560/Fax: 561-688-2343
E-Service: service_LHR@rrbpa.com
Email: lreynolds@rrbpa.com
Attorneys for Defendant Payne

*/s/ James R. Jimenez*
LYMAN H. REYNOLDS, JR.
FBN: 380687
JAMES R. JIMENEZ
FBN: 1032069

STYLE:            ROBINSON vs. PAYNE & CITY OF TITUSVILLE
CASE NO.:         2:23-CV-01313-PGB-LHP
OUR FILE NO.:  23-789

**<u>COUNSEL LIST</u>**

JOHN MARRESE, ESQ.
STEVEN HART, ESQ.
BRIAN ELDRIDGE, ESQ.
PAIGE SMITH, ESQ.
Hart McLaughlin & Eldridge, LLC
One S. Dearborn, Suite 1400
Chicago, IL 60603
Lead Counsel for Plaintiff
PHONE: 312-955-0545
EMAIL/ESERVICE: jmarrese@hmelegal.com
                          shart@hmelegal.com
                          beldridge@hmelegal.com
                          mforbes@hmelegal.com
                          psmith@hmelegal.com

BEN CRUMP, ESQ.
NATALIE JACKSON, ESQ.
Ben Crump Law
122 S. Calhoun St.
Tallahassee, FL 32301
Co-Counsel for Plaintiff
PHONE: 800-713-1222
EMAIL/ESERVICE: ben@bencrump.com
                          natalie@nataliejacksonlaw.com

KEVIN EDWARDS, ESQ.
Edwards Injury Law
226 Baldwin Ave.
Charlotte, NC 28204
Co-Counsel for Plaintiff
PHONE: 980-400-3244
EMAIL/ESERVICE: kevin@edwardsinjury.com

MICHAEL J. ROPER, ESQ.
RAMON VAZQUEZ, ESQ.
KILEY C. SMITH, ESQ.
Roper, P.A.
255 S. Orange Ave., Suite 750
Orlando, FL 32801
Attorney for Defendant City
PHONE: 407-897-5150
       (Vazquez x-155)
FAX: 407-897-3332
EMAIL/ESERVICE: mroper@roperpa.com
                 ysuedmeyer@roperpa.com
                 rvazquez@roperpa.com
                 jmichaelson@roperpa.com
                 ksmith@roperpa.com
                 lramirez@roperpa.com
FBN: 473227 / 196274 / 196274

LYMAN H. REYNOLDS, JR., ESQ.
JAMES R. JIMENEZ, ESQ.
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Dr., Bldg. C101
West Palm Beach, FL 33409
Counsel for Defendant Payne
PHONE: 561-688-6560
FAX: 561-688-2343
E-SERVICE: service_LHR@rrbpa.com
EMAIL: lreynolds@rrbpa.com
       bsmith@rrbpa.com
       jjimenez@rrbpa.com
       mthornton@rrbpa.com
FBN: 380687 / 1032069