## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JAMIYAH ROBINSON, as Personal
Representative of the ESTATE OF
JAMES LOWERY, deceased,

        Plaintiff,

        v.

JOSHUA NATHAN PAYNE,
individually and as an agent and
employee of the Titusville Police
Department, and CITY OF
TITUSVILLE, FLORIA,

        Defendants.

Case No. 6:23-cv-01313-PGB-LHP

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT PAYNE'S MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiff Jamiyah Robinson, as Personal Representative of the Estate of James Lowery, deceased, by and through counsel, responds in opposition to Defendant Joshua Nathan Payne's Motion for Summary Judgment (Doc. 91):

### INTRODUCTION

Defendant and former Titusville police officer Nathan Payne shot 40-year-old James Lowery in the back of the head, killing him. Payne reached over a fence and shot downward at the back of Lowery's head. Lowery was unarmed. Payne admitted that he did not see Lowery with a weapon at any time.

Payne was investigating a domestic battery complaint when he approached Lowery. Lowery was not the right suspect. When Payne asked for Lowery's

identification, Lowery fled and Payne gave chase. While pursuing Lowery, Payne pulled his taser and fired twice unsuccessfully. He then pulled his firearm. For a matter of seconds, Payne and Lowery faced each other as they neared a gate to a property. Lowery then turned around, ran away toward the gate, and flung himself over it head over heels.

Payne ran after Lowery, with both his firearm and taser drawn. Within one second of Lowery having gone head over heels over the gate, Payne reached over the gate and shot downward at Lowery striking his head and killing him. After the incident, on body camera, Mr. Payne expressed regret at having shot Lowery.

The Titusville Police Department ("TPD") conducted an extensive review of the shooting. TPD concluded that Payne acted unreasonably, used excessive force without justification, and violated the Constitution. Payne resigned from TPD rather than be terminated. The State's Attorney's Office prosecuted Payne for the shooting. Payne pled guilty to manslaughter.

Incredibly, on this record, Mr. Payne has moved for summary judgment on Plaintiff's Fourth Amendment excessive force claim and common law battery and negligence claims. At bottom, Mr. Payne argues that his self-serving deposition testimony, which characterized Mr. Lowery as having been in a "shooter's posture" the instant he landed on the other side of the gate, entitles him to summary judgment. The argument does not pass the straight face test.

Viewing the record in the light most favorable to Plaintiff, as the Court must on summary judgment, a reasonable jury could infer from Mr. Payne's body camera video

that Mr. Payne simply shot the unarmed Lowery in the back of the head the instant Lowery crashed to the ground on the other side of the gate. That is what TPD found when they reviewed his case. That is likely why Payne pled guilty to manslaughter. The Court should deny the motion on this ground.

While the Court need not consider alternative factual scenarios, it is worth noting that Mr. Payne does not describe for the Court the facts of Lowery's alleged "shooter's posture." Even by Payne's own admission, this posture constituted Lowery on his knees, with his butt on his legs, with his back to Payne, with his right arm at an angle that merely appeared to be reaching toward a sweatshirt pocket. That is not a "shooter's posture," as Plaintiff's expert explains. Even under those facts, a jury could easily reject Payne's description and rule that an unarmed man shot in such a posture — on his knees, with his back to the officer — has had his clearly established constitutional rights violated.

The abundant evidence of excessive force compels swift denial of Mr. Payne's motion. Mr. Payne's refusal to deal with the record evidence contradicting his position should not be countenanced.

## BACKGROUND AND ADDITIONAL FACTS

Plaintiff identifies the undisputed facts set forth in paragraphs 1, 5, 6, and 7 of the Parties' Stipulation of Agreed Material Facts (Doc. 90) as relevant and material to the Court's determination of Defendant Payne's Motion. Plaintiff respectfully submits these additional facts for which there was no stipulation:

1.     On December 26, 2021, Defendant Joshua Nathan Payne engaged in a foot pursuit of James Lowery in connection with his investigation of a domestic disturbance involving "a man trying to push a woman into traffic." (Ex. 1, Deposition of Joshua Nathan Payne ("Payne Dep."), at 33:11-24, 86:2-8.)

2.     During his investigation, he met with another responding officer, Officer Gonzalez, to obtain additional information. (*Id.*, at 34:16-35:15.) Officer Gonzalez witnessed a man walking in the direction of responding officers turn and move in the other direction. (*Id.*) Payne departed from the other responding officers, alone, in his patrol car to investigate whether that man was the suspect involved in the domestic disturbance call. (*Id.*)

3.     Payne encountered the same man a couple of blocks away, who Payne later learned was named James Lowery. (*Id.*, at 38:8-11.)

4.     Payne exited his vehicle, turned on his flashlight, and pointed his flashlight at Mr. Lowery. (*Id.*, at 37:11-22.) When Mr. Lowery turned to walk away, Payne pursued Mr. Lowery on foot, at which point, Mr. Lowery began to jog. (*Id.* at 38:12-25.) Payne ran after Mr. Lowery in an effort to detain him. (*Id.*) At this time, Payne drew his taser and discharged a single cartridge shot at Mr. Lowery, which missed. (*Id.*, at 39:18-40:14.)  Payne thereafter discharged his taser a second time, and he believes "one of the barbs" hit Mr. Lowery in the shoulder but did not incapacitate him. (*Id.*)

5.      Payne continued to pursue Mr. Lowery on foot with his taser drawn. (*Id.*, at 40:21-41:1.) Payne observed Mr. Lowery placing his hands in his pockets, tossing things to the ground, after the second discharge of his taser. (*Id.*, at 41:6-20, 46:2-23.)

6.      Approximately 55 seconds into Defendant Payne's foot pursuit, Mr. Lowery and Payne approached a fence. (*Id.*, at 63:5-15.) Payne drew his firearm in his left (dominant) hand and pointed it at Mr. Lowery as they approached the fence. (*Id.*, at 42:1-8.) Payne did not holster his taser when he drew his firearm, keeping the taser drawn in his right hand, with his firearm in his left. (*Id.*, at 44:20-23.) Payne admits that he had not observed Mr. Lowery display any weapon at the time he drew his firearm. (*Id.*, at 41:6-42:4, 47:15-25.)

7.      As Payne drew and pointed his service weapon at Mr. Lowery, Payne continued to yell to Mr. Lowery to "get down." (Ex. 3 to TPD Mot., BWC, at 0:55-0:59.) Mr. Lowery continued to try to move away from Payne and Payne's weapon, which was still pointed at Mr. Lowery. (*Id.*, at 0:55-1:03.) Payne's and Mr. Lowery's confrontation in front of the fence lasted approximately seven seconds, until Mr. Lowery disengaged by shoving Defendant Payne away from him. (*Id.*) Mr. Lowery then turned his back to Defendant Payne in preparation to climb the fence. (*Id.*, at 1:03-1:04; Ex. 1, Payne Dep., 48:24-49:9.)

8.      While Payne's service taser was limited to two cartridge shots, Payne's taser was still functional in "drive stun" mode after both cartridges had been expended.

(*Id.*, at 127:18-22.) Payne used his service taser to drive stun Mr. Lowery after he had expended both cartridges. (*Id.*, at 127:23-128:3, 135:8-136:5.)

9. Payne observed Mr. Lowery, with his back to Payne, use both of his hands to hoist himself over the fence, head first, with both of his feet vertically in the air as he went over the fence. (*Id.*, at 47:2-7, 49:3-5, 63:18-24.) Payne did not observe Mr. Lowery with any weapon. (*Id.*, at 47:15-25, 48:17-22.)

10. Payne continued his foot pursuit of Mr. Lowery, and within one second of Mr. Lowery hoisting his body, head-first, over the fence, Payne moved towards the fence, pointed his firearm downward over the top of the fence, and fired a single shot. (*Id.*, at 49:16-50:24; 58:8-59:4; Ex. 3 to TPD Mot., BWC, at 1:04-1:06.).

11. Defendant Payne's firearm discharged within one second of Mr. Lowery's body going over the fence. (Ex. 1, Payne Dep., at 63:25-64:8; Ex. 3 to TPD Mot., BWC, at 1:06.) Defendant Payne had his taser in one hand and his firearm in the other at the time he shot. (Ex. 1, Payne Dep., at 52:22-25, 57:16-59:4.) Defendant Payne admits that he did not observe Mr. Lowery display any weapon or observe any weapon on Mr. Lowery at the time he shot Lowery. (*Id.*, at 47:15-50:1.)

12. The TPD initiated an internal investigation to ensure that Payne's use of force and conduct complied with state and federal law and Titusville Police Department General Orders. (Ex. 2, Deposition of Charles Demmon ("Demmon Dep."), at 34:13-23.) The Titusville Police Department's internal investigation concluded, under the factors set forth in *Tennessee v. Garner* and *Graham v. Connor*,

Defendant Payne's use of lethal force against Mr. Lowery was excessive and was not objectively reasonable. (*Id.*, at 47:4-14; 48:14-50:10.)

13.    The Titusville Police Department concluded that, at the time that Defendant Payne shot and killed Mr. Lowery, deadly force was not reasonably necessary to protect Defendant Payne or others, as Mr. Lowery did not present an imminent threat. (*Id.*, at 52:23-53:7; Ex. 3, Deposition of Tyler Wright, at 68:25-69:22.)

14.    TPD concluded that Payne was carrying both his firearm and taser when he approached the fence that Mr. Lowery had just climbed over less than one second prior. (Ex. 2, Demmon Dep., at 67:3-16; Ex. 3, Wright Dep., at 67:13-22.) Defendant Payne did not act reasonably when he pointed both his taser and firearm at Mr. Lowery while engaged in a foot pursuit. (*Id.*)

15.    In the immediate moments after Payne shot Mr. Lowery, he told Titusville officers responding to the scene of the shooting that he "didn't want to do that." (Ex. 1, Payne Dep., at 81:14-25.) Defendant Payne did not offer Mr. Lowery's posture as a justification for his use of deadly force prior to his testimony in this lawsuit. (*Id.*, at 68:16-19, 72:3-25, 73:5-8.)

16.    On June 1, 2022, following a Florida Department of Law Enforcement investigation, Defendant Joshua Nathan Payne was arrested on a charge of manslaughter, pursuant to Fla. Stat. § 782.07(1), in connection with his shooting Lowery. (Ex. 4, Robinson 000193-98, *State v. Joshua Nathan Payne*, No. 05-2022-CF-030172-AXXX-XX; Ex. 1, Payne Dep., at 67:12-17.) On December 6, 2024,

Defendant pled guilty to manslaughter of Mr. Lowery, adjudication withheld. (Ex. 5, Plea Agreement, *State v. Joshua Nathan Payne*, No. 052022CF03172AXXXXX; Ex. 1, Payne Dep., at 117:14-118:14.) Defendant was sentenced to five years' probation and ordered to pay restitution to Mr. Lowery's family for funeral expenses in the amount of $18,655.71. (*Id.*)

17.    As a result of the TPD investigation, Payne was given the option to resign or be terminated. (Ex. 1, Payne Dep., at 77:8-78:12.) On June 1, 2022, Defendant Payne resigned from the TPD. (*Id.*, at 77:8-10, 77:14-20.)

18.    Payne had never met James Lowery prior to this, and did not know his name at any point prior to shooting him. (Ex. 1, Payne Dep., at 35:23-25, 134:20-22.)

19.    Based upon Payne's body camera video and deposition testimony, Mr. Lowery had his back to Defendant Payne and his knees on the ground, (Ex. 3 to TPD Mot., BWC, at 1:04-1:07; Ex. 1, Payne Dep., at 51:4-52:23, 56:14-57:4.), and was not in the posture of a shooter at the time Defendant Payne shot Mr. Lowery. (Ex. 7, Scott Report, at ¶ 1.6.)

## LEGAL STANDARD

Summary judgment is appropriate only when the moving party shows that no genuine disputed issue of material fact exists. *Watkins v. Davis*, 156 F.4th 1084, 1097 (11th Cir. 2025). The moving party bears the initial burden of "stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact." *Saddlers v. City of Lakeland*, No. 8:22-cv-2127-CEH-LSG, 2025 WL 2770842, at *6 (M.D. Fla. Sept. 29, 2025) (citing *Celotex Corp. v. Catrett*,

477 U.S. 317, 323-24 (1986)). That burden is discharged "if the moving party can show the court that there is 'an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 325). When met, "the burden shift[s] to the non-moving party" to "set forth specific facts showing there is a genuine issue for trial." *Id.* (quoting *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).

The Court must "draw all reasonable inferences in favor of the nonmoving party[.]" *Atkins v. Bennett*, 792 F. Supp. 3d 1282, 1289 (M.D. Fla. 2025) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "[T]he court should deny summary judgment if reasonable minds could differ on the inferences arising from undisputed facts." *Id.* (citing *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992)); *Hill*, 2025 WL 1018406, at *3.

## ARGUMENT

### I.    Defendant is not entitled to qualified immunity

"When an official moves for summary judgment based on qualified immunity, a district judge must determine whether there is a genuine issue of material fact as to whether the official committed conduct that violated clearly established law." *Dukes v. Sheriff of Levy Cnty., Fla.*, 155 F.4th 1291, 1296 (11th Cir. 2025). To invoke qualified immunity, Payne must first show that he "was acting within the scope of his discretionary authority" when he engaged in the challenged acts.[1] *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).

---

[1] Plaintiff concedes that Defendant Payne was acting within the scope of his discretionary authority when he fired his service weapon at Mr. Lowery on December 26, 2021. (SAMF, ¶¶ 1, 3-5.)

Once satisfied, the burden shifts to the nonmoving party to establish that qualified immunity to show "both that the Officer's conduct violated a constitutionally protected right and that the right was clearly established that the time of the misconduct." *Watkins*, 156 F.4th at, 1097. "A police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred." *Id.*

Mr. Payne is not entitled to qualified immunity because: (1) he pled guilty to manslaughter; (2) considerable record evidence conflicts with his testimony which he claims justified his use of deadly force; and (3) it was clearly established that his use of deadly force against Mr. Lowery was excessive. At bottom, Defendant Payne relies entirely on his own self-serving deposition testimony that, when he shot Mr. Lowery in the back of the head, he perceived Mr. Lowery as having assumed a "shooter's posture" within one second of Lowery having gone feet-to-the-sky, unarmed, over a fence. When the record is fully considered and viewed in the light most favorable to Plaintiff, Payne violated clearly established law when, on December 26, 2021, he "[u]se[ed] deadly force, without warning, on an unarmed, retreating suspect[.]" *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015).

### A.    Defendant Payne's manslaughter conviction precludes summary judgment on Plaintiff's § 1983 excessive force claim

On December 6, 2024, Defendant Payne pled guilty[2] to manslaughter in connection with his use of force against Mr. Lowery and was sentenced to provide restitution. (Ex. 6, Plea Agreement, *State v. Joshua Nathan Payne*, No. 052022CF030172AXXXXX.) Nonetheless, Defendant argues that he was justified when he shot and killed Mr. Lowery. As a matter of law, Defendant Payne is collaterally estopped from contending as much here. *Goines v. Lee Mem. Hosp.*, No. 2:17-cv-656-FtM-29NPM, 2020 WL 1512100, at *6 (M.D. Fla. Mar. 30, 2020) (quoting Fla. Stat. § 775.089(8)). Mr. Payne's motion should be denied for this reason alone.

### B.    Abundant evidence ignored by Defendant establishes a genuine dispute of material fact as to whether Defendant violated clearly established law by shooting a fleeing, unarmed Lowery in the back of the head the moment he crashed to the ground over a fence

#### 1.    Payne ignores abundant and obvious evidence demonstrating that he violated the Constitution by shooting an unarmed, fleeing man posing no threat in the back of the head

The Eleventh Circuit "analyze[s] a claim of excessive force under the Fourth Amendment's[3] objective reasonableness standard." *Shaw v. City of Selma*, 884 F.3d

---

[2] While adjudication was withheld, Florida courts consider a guilty plea sufficient for application of Fla. Stat. § 775.089(8), even in the absence of an adjudication. *Proffitt v. Unemployment Appeals Comm'n*, 658 So. 2d 185, 187 (Fla. 5th DCA 1995) (quoting *Smith v. Bartlett*, 570 So. 2d 360, 361 (Fla. 5th DCA 1990)).

[3] While Mr. Payne seeks dismissal of a Fourteenth Amendment claim, arguing that Mr. Lowery was not "considered to be a 'pre-trial detainee[,]'" (Mot. at 11.), Plaintiff has not alleged such a claim. Plaintiff's reference to the Fourteenth Amendment in the Complaint is merely a nod to the fact that

1093, 1099 (11th Cir. 2018). Reasonableness in the excessive force context "depends on all the circumstances relevant to an officer's decision to use force and the amount of force used." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015).

In excessive force cases, "it is doctrinal gospel that [courts] do not view an officer's actions with the 20/20 vision of hindsight[.]" *Powell v. Snook*, 25 F.4th 912, 922 (11th Cir. 2022). Accordingly, "the question is whether the [officer's] actions are objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Perez v. Suszczynski*, 809 F.3d 1213, 1219 (11th Cir. 2016). This test "is necessarily fact specific." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009).

An officer may constitutionally use deadly force when he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," or "to prevent escape" of a suspect who threatens this harm. *Perez*, 809 F.3d at 1218-19 (citing *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985)). Three nonexclusive factors guide this analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989),

Payne argues that it is "undisputed" that "a reasonable officer ***could have*** believed that Mr. Lowery posed an immediate threat to others," (Mot. at 15), in light

---

Mr. Lowery was entitled to protection from invasion into his Fourth Amendment rights by Defendant Payne, a state actor, through the Due Process Clause of the Fourteenth Amendment.

of the domestic battery offense he was investigating, because Lowery was uncooperative when asked for identification, fled, and discarded items from his pockets while running. (*Id.* at 13.) He points singularly to his own testimony to establish that, "just prior to his use of force upon Mr. Lowery, he observed Mr. Lowery go over a gate, approached to look over the gate, and observed Mr. Lowery crouched on the ground with his hands not visible," which Payne "perceived as a shooter's stance." (*Id.*)

As an initial matter, Mr. Payne does not provide the Court his factual description underpinning what he characterized as a "shooter's posture" or "shooter's stance." At deposition, Mr. Payne testified that: (i) Mr. Lowery was *on his knees* after having just flown over the fence, (ii) Mr. Lowery's *back was to* Payne, and (iii) Mr. Payne's right arm was merely bent as if it was going into his sweatshirt. (Ex. 1, Payne Dep., at 51:4-52:23, 56:14-57:4.) Mr. Payne did not see a weapon. (*Id.*, at 76:22-77:3.) As Plaintiff's expert explained, what Payne described as a "shooter's posture" was not in fact the posture of a shooter. (Ex. 6, Scott Report, at ¶ 1.6.)

Even accepting Mr. Payne's deposition explanation as true (which the Court cannot do on summary judgment), Mr. Payne has all but admitted excessive force. Shooting someone in the back of the head who has just crashed to his knees and has his back to an officer is unreasonable. *Salvato*, 790 F.3d at 1293 (officer-defendant's use of lethal force on unarmed, retreating suspect who was "outside of striking distance" was unconstitutionally excessive, even though the suspect had engaged in a physical altercation with officers); *Atkins v. Bennett*, 792 F. Supp. 3d 1282, 1288-89

13

(11th Cir. 2025) (officer-defendant "violated clearly established law by shooting a fleeing suspect who did not present a direct threat," even though the decedent dropped a pistol during the encounter); *Cantu*, 974 F.3d at 1231 (finding force excessive on summary judgment where evidence was conflicting as to the suspect's control of officer's taser when shot, despite suspect's resistance to arrest, attempted flight, and altercation with officer-defendant).

More importantly, Defendant ignores a mountain of record evidence genuinely contradicting his self-serving account:

**Body Camera**: Body camera video shows that Payne shot Lowery approximately one second after Mr. Lowery went head-first, with his legs and feet vertically extended to the sky, over the fence. (Ex. 3 to TPD Mot., BWC, at 1:03-1:07; Ex. 1, Payne Dep., at 63:13-64:8 (admitting same).) The video shows that the 40-year-old Lowery was not an Olympic sprinter; rather, the video shows his middle-aged-man's huffing jog away from Payne just before he was shot. (Ex. 3 to TPD Mot., BWC, at 0:21-0:55.) Based on this video alone, a reasonable jury could easily conclude that Mr. Payne simply reached over the fence and shot the unarmed Lowery in the back of his head the moment Lowery had just crashed to the ground (as the TPD concluded).

**TPD's Excessive Force Finding:** The TPD concluded, following a thorough, internal investigation, that Defendant Payne's actions were unconstitutionally excessive. TPD's investigation involved extensive video review and interviews to gather evidence regarding the circumstances of Payne's use of force and applied those facts to the factors set forth under *Garner* and *Graham*, concluding that "Officer Payne

reached over the fence with his firearm drawn and shot his firearm striking Mr. James Lowery in the head," and his "decision to use his firearm in this manner and under these particular set of circumstances does not meet the objective reasonableness standard and as such this use of deadly force is not justified." (*Id.*, Ex. 2, Demmon Dep., at 36:14-18, 47:4-50:10; Ex. 7, Titusville – IA Binder 1 – 0103.) TPD Police Chief John Lau concurred with his conclusion. (*Id.*)

**Manslaughter Plea:** As explained in Section I.A., above, Defendant Payne pled guilty to manslaughter, which necessarily required him to admit that he was *not justified* in firing his weapon at Mr. Lowery. (Ex. 1, Payne Dep., at 117:14-20.)

**Payne's Admissions:** Payne was never told, and did not actually observe, Mr. Lowery in the possession of a firearm or other weapon at any time. (Ex. 1, Payne Dep., at 41:6-42:4, 47:15-50:1.) It is undisputed that Mr. Lowery was unarmed when Defendant Payne intentionally shot him in the back of the head and killed him. Furthermore, Payne's body camera statement after the incident that he "did not want to do that" (i.e., shoot Lowery) is at odds with his testimony that he believed Mr. Lowery posed a shooting threat. (Ex. 3 to TPD Mot., BWC, at 13:37-13:49; Ex. 1, Payne Dep., at 81:14-82:3.)

At summary judgment, "where there are varying accounts of what happened, the proper standard requires [the Court] to adopt the account most favorable to the non-movant[,]" here, Plaintiff. *Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016). For this reason, Defendant's reliance on *Jean-Baptiste v. Gutierrez* and *Foulke v. Weller* is misplaced, as the circumstances faced by the officer-defendants differed wildly from

those faced by Defendant Payne. (Mot. at 14); *see also Salvato*, 790 F.3d at 1293-94 (on summary judgment, declining to credit officer-defendant's testimony that the suspect's retreat was "more akin to the stance of a trained fighter," given "the video evidence" cast doubt on her account); *Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013) (on summary judgment, declining to credit defendant-officer testimony where "flatly contradicted" by Plaintiff's account).

In both *Jean-Baptiste* and *Foulke*, the officer-defendants employed excessive force in responding to service calls that allegedly involved the use of a deadly or otherwise dangerous weapon[4]. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 818 (11th Cir. 2010) (responding to report of armed robbery); *Foulke v. Weller*, No. 22-13942, 2024 WL 2761778, at *7 (11th Cir. May 29, 2024) (responding to report by suspect that he "committed a murder with a meat cleaver" and "was potentially also armed with a firearm."). Similarly, officer-defendants in both cases actually observed a weapon in the hands of the respective suspects at the moment they employed lethal force. *Jean-Baptiste*, 627 F.3d at 819; *Foulke*, 2024 WL 2761778, at *7. Finally, the officer-defendants reasonably believed they were being ambushed or confronted with that weapon at the time they used lethal force. *Id.*

---

[4] While Defendant Payne offers a lengthy recitation of the 11th Circuit's holding in *Murphy v. Demings*, 626 Fed. App'x 836, 840 (11th Cir. 2015), in service of setting forth the standard for Fourth Amendment excessive force claims, he fails to cite to *Murphy* in support of his argument. (Mot. at 10 (quoting *Murphy*, Fed. App'x at 840); Mot. at 11-15.) Regardless, *Murphy* is distinguishable on the same bases as *Jean-Baptiste* and *Foulke. Id.* at 838.

Unlike the officer-defendants in both *Jean-Baptiste* and *Foulke*, Defendant Payne possessed no articulable facts to conclude that Mr. Lowery possessed any weapon, much less a firearm. Rather, Mr. Lowery, like the decedent in *Salvato*, was unarmed, retreating, and had just crashed to the ground when Defendant Payne reached over the fence and fired a downward shot into the back of Mr. Lowery's head. *Salvato*, 790 F.3d at 1293); *Atkins*, 792 F. Supp. 3d at 1288-89; *Cantu*, 974 F.3d at 1231.

Accordingly, Plaintiff has properly satisfied her burden to establish facts that would lead a jury to conclude that Defendant Payne violated Mr. Lowery's Fourth Amendment rights.

### 2.   Defendant Payne's lethal use of force was clearly established as unconstitutional long before December 26, 2021.

Beyond arguing that Mr. Lowery's "shooter's posture" entitled him to summary judgment, Defendant Payne makes no effort to argue the clearly established prong of qualified immunity. And for good reason. The Eleventh Circuit has made explicit, under factually similar circumstances, that "we have clearly established that 'a police officer may not seize an unarmed, non-dangerous suspect by shooting him dead.'" *Watkins*, 156 F.4th at 1111 (quoting *Garner*, 471 U.S. at 11); *Atkins*, 792 F. Supp. 3d at 1288-89 ("[officer-defendant] violated clearly established law by shooting a fleeing suspect who did not present a direct threat"); *Salvato*, 790 F.3d at 1293. Accordingly, Defendant Payne is not entitled to qualified immunity, and his motion must be denied.

## II.    The Court should deny summary judgment on Plaintiff's battery claim under Florida law because Defendant's force was "clearly excessive"

Defendant argues that the record is "insufficient" to prove battery here. (Mot. at 18.) However, as Defendant admits, § 1983 excessive force claims and battery claims against law enforcement officers are analyzed under a "similar standard." (*Id.*) For that reason, as explained more fully above, Defendant's motion is properly denied. *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006) (concluding, based on the same facts and reasoning, that law enforcement officer's use of force was clearly excessive for purposes of § 1983 and Florida battery claims).

## III.    The Court should deny summary judgment on Plaintiff's negligence claim

Defendant asserts that Fla. Stat. § 768.28(9)(a) bars this claim, (Mot. at 22), pointing only to his deposition testimony to establish that "he ***intentionally*** fired a single shot" at Mr. Lowery. (Mot. at 21-22 (emphasis added).)[5] That is true — and that is firmly the basis of Plaintiff's excessive force and battery claims. However, Plaintiff's negligence claim addresses a different issue: Payne's dual wielding of firearm and taser, which Payne does not address.

Under Florida law, an officer may be held liable only where he "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Courts routinely hold that "[w]hether an officer's conduct 'evinced bad faith, malicious purpose, or wanton

---

[5] While Payne includes a citation to the parties' stipulation of admitted material fact, he fails to identify with specificity the facts within the stipulation that support his conclusion.

[and] willful disregard' for an [individual]'s safety is a highly fact-specific inquiry,"
generally precluding summary judgment. *Rice v. Fla. Dep't of Corr.*, No. 3:20-cv-1206-
BJD-PDB, 2023 WL 3645606, at *4 (M.D. Fla. May 25, 2023) (quoting *Butler v.
Gualtieri*, 41 F.4th 1329, 1337-38 (11th Cir. 2022)).

     While Defendant emphasizes "there is no recognized claim for negligence"
under these circumstances, (Mot. at 23), Defendant overstates the law on this point.
*See Rice*, 2023 WL 3645606, at *5 (explaining the concept that "force that is deemed
excessive under § 1983 is not necessarily synonymous with force that is done with bad
faith, malicious purpose, or wanton [and] willful disregard of human rights [or] safety
as those terms are used in section 768.28(9)(a)"). State and federal courts have
recognized that "a separate negligence claim based upon a distinct act of negligence
may be brought against a police officer in conjunction with a claim for excessive use
of force," provided it pertains "to something other than the actual application of force
during the course of the arrest." *City of Miami v. Sanders*, 672 So.2d 46, 48 (Fla. 3d
DCA 1996) (citations omitted); *see also Peterson v. Pollack*, 290 So. 3d 102, 114.

     Accordingly, unlike the plaintiffs in *City of Miami v. Sanders*, 672 So. 2d 46, 47
(Fla. 3d DCA 1996), and *Pena v. Marcus*, 715 Fed. Appx. 981, 988 (11th Cir. 2017), on
which Defendant relies, Plaintiff's negligence claims are not grounded in Payne's use
of excessive force on Mr. Lowery, but instead on Payne's dual-wielding of both his
service taser and service handgun during a foot pursuit.[6] (Doc. 1, Compl., at ¶¶ 49-54;

---

[6] Defendant also relies upon *Diaz v. Miami-Dade County* and *Simon v. Murph*y, (Mot. at 20), but each
relied on a definition of "willful and wanton" that has been subsequently rejected by the Florida

Ex. 1, Payne Dep., at 49:20-50:5.) A reasonable jury could find such conduct constituted "a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons," which Payne committed "intentionally, knowingly, and purposefully." *Peterson*, 290 So. 3d at 110.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion in entirety.

Respectfully Submitted,

Date: January 13, 2026                JAMIYAH ROBINSON, as
                                      Personal Representative of the Estate
                                      of James Lowery, deceased,

                                      /s/    *John Marrese*
                                      John Marrese


                                      /s/    *Paige Smith*
                                      Paige Smith

Ben Crump
Natalie Jackson
**BEN CRUMP LAW**
122 S. Calhoun Street
Tallahassee, Florida 32301
P. (800) 713-1222
ben@bencrump.com
natalie@nataliejacksonlaw.com

Steven Hart*

_____

District Court of Appeal. *Peterson*, 290 So. 3d at 109; *Diaz*, 424 F. Supp. 3d at 1361; *Murphy*, 895 So. 2d at 1246.

Brian Eldridge*
John Marrese* (*Lead Counsel pursuant to Local Rule 2.02(a)*)
Paige Smith*
**HART MCLAUGHLIN & ELDRIDGE, LLC**
One South Dearborn, Suite 1400
Chicago, Illinois 60603
P. (312) 955-0545
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com
psmith@hmelegal.com

Kevin Edwards*
**EDWARDS INJURY LAW**
226 Baldwin Avenue
Charlotte, NC 28204
(980) 400-3244
kevin@edwardsinjury.com

*Attorneys for Plaintiff Jamiyah Robinson,*
*as Personal Representative of the Estate*
*of James Lowery, deceased*

*Specially Admitted